## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEINER LEISURE LIMITED ) | |
| ) | CIVIL ACTION |
| Petitioner, ) | NO. 3:13cv01379 (MPS) |
| ) | |
| v. ) | |
| ) | |
| DOREEN SAVARIA and CRYSTAL RAIA, ) | |
| INDIVIDUALLY AND ON BEHALF OF ) | |
| ALL OTHER SIMILARLY SITUATED ) | |
| EMPLOYEES OF ELEMIS SPA ) | |
| ) | |
| Respondents. ) | |

## DECLARATION OF ANTHONY J. RAO IN SUPPORT OF THE MOTION TO VACATE ARBITRATOR'S PARTIAL FINAL CLAUSE CONSTRUCTION AWARD

Anthony J. Rao, declare as follows:

1.      I am a partner at Duane Morris LLP, counsel of record for Steiner Leisure Limited ("Steiner") in the above-referenced matter.  The statements made in this declaration are based upon my personal knowledge, except where stated to be upon information and belief, and if called to testify with regard to same, I could competently do so.

2.      On September 11, 2012, Claimants Doreen Savaria and Crystal Raia ("Claimants") filed a demand for arbitration against Steiner before the American Arbitration Association ("AAA").  Attached hereto as Exhibit 1 is a true and correct copy of Claimants' September 11, 2012 demand for arbitration.

3.      To date, there are five individuals who have filed additional individual arbitrations alleging non-wage claims and their counsel asserts these five individuals are "members of the [Claimants'] class" in the Savaria/Raia arbitration which alleges certain wage

and hour claims.  In addition to Claimants, the other five employees or former employees are

Catherine Sullivan, Nicole Briere, Ashley Serio, Nicholle Beaumont, and Caroline Griffin.

4.     Claimants' arbitration demand alleges 11 Connecticut state law claims for wages

and one overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

5.     Claimants' arbitration demand is brought individually and on behalf of other

similarly situated employees of Elemis Spa.

6.     Claimants seek to bring their arbitration as a class or collective action.  Attached

hereto as Exhibit 2 is a true and correct copy of Claimants' Memorandum of Law In Support Of

Class Arbitration (not including exhibits containing case law).

7.     The crux of Claimants' claims is that Steiner failed to pay all wages, failed to pay

commissions and gratuities, and failed to pay overtime.  *See* Exhibit 1, annexed hereto.

8.     The purported class or collective group is defined as:

> all spa service providers who are currently employed by [Steiner] at its Elemis
> Spa, located at the Mohegan Sun casino in Uncasville, CT ..., or who were
> employed by the same within the previous six (6) years ... includ[ing], ... all
> message therapists, estheticians, nail technicians, hair stylists, and all other
> employees who provided skilled spa services to customers at the Spa.

*See* Exhibit 1, annexed hereto.

9.     On January 31, 2013, the parties held a case management conference and it was

decided to stay the arbitration pending the U.S. Supreme Court's decision in *Oxford Health*

*Plans v. Sutter*, Case No. 12-135, 133 S. Ct. 2064 (June 10, 2013) which was to address whether

an arbitrator could authorize class or collective action arbitration.  Annexed hereto as Exhibit 3 is

a true and correct copy of the Case Management Conference Order dated February 2, 2013.

10.     In late July and August 2013, in anticipation of an arbitration conference to

discuss possible clause construction, counsel for Steiner advised counsel for Claimants and the

chosen arbitrator that, just as in *Oxford Health*, because the arbitration agreement at issue is

silent as to class and collective actions and does not provide the arbitrator with the power to

decide whether any statutory or common law claim can be brought as a class or collective action,

the gateway class or collective action issue must be decided by a Court.  Attached hereto as

Exhibits 4, 5, and 6 are true and correct copies of correspondence confirming these facts.

11.     Claimants disagreed, necessitating Steiner's Application for Declaratory,

Preliminary and Permanent Injunctive Relief.  *See* Exhibit 5, annexed hereto.  Steiner's

September 24, 2013 Amended Complaint (Docket Entry ["D.E."] 8) and Memorandum of Law

Supporting Application of Steiner Leisure Limited For Declaratory And Injunctive Relief (D.E.

9-1) are also attached hereto at Exhibit 11.

12.     Ms. Savaria and Ms. Raia filed their demands for arbitration on September 11,

2012; Catherine Sullivan and Caroline Griffin filed their arbitration demands on December 20,

2012; Nicole Briere filed her arbitration demand on January 11, 2013; Ashley Serio filed her

arbitration demand on December 18, 2012; and Nicholle Beaumont filed her arbitration demand

on December 21, 2012.  Attached hereto as Exhibit 7 are true and correct copies of Catherine

Sullivan's, Caroline Griffin's, Nicole Briere's, Ashley Serio's, and Nicholle Beaumont's

arbitration demands which included the applicable Steiner Arbitration Agreement.

13.     Rule 1 of the AAA Employment Arbitration Rules and Mediation Procedures,

Amended and Effective November 1, 2009 ("AAA Arbitration Rules"), states "[t]he parties shall

be deemed to have made these rules a part of their arbitration agreement whenever they have

provided for arbitration … under its Employment Arbitration Rules and Mediation Procedures

…"  Attached hereto as Exhibit 8 is a true and correct copy of the AAA Arbitration Rules.

14.     On September 20, 2013, Steiner filed its Response to Claimants' Memorandum of Law in Support of Class Arbitration.  Attached hereto as Exhibit 9 is a true and correct copy of Steiner's Response to Claimants' Memorandum of Law in Support of Class Arbitration.  As reflected in its Response, Steiner decided against participating in clause construction briefing because, despite its clear and repeated denial of the arbitrator's authority to determine arbitrability of a class or collective action and its express reservation of the right to seek this Court's ruling on the issue, Steiner was concerned that submission of a brief substantively addressing Claimants' clause construction arguments would be construed as conceding that the arbitrator had the authority to determine the availability of class or collective arbitration.  Steiner's position is that the arbitrator does not have that authority, and Steiner was unwilling to risk that its participation in clause construction briefing would be misconstrued as a concession of the arbitrator's authority.

15.     On September 20, 2013, Steiner filed its First Amended Answering from Respondent Steiner Leisure Limited (removing any reference to clause construction).  Claimants' counsel did not object to this filing.  Attached hereto as Exhibit 10 is a true and correct copy of Steiner's First Amended Answering Statement.

16.     Claimants' Reply to Steiner's Response was filed on October 1, 2013.  Attached hereto at Exhibit 11 is a true and correct copy of Claimants' Reply to Steiner's Response.

17.     On October 1, 2013, Steiner emailed the Arbitrator to formally request that she "refrain from proceeding with the clause construction hearing pending the court's ruling." Attached hereto at Exhibit 11 is a true and correct copy of this correspondence.

18.     On October 29, 2013, the Arbitrator issued an Order Denying Stay in which she found that Steiner "has failed to present adequate justification for issuance of a stay." Attached hereto as Exhibit 12 is a true and correct copy of the Order Denying Stay.

19.     On October 30, 2013, the Arbitrator issued a Partial Final Clause Construction Award. Attached hereto as Exhibit 13 is a true and correct copy of the Partial Final Clause Construction Award.

20.     On November 5, 2013, U.S. Court of Appeals for the Sixth Circuit in *Elsevier, Inc. v. Crockett, et al.*, Case No. 12-3574, 2013 U.S. App. LEXIS 22408 (6th Cir. November 5, 2013), affirmed a district court's grant of summary judgment to a company seeking a declaration that its arbitration agreement did not authorize class arbitration as well as an injunction barring the defendant from proceeding with classwide arbitration. Attached hereto as Exhibit 14 is a true and correct copy of the Sixth Circuit's decision.

21.     Attached hereto as Exhibit 15 is a true and correct copy of the AAA Supplementary Rules For Class Arbitration ("AAA Supplementary Class Rules").

22.     On November 19, 2013, Steiner requested that the arbitrator stay arbitration proceedings pending judicial review of this Motion to Vacate. Claimants' counsel advised counsel for Steiner that Claimants do not oppose the request for stay pending this Court's review. On November 21, 2013, the arbitrator granted Steiner's request for stay, which will expire 15 days after the entry of this Court's ruling on Steiner's Motion to Vacate. Attached hereto as Exhibit 16 are true and correct copies of correspondence confirming these facts.

23.     I declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct.

Dated:  This 22nd day of November, 2013.

Anthony J. Rao

EXHIBIT 1

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

### ATTORNEYS AT LAW
### 405 ORANGE STREET
### NEW HAVEN, CONNECTICUT O6511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD*
NINA T. PIRROTTI†
JOSHUA R. GOODBAUM^*

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

\* ALSO ADMITTED TO NEW YORK BAR.
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

September 13, 2012

**SENT VIA FEDERAL EXPRESS**

Robert C. Boehm
Executive Vice President and General Counsel
Steiner Leisure Ltd.
770 South Dixie Highway
Coral Gables, Florida 33146

Dear Mr. Boehm,

This past Tuesday, our firm filed a demand for arbitration with the American Arbitration Association on behalf of a class of employees at Steiner Leisure Ltd.'s Elemis Spa, located at the Mohegan Sun Casino in Uncasville, Connecticut. Attached please find a copy of our demand. We and our clients are prepared to move forward with arbitration, but we are also open to a more amicable resolution of this dispute through mediation. Please contact me if you would like to discuss this matter further.

Sincerely,

Joseph D. Garrison

JDG/lmd
Enclosure

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

### ATTORNEYS AT LAW
### 405 ORANGE STREET
### NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD*
NINA T. PIRROTTI*
JOSHUA R. GOODBAUM^*

TEL. 203-777-4425
FAX 203-776-3965
WWW.GARRISONLAW.COM

\* ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

September 11, 2012

**VIA FEDERAL EXPRESS**

American Arbitration Association
2200 Davidson Avenue
Somerset, New Jersey 08873

Re: <u>Doreen Savaria and Crystal Raia, individually and on behalf of all other similarly situated employees of Elemis Spa v. Steiner Leisure Ltd.</u>

To Whom It May Concern:

We have enclosed, for filing, the Claimants' Demand for Arbitration pertaining to the above-referenced matter. Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

Thank you.

Respectfully submitted,

Joseph D. Garrison
Attorney for Claimants

JDG/jrg

**American Arbitration Association**
*Dispute Resolution Services Worldwide*
Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Employment Arbitration Rules Demand for Arbitration**
*Please visit our website at www.adr.org if you would like to file this case online.*

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☒ *There is no additional administrative fee for this service.*

| Parties (Claimant) | |
|---|---|
| Doreen Savaria and Crystal Raia, indiv. and o/b/o others | Joseph D. Garrison |
| Name of Claimant: | Representative's Name (if known): |
| c/o Garrison, Levin-Epstein, 405 Orange Street | Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. |
| Address: | Firm (if applicable): |
| | 405 Orange Street |
| | Address: |
| New Haven      CT      06511 | New Haven      CT      06511 |
| City:      State:      Zip: | City:      State:      Zip: |
| 203.777.4425      203.776.3965 | 203.777.4425      203.776.3965 |
| Phone:      Fax: | Phone:      Fax: |
| jgarrison@garrisonlaw.com | jgarrison@garrisonlaw.com |
| Email Address: | Email Address: |

| Parties (Respondent): | |
|---|---|
| | N/A |
| Steiner Leisure Limited | Representative's Name (if known): |
| Name of Respondent: | |
| 770 South Dixie Highway | Firm (if applicable): |
| Address: | |
| | Address: |
| Coral Gables      FL      33146 | |
| City:      State:      Zip: | |
| N/A      N/A | City:      State:      Zip: |
| Phone:      Fax: | |
| N/A | Phone:      Fax: |
| Email Address: | Email Address: |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

☐ Less than $100,000  ☐ $100,000 - $250,000  ☒ Over $250,000

Amount of Claim: _____

Claim involves:
☒ Statutorily Protected Rights  ☐ Non-statutorily protected rights

In detail, please describe the nature of each claim.
You may attach additional pages if necessary:

See attached demand. (Arbitration clause is attached.)

**Other Relief Sought:** ☐ Arbitration Costs ☒ Attorney's Fees ☒ Interest ☐ Punitive/Exemplary Damages ☐ Other: _____

**Neutral:** Please describe the qualifications for arbitrator(s) to hear this dispute:
Arbitrators familiar with class and/or collective actions are preferable. The list of potential arbitrators should include arbitrators in New York.

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____ Days: _____

Hearing locale: Uncasville, CT

☐ Requested by Claimant ☒ Locale provision included in the contract

**Filing Fee:** ☒ Employer-Promulgated Plan fee requirement or $175      *(max amount per AAA rules)*
☐ Standard Fee Schedule for individually negotiated contracts      ☐ Flexible Fee Schedule for individually negotiated contracts
Amout Tendered: $0.00

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043.  Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185.

Signature of claimant or representative: *Joseph D. Garrison*      Date: 9/11/12

Demand for Arbitration by the American Arbitration Association

**Doreen Savaria and Crystal Raia,**
individually and on behalf of all other similarly situated employees of Elemis Spa,
Claimants,

v.

**Steiner Leisure Limited,**
Respondent.

Background

1. This action is brought by Doreen Savaria and Crystal Raia ("the named Claimants") on behalf of all spa service providers who are currently employed by Respondent Steiner Leisure Limited ("Respondent" or "Steiner") at its Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa"), or who were employed by same within the previous six (6) years. These spa service providers (collectively, "the Claimants" or "the Claimant class") include, but are not limited to, all massage therapists, estheticians, nail technicians, hair stylists, and all other employees who provided skilled spa services to customers at the Spa.

2. Doreen Savaria resides in Connecticut. She worked at the Spa, most recently as lead esthetician, from June 2004 until her termination on December 23, 2011.

3. Crystal Raia resides in Connecticut. She worked at the Spa, most recently as a massage therapist, from May 2008 until her termination on February 27, 2012.

4. Respondent is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

5. Heather Lunny is the former director of the Spa. At all times, she acted as Respondent's agent in its management of the Spa. Respondent is liable for all of Ms. Lunny's actions in her management of the Spa.

6. The named Claimants were terminated at the direction of Ms. Lunny after they assisted Mohegan Sun investigators in their investigation of a fraud perpetrated by Ms. Lunny and others against Mohegan Sun.

### The Claimant Class

7. The Claimants were compensated by Respondent through a combination of wages, commissions from services provided, "service charges" from services provided, gratuities from customers, and commissions from products sold.

8. Respondent's manner of compensation of the Claimants was frequently changed at the sole discretion of Respondent's management, and it was rarely, if ever, put in writing.

9. The Claimants were the victims of a complex scheme by Respondent's management to deprive the Claimants of the commissions, gratuities, and other compensation to which they were entitled. This scheme gives rise to numerous causes of action.

10. The Claimant class is so numerous that joinder of all members is impracticable. Upon information and belief, there are over 40 spa service providers who work at the Spa or have worked at the Spa in the previous six years.

11. There are question of law and fact common to the class, including whether Respondent engaged in a concerted scheme to deprive the Claimants of compensation they were due.

12. The named Claimants' claims are typical of those of the class members. The named Claimants' claims encompass the challenged practices and conduct of Respondent. Their legal claims are based on the same legal theories as the putative class members'. The legal issues as to which laws were violated by Respondent's conduct apply equally to the named Claimants and to the class as a whole.

13. The named Claimants will fairly and adequately protect the interests of the class.

14. Common question of law and fact predominate over questions affecting only individuals, and a class arbitration is superior to other available methods for the fair and efficient adjudication of this controversy.

### Claim One: Conn. Gen. Stat. § 31-72 — Wages

15. Paragraphs 1-14 are realleged and incorporated by reference herein.

16. Respondent failed to pay the Claimants the full compensation they were owed, in that Respondent, variously or in combination, failed to pay commissions owed to the Claimants on services provided and products sold; paid a lower commission rate on services provided and products sold than it had agreed to pay; revoked commissions paid to the Claimants under the false premise that a customer had demanded a refund of his or her service, when in fact no such refund was provided; failed to pay the Claimants when customers cancelled their appointments, even when Respondent collected cancellation fees from the customers; and calculated the Claimants' commissions and gratuities for their service using Respondent's discounted rate for the service, rather than the regular rate.

2

17. Respondent's failure to pay the Claimants the full compensation they were owed was done with bad faith, arbitrariness, and/or unreasonableness, insofar as Respondent knew or should have known that the Claimants were entitled to more compensation than they were paid.

18. The Claimants are owed their resulting economic losses and interest, as well as liquidated damages of twice the amount of wages due, and attorneys' fees and costs.

## Claim Two: Unjust Enrichment — "Service Charge" Gratuities

19. Paragraphs 1-18 are realleged and incorporated by reference herein.

20. Respondent charged a 20% "service charge" on all of its spa services. This "service charge" was added automatically to customer invoices.

21. At the direction of Respondent, customers were told that the "service charge" was added to their bill as the gratuity.

22. It is standard practice in the spa industry and at Elemis Spa for customers to pay their service providers a gratuity, above and beyond the cost of their service.

23. Respondent's communications to the customers left the customers with the reasonable impression that the "service charge" was actually a gratuity that would be transferred in its entirety to the Claimant who provided the service to the customer. It also left the customers with the reasonable impression that they had provided the gratuity that was standard in the industry.

24. The "service charge" was not transferred to the Claimants in total. Instead, Respondent retained a percentage of the "service charge" and paid the remainder to the Claimants. The percentage retained by Respondent ranged from 10% to 15% of the "service charge."

25. The Claimants were instructed not to discuss the "service charge" with their customers, thus inhibiting their ability to disabuse their customers of the customers' reasonable misapprehension that the "service charge" would be transferred in its entirety to the Claimant who provided the customer's service.

26. By retaining the gratuities that the customers intended to transfer to the Claimants, Respondent was benefitted.

27. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers was unjust.

28. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers harmed the Claimants.

3

29. The Claimants are owed amounts equitably due, based on the evidence.

**Claim Three: Conversion — "Service Charge" Gratuities**

30. Paragraphs 1-29 are realleged and incorporated by reference herein.

31. The Claimants had a property right in the "service charges" because they were provided by customers with the intent that they be transferred to the Claimants.

32. Respondent deprived the Claimants of an undetermined percentage of the "service charges" for an indefinite period of time.

33. The Claimants did not authorize Respondent to retain the undetermined percentage of the "services charges."

34. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

35. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

**Claim Four: Denial of Benefit to Third Party Beneficiary of Contract — "Service Charge" Gratuities**

36. Paragraphs 1-35 are realleged and incorporated by reference herein.

37. Respondent formed a contract with its customers when the customers paid a "service charge" in consideration for the services provided by Respondent.

38. The contracting parties intended that Respondent would and did assume a direct obligation to the Claimants to pay them the entire service charge.

39. The contract between Respondent and the customers was intended for the benefit of the Claimants insofar as the "service charge" constituted additional compensation in the form of a gratuity.

40. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Five: Unjust Enrichment — Discounted Services**

41. Paragraphs 1-40 are realleged and incorporated by reference herein.

42. Respondent frequently offered customers the opportunity to purchase services from the Spa at reduced rates, including on the website Travelzoo.com.

4

43. Although Respondent charged the customers a reduced rate for the services, the 20% service charge that Respondent assessed was calculated using the regular price of the services purchased.

44. When Respondent transferred a portion of the service charge to one of the Claimants, however, Respondent calculated the Claimant's share using the reduced price, rather than the regular price.

45. By retaining a portion of the service charge that should have been transferred to the Claimants, Respondent was benefitted.

46. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, was unjust.

47. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, harmed the Claimants.

48. The Claimants are owed amounts equitably due, based on the evidence.

## Claim Six: Conversion — Discounted Services

49. Paragraphs 1-48 are realleged and incorporated by reference herein.

50. The Claimants had a property right (at a minimum) in the "service charges" as calculated using the higher, regular rate, pursuant to their agreement with Respondent that they would be compensated, in part, with a percentage of the "service charge."

51. Respondent deprived the Claimants, for an indefinite period of time, of the difference between the "service charge" as calculated using the higher, regular rate, and the "service charge" as calculated using the discounted rate.

52. The Claimants did not authorize Respondent to retain the remaining portion of the "services charges."

53. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

54. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

## Claim Seven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Extra Gratuities

55. Paragraphs 1-54 are realleged and incorporated by reference herein.

56. In addition to the gratuities that were automatically added to their bills, Elemis Spa customers also had the opportunity to give an additional gratuity to their service providers. Customers were offered an envelope, into which they could seal this additional gratuity. Customers who chose to provide this additional gratuity placed their money into the envelope, wrote the name of their service provider on the envelope, sealed the envelope, and placed it in a locked container at the Spa's front desk. (In approximately December 2011, the envelopes were removed, but the locked container remained.)

57. Spa director Heather Lunny was the only person with a key to the locked container into which customers placed the extra gratuities for their service providers.

58. On numerous occasions, one or more Claimants witnessed customers place money in an envelope, write the Claimant's name on the envelope, seal the envelope, and place the envelope in the locked container. When the Claimant later approached Ms. Lunny to retrieve the extra gratuity, Ms. Lunny told the Claimant that there was no envelope for him or her.

59. On information and belief, Ms. Lunny stole the envelopes and the money contained in them.

60. The Claimants had a property right in the extra gratuities placed in the envelopes by their customers because the extra gratuities were provided by customers with the intent that they be transferred to the Claimants.

61. Respondent deprived the Claimants of the extra gratuities for an indefinite period of time.

62. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

63. The Claimants did not authorize Respondent to retain the extra gratuities.

64. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

65. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

## Claim Eight: Statutory Theft, Conn. Gen. Stat. § 52-564 — Refunds

66. Paragraphs 1-65 are realleged and incorporated by reference herein.

67. On numerous occasions, Respondent revoked commissions paid to the Claimants on the basis that customers whose services yielded commissions had complained that their services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

6

68. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

69. In reality, customers had not complained, and/or Respondent did not provide any refund to the customers.

70. Accordingly, the revocation of the Claimants' commission occurred under false pretenses.

71. The Claimants had a property right in the commissions they earned because the commissions were compensation for services rendered.

72. Respondent deprived the Claimants of the commissions for an indefinite period of time.

73. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

74. The Claimants did not authorize Respondent to retain the property.

75. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

76. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Nine: Breach of Contract — Refunds**

77. Paragraphs 1-76 are realleged and incorporated by reference herein.

78. As part of the compensation agreement between the Claimants and Respondent, Respondent paid the Claimants as commissions a percentage of the cost of the services they provided to the Spa's customers.

79. When the Spa offered discounted services to customers, Respondent calculated the Claimants' commissions as a percentage of the discounted price, rather than the regular price.

80. On numerous occasions, Respondent revoked commissions paid to Claimants on the basis that the customers whose services yielded the commissions had complained that the services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

81. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

7

82. Even though the Claimants had only been paid commissions on the discounted price, Respondent withheld from their subsequent paychecks the commissions that would have been paid on the regular-priced service.

83. Accordingly, Respondent withheld from the Claimants more money than it had originally paid the Claimants to perform the services. The result was that the Claimants actually paid Respondent to perform the services.

84. Respondent breached its compensation agreement with the Claimants insofar as it withheld more money than it had originally paid the Claimants to perform the services.

85. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Ten: Breach of Contract — Poker Room**

86. Paragraphs 1-85 are realleged and incorporated by reference herein.

87. Throughout 2009, Respondent sent several Claimants to provide chair massages in the Poker Room of the Mohegan Sun casino.

88. Respondent told the Claimants that they would be paid $1 for every minute of massage they provided. This rate was substantially higher than the rate of compensation that the Claimants received for their regularly-scheduled services at the Spa.

89. The Claimants accepted Respondent's offer and agreed to provide services in the Poker Room in exchange for compensation of $1 for every minute of massage they provided.

90. The customers in the Poker Room paid the Claimants with cash or casino chips (which could be traded with the casino for cash). The Claimants gave Respondent all of the cash and chips they earned, as well as a list of the services they provided.

91. Respondent failed to pay the Claimants $1 per minute for the services they provided.

92. Respondent breached its agreement with the Claimants insofar as it failed to pay the Claimants the agreed-upon rate of $1 per minute for the services provided.

93. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Eleven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Additional Theft**

94. Paragraphs 1-93 are realleged and incorporated by reference herein.

95. Upon information and belief, Heather Lunny used a variety of unlawful tactics to steal additional money from some or all of the Claimants.

8

96. For example, in approximately May 2010, Respondent sent several Claimants to provide chair massages at a corporate meeting of Best Buy, being held at Mohegan Sun casino. The customer who paid Best Buy's invoice left a considerable gratuity (approximately $2800) for the Claimants, in addition to the Claimants' other compensation for the services they provided. Best Buy paid with a credit card. Upon information and belief, Ms. Lunny refunded the Best Buy gratuity at least twice and recharged the gratuity each time as cash. Ms. Lunny did this to facilitate her theft of some or all of the gratuity. Ms. Lunny did in fact steal some or all of the gratuity. As a result, the Claimants did not receive some or all of the gratuity they were given.

97. The Claimants had a property right in the money stolen by Ms. Lunny because they either earned the funds from Respondent as part of their compensation or were given the money by their customers with the intention that the Claimants retain the property.

98. Respondent deprived the Claimants of the property for an indefinite period of time.

99. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

100.    The Claimants did not authorize Respondent to retain the property.

101.    The deprivation harmed the Claimants by depriving them of property to which they were entitled.

102.    The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Twelve: Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* — Failure to Pay Overtime Premium**

103.    Paragraphs 1-102 are realleged and incorporated by reference herein.

104.    During one or more weeks of the Claimants' employment with Respondent, one or more Claimants worked in excess of forty hours in a given week, yet the Claimants were not compensated at the statutory rate of one-and-one-half times their regular rate of pay for all hours in excess of forty hours in a given week.

105.    Respondent failed to pay any overtime premium for some hours worked in excess of forty hours in a given week.

106.    Respondent also failed to properly calculate the Claimants' regular rate of pay, because Respondent failed to include all forms of compensation the Claimants did receive or were entitled to receive. Accordingly, when Respondent did pay Claimants their overtime premiums, the premiums were smaller than the Claimants were entitled to receive under the FLSA, given their regular rate of pay.

9

107.     Respondent's conduct in this regard was a willful violation of or showed reckless disregard for the FLSA as evidenced by its failure to compensate the Claimants at the statutory rate.

108.     Respondent's conduct in violation of the FLSA was unreasonable, arbitrary, and/or in bad faith.

109.     The Claimants are owed compensation for all overtime hours worked, interest, liquidated damages, and attorneys' fees and costs.

## Claim Twelve: Connecticut Minimum Wage Act (CMWA), Conn. Gen. Stat. §§ 31-58 et seq. — Failure to Pay Overtime Premium

110.     Paragraphs 1-109 are realleged and incorporated by reference herein.

111.     Based on the foregoing, Respondent's failure to pay the Claimants properly-calculated overtime premiums was a willful violation of the CMWA.

112.     Respondent's conduct in violation of the CMWA was unreasonable, arbitrary, and/or in bad faith.

113.     The Claimants are owed compensation for all overtime hours worked, interest, penalty damages, and attorneys' fees and costs.

Dated: September 11, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANTS

By: __ /s/ Joseph D. Garrison __
Joseph D. Garrison
Ethan A. Levin-Epstein
Joshua R. Goodbaum
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT  06511
Tel.:    (203) 777-4425
Fax:    (203) 776-3965
jgarrison@garrisonlaw.com
elevin-epstein@garrisonlaw.com
jgoodbaum@garrisonlaw.com

10

EXHIBIT 2

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| **DOREEN SAVARIA and CRYSTAL RAIA,** Individually and on Behalf of All Other Similarly Situated Employees of Elemis Spa, | : : : | **AAA Case No.: 12-460-454-12** |
| Claimants, | : : | |
| v. | : : | |
| STEINER LEISURE LIMITED, | : : | |
| Respondent. | : | **August 15, 2013** |

### CLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF CLASS ARBITRATION

Respondent Steiner Leisure Limited chose exceptionally broad language for the arbitration clause that it included in its employee handbook. That clause, which commits "any and all disputes" to the arbitration process, demonstrates Steiner's intent to permit its employees to file claims on a class-wide basis. Numerous principles of Connecticut law further confirm this conclusion. Accordingly, the Claimants respectfully request a partial final clause construction award allowing them to proceed with their class arbitration.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations in the Claimants' demand for arbitration, the Elemis Spa at the Mohegan Sun casino in Uncasville, CT ("the Spa") was not a pleasant place to work. The Spa's management frequently changed employees' manner, method, and amount of compensation at its sole discretion and often without notice, let alone in writing. It failed to pay commissions; paid less than it had agreed to pay; and revoked previous payments under the false premise that a customer had demanded a refund for her service. It automatically added a 20% "service charge" to all customer invoices and then forbade its employees from informing the

customers that this charge was not a gratuity.  And when a customer left an additional gratuity, the Spa's director often stole it.  (*See* Exh. A, Demand (Sept. 11, 2012).)

In September 2012, Doreen Savaria and Crystal Raia — both former treatment providers at the Spa — filed this arbitration on behalf of themselves and all other similarly situated Spa employees, seeking compensation for the myriad forms of theft, conversion, and other misconduct they sustained at hands of the Spa's management.  (*Id.*)  In filing their arbitration demand, the named Claimants reviewed and relied upon the arbitration clause in the Respondent-promulgated handbook.  The arbitration clause provided, in relevant part:

### Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

. . .

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

### Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow

2

the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

### Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

. . .

### Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/ or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

(Exh. B, Employment Arbitration Policy.)

Following the selection of the Arbitrator, the parties agreed in February 2013 to stay the clause construction phase of the arbitration pending the U.S. Supreme Court's decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 786 (Dec. 7, 2012), which addressed the circumstances under which an arbitrator could authorize class arbitration. (Exh. C, Case Mgmt. Order No. 2 (Feb. 2, 2013).)

## II.     ARGUMENT

### A.     The Contract Commits the Issue of Clause Construction to the Arbitrator.

As an initial matter, it is the responsibility of the Arbitrator to decide whether Respondent's arbitration clause authorizes the named Claimants to pursue arbitration on behalf of a class of employees.

3

The issue of arbitrability is committed to the Arbitrator "if the parties clearly and unmistakably [so] provide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).[1] The parties can so provide in a number of ways. One way for them to do so is to incorporate into their agreement arbitration rules that establish that the Arbitrator will decide all issues of arbitrability. *See, e.g., Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.")

That is what occurred here. Respondent's arbitration clause states that any arbitration "shall be administered by the American Arbitration Association ('AAA') under its arbitration rules." (Exh. B.) And Rule 3 of the AAA's Supplementary Rules for Class Arbitrations in turn state that, in a putative class arbitration, the Arbitrator will decide whether the arbitration clause authorizes class proceedings:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").

AAA Supp. Rules for Class Arbs., Rule 3 (Oct. 8, 2003) (Exh. E at 2); *see also Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1765 (2010) (describing Class Rule 3).

The Second Circuit has repeatedly held that the explicit incorporation of private arbitration rules that delegate the duty of clause construction to the Arbitrator is sufficient to effectuate such a delegation. *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5-6 (2d Cir. 2013) (holding "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator" by explicitly incorporating JAMS rules, which commit issues of arbitrability to

---

[1]   Copies of all judicial opinions cited herein are attached at Exhibit D.

4

arbitrator); *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344-45 (2d Cir.

2010) (holding that, since "ICDR Article 36 provides that 'the tribunal shall interpret and apply

these Rules insofar as they relate to its powers and duties,' . . . the parties' adoption of the ICDR

Articles, including Article 36, in their arbitration agreements provides a 'clear and unmistakable'

expression of their intent to allocate to the arbitrator the task of interpreting the scope of his

powers and duties"); *Contec Corp. v. Remote Solution Co.*, 398 F.3d at 208.

Accordingly, by incorporating the AAA's Rules, including Class Rule 3, the parties here

have agreed that the Arbitrator shall determine the scope of her authority to adjudicate this

putative class arbitration.

**B.      The Parties Agreed to Class-Wide Arbitration.**

The breadth of Respondent's arbitration clause and the Connecticut law that informs its

interpretation demonstrate that the parties intended to permit class arbitration of their disputes.

*Cf. Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 126 (2d Cir. 2011) ("[W]here [an arbitration]

agreement contains what is argued to be an implicit agreement to submit to class arbitration, the

arbitrator must necessarily look to state law principles of contract interpretation in order to divine

whether such intent exists.").

Consider, first, the language of the agreement. *See, e.g., Tallmadge Bros., Inc. v.*

*Iroquois Gas Transmission Sys.*, 252 Conn. 479, 498 (2000) ("A contract must be construed to

effectuate the intent of the parties, which is determined from the language used interpreted in the

light of the situation of the parties and the circumstances connected with the transaction."),

Simply put, the language could not be broader.  It provides that "[a]ny claim arising out of or

relating to the employee's employment or separation there from [sic] shall be settled by

arbitration," and that arbitration is "the exclusive method of resolving any and all disputes."

5

(Exh. B (emphases added).) It "makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment." (*Id.*) It charges the Arbitrator with resolving "[a]ny actionable employment disputes" and permits her "to award all relief available under federal, state, and common law." (*Id.*) Importantly, the agreement does <u>not</u> exclude from its purview <u>any</u> causes of action, claims, forms of litigation, or types of relief. (*See id.*)

Under Connecticut contract law, Respondent's promulgation of such a universal arbitration clause demonstrates its intention to arbitrate all available causes of action. *See Carroll v. Aetna Cas. & Sur. Co.*, 189 Conn. 16, 20 (1983) ("Where the language of the arbitration clause indicates an intention on the part of the parties to include all controversies which may arise under their agreement, and where the record reveals no specific questions which the parties submitted to the arbitrator, the submission will be construed as unrestricted."). In other words, based on Connecticut's default rules, the unrestricted language Respondent chose for its arbitration clause evinced its intent to allow for class arbitration.

Numerous arbitrators have held that similarly broad language authorizes class proceedings. In the U.S. Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, for example, the arbitration clause provided: "No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator." 133 S. Ct. 2064, 2067 (2013). The Arbitrator — in a ruling eventually upheld by the Supreme Court — decided that the contract authorized class arbitration, noting that "[t]he 'intent of the clause' was 'to vest in the arbitration process everything that is prohibited from the court process.'" *Id.* at 2067-68; *accord, e.g., Benson v.*

6

*CSA*, AAA Case No. 11-160-M-02281-08 (Jul. 6, 2010) (Meyerson, Arb.) (ruling that arbitration clause mandating that "any dispute or claim relating to or arising out of the employment relationship" be arbitrated logically encompassed class arbitrations); *see also Hill v. iMergent, Inc.*, AAA Case No. 11-434-00318-08 (Feb. 23, 2009) (Dinneen, Arb.); *Walters v. Palm Harbor Homes*, AAA Case No. 11-421-002782-06 (Jan. 17, 2008) (Dinneen, Arb.); *Nichols v. Fanfare*, AAA Case No. 11-160-Y-01780-06 (Jun. 14, 2007) (Dinneen, Arb.).[2]  Accordingly, the sweeping language of Respondent's arbitration clause is sufficient for the Arbitrator to determine that the clause authorizes class proceedings.

Several other facets of Connecticut law further compel this conclusion. *Cf. Fahey v. Safeco Ins. Co. of Am.*, 49 Conn. App. 306, 317-18 (1998) (noting *de facto* incorporation of existing state law into contracts). First, Connecticut's public policy favors class actions under appropriate circumstances. *See Rivera v. Veterans Mem'l Med. Ctr.*, 262 Conn. 730, 735 (2003) (recognizing that "class actions serve a unique function in vindicating plaintiffs' rights, . . . promote judicial economy and efficiency, . . . and provide access to judicial relief for small claimants"). Second, in Connecticut, the right to pursue a class action is not just procedural: it is substantive. *See Weber v. U.S. Sterling Secs., Inc.*, 282 Conn. 722, 738-39 (2007) (holding that a statute is "substantive because it abridges the rights of individuals to bring class action claims"). And since the AAA's Employment Rules — which Respondent incorporated into its arbitration agreement (Exh. B) — allows the Arbitrator to "grant any remedy or relief that would be available to the parties had the matter been heard in court . . . in accordance with applicable law," the agreement necessarily permits the substantive right to sue as a class. Finally, because Respondent drafted the arbitration clause, any ambiguity in the clause should be construed in

---

[2] Copies of all arbitral opinions cited herein are attached at Exhibit F.

7

favor of the Claimants. *See, e.g., Game-A-Tron v. Gordon*, 2 Conn. App. 692, 695 (1984) (interpreting arbitration clause against employer-drafter); *cf. Jock*, 646 F.3d at 117.

 The breadth of Respondent's arbitration clause and the underlying principles of Connecticut law demonstrate an intention to allow class arbitration.

### C. The Federal Substantive Law of Arbitration Does Not Vitiate the Parties' Agreement to Permit Class Arbitration.

 The Federal Arbitration Act (FAA) expresses our country's strong policy in favor of allowing parties to arbitrate their disputes. *See, e.g., Jock*, 646 F.3d at 121-22. In that vein, the FAA significantly cabins the authority of courts to vacate the decisions of parties' chosen arbitrators. *See* 9 U.S.C. § 10(a). In fact, the FAA limits the grounds for vacating an arbitration award to: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or 'where the arbitrators exceeded their powers.'" *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994) (quoting 9 U.S.C. § 10(a)).[3]

 All of this means that judicial review of arbitrators' decisions is extremely limited. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) ("[T]he court will set [the arbitrator's] decision aside only in very unusual circumstances."). Consistent with this deferential approach, courts very rarely conclude that arbitrators have "exceeded their powers" under § 10(a)(4). For a court to intervene, it is "not enough" for the arbitrator to have committed "even a serious error." *Oxford Health Plans*, 133 S. Ct. at 2068. Rather, the arbitrator must have "stray[ed] from interpretation and application of the agreement." *Major League Baseball*

---

[3] The courts may have grafted onto this list a fifth category: "manifest disregard of the law." *See, e.g., Jock*, 646 F.3d at 121-22 & n.1. This requires that the arbitrator knew about but intentionally ignored a "well defined, explicit, and clearly applicable" principle of law. *See id.* at 121 n.1.

8

*Players Ass'n v. Garvey*, 532 U.S. 504, 507 (2001) (quotation marks omitted). "So long as the arbitrator [i]s arguably construing the contract," her judgment will be affirmed. *Oxford Health Plans*, 133 S. Ct. at 2070. This limited judicial review applies with equal force to the process of clause construction. *See, e.g., Jock*, 646 F.3d at 122-25 (reversing district court's vacatur of arbitrator's clause construction award permitting class arbitration).

Here, there can be no reasonable argument that an award construing Respondent's arbitration clause to permit class arbitration would "exceed[] [the Arbitrator's] powers" under § 10(a)(4). To the contrary, at least four federal appellate courts have held that <u>arbitration clauses may authorize class arbitration even where they do not expressly contemplate class procedures</u>. In *Jock v. Sterling Jewelers Inc.*, for example, the arbitration clause committed all employment disputes to private arbitration, and it empowered the arbitrator "to award any types of legal or equitable relief that would be available in a court of competent jurisdiction." 646 F.3d at 116-17. The arbitrator construed the clause to permit class arbitration, a judgment the Second Circuit affirmed. The court of appeals reasoned:

> It is clear from the terms of the arbitration agreement that Sterling required its employees to sign that the parties intended to make available in arbitration all remedies and rights that would otherwise be available in court or before a government agency. It was not unreasonable, and clearly not manifestly wrong, for the arbitrator to construe this to mean that the parties also intended to include the right to proceed as a class and seek class remedies.

*Id.* at 127; *see also Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222-25 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013); *S. Commc'ns Servs. v. Thomas*, --- F.3d ----, 2013 WL 3481467 (11th Cir. 2013) (refusing to vacate arbitrator's decision that contract that "contained no reference to class arbitration" nonetheless authorized class arbitration); *Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18, 22 (1st Cir. 2012) ("We thus reject the . . . precept . . . that there must be express contractual language evincing the parties' intent to permit class or

9

collective arbitration."); *cf. TES Franchising v. Kastel*, 2007 WL 1748141 at *4 (Conn. Super. May 25, 2007) (refusing to vacate arbitrator's "conclusion that a Franchise Agreement permits class arbitration when that Franchise Agreement is silent as to class arbitrations," based on arbitrator's interpretation of Connecticut law).

The U.S. Supreme Court has never held otherwise. In *Stolt-Nielsen*, the Court took pains to note that it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," as the parties there "stipulated that there was 'no agreement' on the issue of class-action arbitration." 130 S. Ct. at 1776 n.10; *see also, e.g.*, *Jock*, 646 F.3d at 121-25 (2d Cir. 2011) ("*Stolt–Nielsen* . . . did not create a bright-line rule requiring that arbitration agreements can only be construed to permit class arbitration where they contain express provisions permitting class arbitration."); *accord Fantastic Sams Franchise Corp.*, 683 F.3d at 22.

Far from undermining the authority of arbitrators to interpret parties' arbitration agreements, federal courts applying the FAA have repeatedly affirmed that it is precisely and uniquely the arbitrators' responsibility to do just that.

## III.    CONCLUSION

For the foregoing reasons, the Claimants respectfully submit that the arbitration clause

authorizes class and collective arbitration, and they request that the Arbitrator issue a partial final

clause construction award construing the clause to permit the assertion of such claims.

RESPECTFULLY SUBMITTED,
THE CLAIMANTS

By: ____ */s/ Joseph D. Garrison* _____ .
        Joseph D. Garrison
        Joshua R. Goodbaum
        GARRISON, LEVIN-EPSTEIN, RICHARDSON,
            FITZGERALD & PIRROTTI, P.C.
        405 Orange Street
        New Haven, CT 06511
        Tel.: (203) 777-4425
        Fax: (203) 776-3965
        jgarrison@garrisonlaw.com
        jgoodbaum@garrisonlaw.com

11

# EXHIBIT A

<u>**Demand for Arbitration by the American Arbitration Association**</u>

**Doreen Savaria and Crystal Raia,**
**individually and on behalf of all other similarly situated employees of Elemis Spa,**
**Claimants,**

**v.**

**Steiner Leisure Limited,**
**Respondent.**

<u>**Background**</u>

1.  This action is brought by Doreen Savaria and Crystal Raia ("the named Claimants") on behalf of all spa service providers who are currently employed by Respondent Steiner Leisure Limited ("Respondent" or "Steiner") at its Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa"), or who were employed by same within the previous six (6) years. These spa service providers (collectively, "the Claimants" or "the Claimant class") include, but are not limited to, all massage therapists, estheticians, nail technicians, hair stylists, and all other employees who provided skilled spa services to customers at the Spa.

2.  Doreen Savaria resides in Connecticut. She worked at the Spa, most recently as lead esthetician, from June 2004 until her termination on December 23, 2011.

3.  Crystal Raia resides in Connecticut. She worked at the Spa, most recently as a massage therapist, from May 2008 until her termination on February 27, 2012.

4.  Respondent is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

5.  Heather Lunny is the former director of the Spa. At all times, she acted as Respondent's agent in its management of the Spa. Respondent is liable for all of Ms. Lunny's actions in her management of the Spa.

6.  The named Claimants were terminated at the direction of Ms. Lunny after they assisted Mohegan Sun investigators in their investigation of a fraud perpetrated by Ms. Lunny and others against Mohegan Sun.

## The Claimant Class

7. The Claimants were compensated by Respondent through a combination of wages, commissions from services provided, "service charges" from services provided, gratuities from customers, and commissions from products sold.

8. Respondent's manner of compensation of the Claimants was frequently changed at the sole discretion of Respondent's management, and it was rarely, if ever, put in writing.

9. The Claimants were the victims of a complex scheme by Respondent's management to deprive the Claimants of the commissions, gratuities, and other compensation to which they were entitled. This scheme gives rise to numerous causes of action.

10. The Claimant class is so numerous that joinder of all members is impracticable. Upon information and belief, there are over 40 spa service providers who work at the Spa or have worked at the Spa in the previous six years.

11. There are question of law and fact common to the class, including whether Respondent engaged in a concerted scheme to deprive the Claimants of compensation they were due.

12. The named Claimants' claims are typical of those of the class members. The named Claimants' claims encompass the challenged practices and conduct of Respondent. Their legal claims are based on the same legal theories as the putative class members'. The legal issues as to which laws were violated by Respondent's conduct apply equally to the named Claimants and to the class as a whole.

13. The named Claimants will fairly and adequately protect the interests of the class.

14. Common question of law and fact predominate over questions affecting only individuals, and a class arbitration is superior to other available methods for the fair and efficient adjudication of this controversy.

## Claim One: Conn. Gen. Stat. § 31-72 — Wages

15. Paragraphs 1-14 are realleged and incorporated by reference herein.

16. Respondent failed to pay the Claimants the full compensation they were owed, in that Respondent, variously or in combination, failed to pay commissions owed to the Claimants on services provided and products sold; paid a lower commission rate on services provided and products sold than it had agreed to pay; revoked commissions paid to the Claimants under the false premise that a customer had demanded a refund of his or her service, when in fact no such refund was provided; failed to pay the Claimants when customers cancelled their appointments, even when Respondent collected cancellation fees from the customers; and calculated the Claimants' commissions and gratuities for their service using Respondent's discounted rate for the service, rather than the regular rate.

2

17. Respondent's failure to pay the Claimants the full compensation they were owed was done with bad faith, arbitrariness, and/or unreasonableness, insofar as Respondent knew or should have known that the Claimants were entitled to more compensation than they were paid.

18. The Claimants are owed their resulting economic losses and interest, as well as liquidated damages of twice the amount of wages due, and attorneys' fees and costs.

**Claim Two: Unjust Enrichment — "Service Charge" Gratuities**

19. Paragraphs 1-18 are realleged and incorporated by reference herein.

20. Respondent charged a 20% "service charge" on all of its spa services. This "service charge" was added automatically to customer invoices.

21. At the direction of Respondent, customers were told that the "service charge" was added to their bill as the gratuity.

22. It is standard practice in the spa industry and at Elemis Spa for customers to pay their service providers a gratuity, above and beyond the cost of their service.

23. Respondent's communications to the customers left the customers with the reasonable impression that the "service charge" was actually a gratuity that would be transferred in its entirety to the Claimant who provided the service to the customer. It also left the customers with the reasonable impression that they had provided the gratuity that was standard in the industry.

24. The "service charge" was not transferred to the Claimants in total. Instead, Respondent retained a percentage of the "service charge" and paid the remainder to the Claimants. The percentage retained by Respondent ranged from 10% to 15% of the "service charge."

25. The Claimants were instructed not to discuss the "service charge" with their customers, thus inhibiting their ability to disabuse their customers of the customers' reasonable misapprehension that the "service charge" would be transferred in its entirety to the Claimant who provided the customer's service.

26. By retaining the gratuities that the customers intended to transfer to the Claimants, Respondent was benefitted.

27. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers was unjust.

28. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers harmed the Claimants.

3

29. The Claimants are owed amounts equitably due, based on the evidence.

**Claim Three: Conversion — "Service Charge" Gratuities**

30. Paragraphs 1-29 are realleged and incorporated by reference herein.

31. The Claimants had a property right in the "service charges" because they were provided by customers with the intent that they be transferred to the Claimants.

32. Respondent deprived the Claimants of an undetermined percentage of the "service charges" for an indefinite period of time.

33. The Claimants did not authorize Respondent to retain the undetermined percentage of the "services charges."

34. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

35. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

**Claim Four: Denial of Benefit to Third Party Beneficiary of Contract — "Service Charge" Gratuities**

36. Paragraphs 1-35 are realleged and incorporated by reference herein.

37. Respondent formed a contract with its customers when the customers paid a "service charge" in consideration for the services provided by Respondent.

38. The contracting parties intended that Respondent would and did assume a direct obligation to the Claimants to pay them the entire service charge.

39. The contract between Respondent and the customers was intended for the benefit of the Claimants insofar as the "service charge" constituted additional compensation in the form of a gratuity.

40. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Five: Unjust Enrichment — Discounted Services**

41. Paragraphs 1-40 are realleged and incorporated by reference herein.

42. Respondent frequently offered customers the opportunity to purchase services from the Spa at reduced rates, including on the website Travelzoo.com.

4

43. Although Respondent charged the customers a reduced rate for the services, the 20% service charge that Respondent assessed was calculated using the regular price of the services purchased.

44. When Respondent transferred a portion of the service charge to one of the Claimants, however, Respondent calculated the Claimant's share using the reduced price, rather than the regular price.

45. By retaining a portion of the service charge that should have been transferred to the Claimants, Respondent was benefitted.

46. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, was unjust.

47. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, harmed the Claimants.

48. The Claimants are owed amounts equitably due, based on the evidence.

## Claim Six: Conversion — Discounted Services

49. Paragraphs 1-48 are realleged and incorporated by reference herein.

50. The Claimants had a property right (at a minimum) in the "service charges" as calculated using the higher, regular rate, pursuant to their agreement with Respondent that they would be compensated, in part, with a percentage of the "service charge."

51. Respondent deprived the Claimants, for an indefinite period of time, of the difference between the "service charge" as calculated using the higher, regular rate, and the "service charge" as calculated using the discounted rate.

52. The Claimants did not authorize Respondent to retain the remaining portion of the "services charges."

53. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

54. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

## Claim Seven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Extra Gratuities

55. Paragraphs 1-54 are realleged and incorporated by reference herein.

56. In addition to the gratuities that were automatically added to their bills, Elemis Spa customers also had the opportunity to give an additional gratuity to their service providers. Customers were offered an envelope, into which they could seal this additional gratuity. Customers who chose to provide this additional gratuity placed their money into the envelope, wrote the name of their service provider on the envelope, sealed the envelope, and placed it in a locked container at the Spa's front desk. (In approximately December 2011, the envelopes were removed, but the locked container remained.)

57. Spa director Heather Lunny was the only person with a key to the locked container into which customers placed the extra gratuities for their service providers.

58. On numerous occasions, one or more Claimants witnessed customers place money in an envelope, write the Claimant's name on the envelope, seal the envelope, and place the envelope in the locked container. When the Claimant later approached Ms. Lunny to retrieve the extra gratuity, Ms. Lunny told the Claimant that there was no envelope for him or her.

59. On information and belief, Ms. Lunny stole the envelopes and the money contained in them.

60. The Claimants had a property right in the extra gratuities placed in the envelopes by their customers because the extra gratuities were provided by customers with the intent that they be transferred to the Claimants.

61. Respondent deprived the Claimants of the extra gratuities for an indefinite period of time.

62. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

63. The Claimants did not authorize Respondent to retain the extra gratuities.

64. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

65. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Eight: Statutory Theft, Conn. Gen. Stat. § 52-564 — Refunds**

66. Paragraphs 1-65 are realleged and incorporated by reference herein.

67. On numerous occasions, Respondent revoked commissions paid to the Claimants on the basis that customers whose services yielded commissions had complained that their services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

68. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

69. In reality, customers had not complained, and/or Respondent did not provide any refund to the customers.

70. Accordingly, the revocation of the Claimants' commission occurred under false pretenses.

71. The Claimants had a property right in the commissions they earned because the commissions were compensation for services rendered.

72. Respondent deprived the Claimants of the commissions for an indefinite period of time.

73. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

74. The Claimants did not authorize Respondent to retain the property.

75. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

76. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Nine: Breach of Contract — Refunds**

77. Paragraphs 1-76 are realleged and incorporated by reference herein.

78. As part of the compensation agreement between the Claimants and Respondent, Respondent paid the Claimants as commissions a percentage of the cost of the services they provided to the Spa's customers.

79. When the Spa offered discounted services to customers, Respondent calculated the Claimants' commissions as a percentage of the discounted price, rather than the regular price.

80. On numerous occasions, Respondent revoked commissions paid to Claimants on the basis that the customers whose services yielded the commissions had complained that the services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

81. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

7

82. Even though the Claimants had only been paid commissions on the discounted price, Respondent withheld from their subsequent paychecks the commissions that would have been paid on the regular-priced service.

83. Accordingly, Respondent withheld from the Claimants more money than it had originally paid the Claimants to perform the services. The result was that the Claimants actually paid Respondent to perform the services.

84. Respondent breached its compensation agreement with the Claimants insofar as it withheld more money than it had originally paid the Claimants to perform the services.

85. The Claimants are owed the expectation value of the contracts, plus interest.

## Claim Ten: Breach of Contract — Poker Room

86. Paragraphs 1-85 are realleged and incorporated by reference herein.

87. Throughout 2009, Respondent sent several Claimants to provide chair massages in the Poker Room of the Mohegan Sun casino.

88. Respondent told the Claimants that they would be paid $1 for every minute of massage they provided. This rate was substantially higher than the rate of compensation that the Claimants received for their regularly-scheduled services at the Spa.

89. The Claimants accepted Respondent's offer and agreed to provide services in the Poker Room in exchange for compensation of $1 for every minute of massage they provided.

90. The customers in the Poker Room paid the Claimants with cash or casino chips (which could be traded with the casino for cash). The Claimants gave Respondent all of the cash and chips they earned, as well as a list of the services they provided.

91. Respondent failed to pay the Claimants $1 per minute for the services they provided.

92. Respondent breached its agreement with the Claimants insofar as it failed to pay the Claimants the agreed-upon rate of $1 per minute for the services provided.

93. The Claimants are owed the expectation value of the contracts, plus interest.

## Claim Eleven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Additional Theft

94. Paragraphs 1-93 are realleged and incorporated by reference herein.

95. Upon information and belief, Heather Lunny used a variety of unlawful tactics to steal additional money from some or all of the Claimants.

96. For example, in approximately May 2010, Respondent sent several Claimants to provide chair massages at a corporate meeting of Best Buy, being held at Mohegan Sun casino. The customer who paid Best Buy's invoice left a considerable gratuity (approximately $2800) for the Claimants, in addition to the Claimants' other compensation for the services they provided. Best Buy paid with a credit card. Upon information and belief, Ms. Lunny refunded the Best Buy gratuity at least twice and recharged the gratuity each time as cash. Ms. Lunny did this to facilitate her theft of some or all of the gratuity. Ms. Lunny did in fact steal some or all of the gratuity. As a result, the Claimants did not receive some or all of the gratuity they were given.

97. The Claimants had a property right in the money stolen by Ms. Lunny because they either earned the funds from Respondent as part of their compensation or were given the money by their customers with the intention that the Claimants retain the property.

98. Respondent deprived the Claimants of the property for an indefinite period of time.

99. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

100.   The Claimants did not authorize Respondent to retain the property.

101.   The deprivation harmed the Claimants by depriving them of property to which they were entitled.

102.   The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Twelve: Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* — Failure to Pay Overtime Premium**

103.   Paragraphs 1-102 are realleged and incorporated by reference herein.

104.   During one or more weeks of the Claimants' employment with Respondent, one or more Claimants worked in excess of forty hours in a given week, yet the Claimants were not compensated at the statutory rate of one-and-one-half times their regular rate of pay for all hours in excess of forty hours in a given week.

105.   Respondent failed to pay any overtime premium for some hours worked in excess of forty hours in a given week.

106.   Respondent also failed to properly calculate the Claimants' regular rate of pay, because Respondent failed to include all forms of compensation the Claimants did receive or were entitled to receive. Accordingly, when Respondent did pay Claimants their overtime premiums, the premiums were smaller than the Claimants were entitled to receive under the FLSA, given their regular rate of pay.

9

107.   Respondent's conduct in this regard was a willful violation of or showed reckless disregard for the FLSA as evidenced by its failure to compensate the Claimants at the statutory rate.

108.   Respondent's conduct in violation of the FLSA was unreasonable, arbitrary, and/or in bad faith.

109.   The Claimants are owed compensation for all overtime hours worked, interest, liquidated damages, and attorneys' fees and costs.

**Claim Twelve: Connecticut Minimum Wage Act (CMWA), Conn. Gen. Stat. §§ 31-58 et seq. — Failure to Pay Overtime Premium**

110.   Paragraphs 1-109 are realleged and incorporated by reference herein.

111.   Based on the foregoing, Respondent's failure to pay the Claimants properly-calculated overtime premiums was a willful violation of the CMWA.

112.   Respondent's conduct in violation of the CMWA was unreasonable, arbitrary, and/or in bad faith.

113.   The Claimants are owed compensation for all overtime hours worked, interest, penalty damages, and attorneys' fees and costs.

Dated: September 11, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANTS

By:   */s/ Joseph D. Garrison*
Joseph D. Garrison
Ethan A. Levin-Epstein
Joshua R. Goodbaum
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT 06511
Tel.:   (203) 777-4425
Fax:    (203) 776-3965
jgarrison@garrisonlaw.com
elevin-epstein@garrisonlaw.com
jgoodbaum@garrisonlaw.com

10

# EXHIBIT B

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION
Employment and Class Action Arbitration Tribunal

Savaria and Raia v. Steiner Leisure Ltd.
Case No. 12 160 00454 12

Case Management Order #2

Another case management conference call was held on January 31, 2013. Messrs.
Garrison and Goodbaum represented Claimants, and Mr. Segal appeared on behalf of
Respondents.[1]  Jonathan Weed of the American Arbitration Association ("AAA") also
participated.

Mr. Garrison reported that he and Ms. Iassogna had agreed that the new
individual claims would be handled separately, and there will be no motion to consolidate
them in this putative class action. Accordingly, Ms. Iassogna is not entering an
appearance and will not need to participate in future conference calls in this case.

Counsel have also agreed that it makes no sense to move forward with clause
construction in this case until the Supreme Court rules in a few months in Oxford Health
Plans v. Sutter. When that decision is published, Mr. Garrison will notify Mr. Weed and
request arrangements for a conference call with Respondents' counsel and me
approximately 10 days after the decision. Until then, the clause construction issue will be
held in abeyance, and the conference call previously set for 11am on February 12, 2013 is
cancelled.

At counsel's request, however, I will be ruling on the question of responsibility
for the costs and fees of arbitration, as briefed by the parties on January 29, 2013.

---

[1] Patricia Iassogna, Esq., of the Law Offices of Brian Farrell, was present as new counsel for the
Respondents with regard to the six individual claims filed recently by Mr. Garrison.

1

All counsel have agreed to direct communication with me.  Correspondence and other documents may be sent to me electronically at EdieDinneen@aol.com.  For any submissions sent by USPS or express delivery (marked for "No Signature Required"), the address is 1707 So. Hesperides St., Tampa, FL 33629.  Fax is 813.288.8695.


DATED:  February 2, 2013


/s/ _____

              EDITH N. DINNEEN
              ARBITRATOR

# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION
Employment and Class Action Arbitration Tribunal

Savaria and Raia v. Steiner Leisure Ltd.
Case No. 12 160 00454 12

Case Management Order #2

Another case management conference call was held on January 31, 2013.  Messrs.

Garrison and Goodbaum represented Claimants, and Mr. Segal appeared on behalf of

Respondents.[1]   Jonathan Weed of the American Arbitration Association ("AAA") also

participated.

Mr. Garrison reported that he and Ms. Iassogna had agreed that the new

individual claims would be handled separately, and there will be no motion to consolidate

them in this putative class action.  Accordingly, Ms. Iassogna is not entering an

appearance and will not need to participate in future conference calls in this case.

Counsel have also agreed that it makes no sense to move forward with clause

construction in this case until the Supreme Court rules in a few months in Oxford Health

Plans v. Sutter.  When that decision is published, Mr. Garrison will notify Mr. Weed and

request arrangements for a conference call with Respondents' counsel and me

approximately 10 days after the decision.  Until then, the clause construction issue will be

held in abeyance, and the conference call previously set for 11am on February 12, 2013 is

cancelled.

At counsel's request, however, I will be ruling on the question of responsibility

for the costs and fees of arbitration, as briefed by the parties on January 29, 2013.

---

[1] Patricia Iassogna, Esq., of the Law Offices of Brian Farrell, was present as new counsel for the
Respondents with regard to the six individual claims filed recently by Mr. Garrison.

1

All counsel have agreed to direct communication with me.  Correspondence and other documents may be sent to me electronically at EdieDinneen@aol.com.  For any submissions sent by USPS or express delivery (marked for "No Signature Required"), the address is 1707 So. Hesperides St., Tampa, FL 33629.  Fax is 813.288.8695.

DATED:  February 2, 2013

/s/ _____
          EDITH N. DINNEEN
          ARBITRATOR

2

EXHIBIT 4

**Rao, Anthony**

| | |
|---|---|
| **From:** | Rao, Anthony |
| **Sent:** | Monday, July 29, 2013 11:40 AM |
| **To:** | JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael |
| **Subject:** | RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12 |

Dear Joe:

Sorry again that I had to miss the call on Thursday.  I just got a message from my assistant that you called this morning to discuss a briefing schedule.  Thanks for following up.

I understand Arbitrator Dinneen wants us to confer on clause construction, and if necessary, agree on a briefing schedule.

Our position is that the arbitration agreement does not expressly or implicitly permit class or collective action arbitration.  As such, "... it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to arbitration."  Stolt-Nielsen v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1776 (2010) ("...an intention to authorize class arbitration cannot be "infer[red] solely from the fact of the parties' agreement to arbitrate").

The unanimous opinion in Oxford Health Plans LLC v. Sutter, No. 12-135 (June 10, 2013) solidifies our position.  Oxford did not hold that class action arbitrations are permissible when an arbitration agreement is silent as to class action waiver.  Rather, it narrowly held that because the parties agreed the arbitrator should decide whether their contract authorized class arbitration, and he concluded that it did, then the arbitral decision must stand (regardless of a court's view of the decision's "(de)merits").  We do not agree (and expressly deny) that Arbitrator Dinneen has the authority, by contract or otherwise, to decide whether our arbitration agreement authorizes class/collective action arbitration.

Oxford is fundamentally different than Stolt-Nielsen because in Stolt-Nielsen, the arbitrators neither interpreted a contract nor identified an agreement authorizing class proceedings.  Rather, the parties in Stolt-Nielsen entered into a stipulation that they had never reached an agreement on class arbitration.  Instead of interpreting the parties' intent, the Stolt-Nielsen arbitrators imposed their own conception of sound policy when they ordered class proceedings ("the task of an arbitrator ... is to interpret and enforce a contract, not to make public policy").  We feel strongly that if Arbitrator Dinneen decides that class/collective arbitration is permissible under our arbitration agreement (where there is no language granting her this authority, or even the authority to decide arbitrability of claims), then such a decision would be outside the scope of her contractual authority and directly contrary to Stolt-Nielsen.

The established law make a clause construction hearing inappropriate in this matter.  We are ready to arbitrate individual arbitrations (those current or former employees who actually file for arbitration) beginning in October 2013.

However, if your team wants to go through the clause construction process, pick a date when you want to file your papers supporting your argument that a class/collective action may be maintained in arbitration; we will file our opposition two weeks later (no reply brief).  If Arbitrator Dinneen decides she can rule on the issue, then she can make her decision on the papers or hold a telephonic hearing and then make her decision.  The losing party may immediately appeal her decision to federal

court. If she decides she cannot rule on the issue, you can make your class/collective action arbitration arguments before the US District Court in Ct. while we stay the arbitrations pending the Court's arbitrability ruling.



Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, July 25, 2013 2:25 PM
**To:** Rao, Anthony; JonathanWeed@adr.org; JGoodbaum@garrisonlaw.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael
**Subject:** Re: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12

Mr. Segal and I were on the call today, and I told him that all counsel should confer and agree on a clause construction briefing schedule and advise me by 5pm on July 31 as to what it will be.

Edith N. Dinneen
Arbitrator

In a message dated 7/25/2013 11:36:10 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:

I have 3 court filings today and have to move the conference to tomorrow. Sorry. I can do 2:00 pm tomorrow.



Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

**From:** AAA Jonathan Weed [mailto:JonathanWeed@adr.org]
**Sent:** Thursday, July 18, 2013 3:18 PM
**To:** EdieDinneen@aol.com; JGoodbaum@garrisonlaw.com; Rao, Anthony
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tillakos, Michael; AAA Jonathan Weed
**Subject:** RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12

Dear Counsel,

Per the below, this will confirm that a conference call has been set for July 25, 2013 at 2:00 PM EDT.  Please dial in to the conference call by using the following telephone number and security code:

Telephone: (888) 537-7715

Security Code: 43775158#

Please note that the Case Administrator will not initiate the conference call.  All participants are requested to dial in at the above time in order to ensure that the call may begin promptly.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,



**Jonathan Weed, Manager of ADR Services**
American Arbitration Association
T:401 431 4721
F:866 644 0234
E:JonathanWeed@adr.org
950 Warren Ave.
East Providence, RI 02914-1414
www.adr.org

Yvonne L. Baglini, Director
Northeast Case Management Center

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, July 18, 2013 8:39 AM
**To:** JGoodbaum@garrisonlaw.com; ARao@duanemorris.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; MTiliakos@duanemorris.com;
AAA Jonathan Weed
**Subject:** Re: Savaria v. Steiner

Mr. Weed - Please set up a conference call for 2pm on July 25.  Thank you.

In a message dated 7/18/2013 8:25:03 A.M. Eastern Daylight Time, JGoodbaum@garrisonlaw.com writes:

July 25 after 2pm is fine for Claimants.  Please advise.

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Wednesday, July 17, 2013 3:57 PM
**To:** ARao@duanemorris.com; Joshua R. Goodbaum
**Cc:** Joseph D. Garrison; ssegal@myhrattorney.com; MTiliakos@duanemorris.com;
jonathanweed@adr.org
**Subject:** Re: Savaria v. Steiner

I'm available on July 25 anytime except 9:30am to 12:30pm.

Alternatively, if you want to discuss and agree on a clause construction schedule on your own, that's fine too.

4

In a message dated 7/16/2013 11:17:35 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:

I am in depo in Ohio both days but Thursday the 25th is open.

Anthony Rao

On Jul 16, 2013, at 9:43 AM, "Joshua R. Goodbaum" <JGoodbaum@garrisonlaw.com> wrote:

> Dear Arbitrator Dinneen:
>
>
> The Claimants' counsel are available anytime on Tuesday, July 23, or before
> 10:30 am on Wednesday, July 24.
>
>
> Thank you.
>
>
> Joshua R. Goodbaum
>
> Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.
>
> 405 Orange Street
>
> New Haven, Connecticut 06511
>
> Tel.  (203) 777-4425
>
> Fax  (203) 776-3965
>
> jgoodbaum@garrisonlaw.com
>
> garrisonlaw.com

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Monday, July 15, 2013 3:49 PM
**To:** Joseph D. Garrison; Joshua R. Goodbaum; Ethan Levin-Epstein;
ssegal@myhrattorney.com; Arao@duanemorris.com;
Mtiliakos@duanemorris.com
**Cc:** jonathanweed@adr.org
**Subject:** Re: Savaria v. Steiner

5

Dear Counsel:

Would it be appropriate for us to have a brief conference call now to set a schedule for the clause construction briefing?

I am available at or after 2:30pm on July 18, anytime on July 19, at or before 11am on July 22, anytime on July 23, or at or before 11am on July 24.

Edith N. Dinneen

Arbitrator

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

Edith N. Dinneen
Arbitrator

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

Edie

6

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614


Edith N. Dinneen
Arbitrator


Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

EXHIBIT 5

**Rao, Anthony**

| | |
|---|---|
| **From:** | Joseph D. Garrison <JGarrison@garrisonlaw.com> |
| **Sent:** | Wednesday, July 31, 2013 10:41 AM |
| **To:** | Rao, Anthony |
| **Subject:** | Clause Construction Briefing |

We disagree with your interpretation of the arbitrator's authority to determine whether a class action arbitration is appropriate, so we will be briefing this matter. We suggest that our initial brief would be due on August 23. You suggested that you needed two weeks, but Labor Day falls into that two weeks so you will need to let me know whether your brief would be due on September 6 or September 13. Either date is fine with us. We would then request two weeks for our reply, so it would be due either September 13 or September 20, depending on your choice of your due date.


Because I am supposed to reply to the arbitrator today, please let me know your pleasure as soon as you can.

EXHIBIT 6

## Rao, Anthony

| | |
|---|---|
| **From:** | Rao, Anthony |
| **Sent:** | Thursday, August 01, 2013 3:18 PM |
| **To:** | EdieDinneen@aol.com; JonathanWeed@adr.org; JGoodbaum@garrisonlaw.com |
| **Cc:** | JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael |
| **Subject:** | RE: Savaria v. Steiner |
| **Attachments:** | Clause Construction Briefing; RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12 |

Dear Arbitrator Dinneen:

While Steiner appreciates your work to date and respects your authority to arbitrate individual claims under the power provided to you under the arbitration agreement, respectfully, the arbitration agreement does not explicitly provide any arbitrator with the power to decide in a clause construction hearing whether the plaintiffs may bring this arbitration as a class or collective action. Given the attached emails, it appears likely that plaintiffs' counsel will seek to have you decide in a clause construction hearing whether they may bring a class/collective action arbitration. Steiner expressly denies that the arbitration agreement provides any arbitrator with the power to decide whether a claim may be brought as a class or collective action in arbitration.

Procedurally, Steiner reserves the right to seek a Connecticut Federal Court's ruling on this issue. However, being courts of limited jurisdiction, a Connecticut Federal Court cannot provide Steiner with an advisory opinion before plaintiffs actually seek a ruling from you concerning the class/collective action issue. While we wrote plaintiffs' counsel the following in the attached email,

> [h]owever, if your team wants to go through the clause construction process, pick a date when you want to file your papers supporting your argument that a class/collective action may be maintained in arbitration; we will file our opposition two weeks later (no reply brief). If Arbitrator Dinneen decides she can rule on the issue, then she can make her decision on the papers or hold a telephonic hearing and then make her decision. The losing party may immediately appeal her decision to federal court. If she decides she cannot rule on the issue, you can make your class/collective action arbitration arguments before the US District Court in Ct. while we stay the arbitrations pending the Court's arbitrability ruling[,]

Steiner explicitly reserves the right, before filing and serving you with its opposition to plaintiffs' moving papers, to file a petition or other motion regarding the class/collective action arbitration issue with the Connecticut Federal Court (after there is an actual "case or controversy" to decide) and to seek a stay of the arbitration pending the court's decision.

Respectfully,

1



Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, August 01, 2013 1:09 PM
**To:** EdieDinneen@aol.com; Rao, Anthony; JonathanWeed@adr.org; JGoodbaum@garrisonlaw.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael
**Subject:** Re: Savaria v. Steiner

The schedule as reported by Mr. Garrison to Mr. Weed is acceptable:  Claimants' clause construction brief will be due on August 23, Respondent's opposition will be due on September 13, and a reply will be allowed on September 27.  Within three business days of receipt, if Respondent finds that the reply contains any "beyond the scope of the opposition" arguments, it may apply for permission to submit a sur-reply.

Edith N. Dinneen
Arbitrator

In a message dated 7/25/2013 2:25:13 P.M. Eastern Daylight Time, EdieDinneen@aol.com writes:

> Mr. Segal and I were on the call today, and I told him that all counsel should confer and agree on a clause construction briefing schedule and advise me by 5pm on July 31 as to what it will be.
>
> Edith N. Dinneen
> Arbitrator
>
> In a message dated 7/25/2013 11:36:10 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:
>
>> I have 3 court filings today and have to move the conference to tomorrow.  Sorry. I can do 2:00 pm tomorrow.



II

Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

---

**From:** AAA Jonathan Weed [mailto:JonathanWeed@adr.org]
**Sent:** Thursday, July 18, 2013 3:18 PM
**To:** EdieDinneen@aol.com; JGoodbaum@garrisonlaw.com; Rao, Anthony
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael; AAA Jonathan Weed
**Subject:** RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12

Dear Counsel,

Per the below, this will confirm that a conference call has been set for July 25, 2013 at 2:00 PM
EDT.  Please dial in to the conference call by using the following telephone number and security code:

Telephone: (888) 537-7715

Security Code: 43775158#

Please note that the Case Administrator will not initiate the conference call.  All participants are
requested to dial in at the above time in order to ensure that the call may begin promptly.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

3

 **Jonathan Weed, Manager of ADR Services**
American Arbitration Association
T:401 431 4721
F:866 644 0234
E:JonathanWeed@adr.org
950 Warren Ave.
East Providence, RI 02914-1414
www.adr.org

Yvonne L. Baglini, Director
Northeast Case Management Center

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, July 18, 2013 8:39 AM
**To:** JGoodbaum@garrisonlaw.com; ARao@duanemorris.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; MTiliakos@duanemorris.com; AAA Jonathan Weed
**Subject:** Re: Savaria v. Steiner

Mr. Weed – Please set up a conference call for 2pm on July 25. Thank you.

In a message dated 7/18/2013 8:25:03 A.M. Eastern Daylight Time, JGoodbaum@garrisonlaw.com writes:

July 25 after 2pm is fine for Claimants. Please advise.

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Wednesday, July 17, 2013 3:57 PM
**To:** ARao@duanemorris.com; Joshua R. Goodbaum
**Cc:** Joseph D. Garrison; ssegal@myhrattorney.com; MTiliakos@duanemorris.com; jonathanweed@adr.org
**Subject:** Re: Savaria v. Steiner

I'm available on July 25 anytime except 9:30am to 12:30pm.

Alternatively, if you want to discuss and agree on a clause construction schedule on your own, that's fine too.

4

In a message dated 7/16/2013 11:17:35 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:

I am in depo in Ohio both days but Thursday the 25th is open.

Anthony Rao


On Jul 16, 2013, at 9:43 AM, "Joshua R. Goodbaum" <JGoodbaum@garrisonlaw.com> wrote:

> Dear Arbitrator Dinneen:


> The Claimants' counsel are available anytime on Tuesday, July 23, or before 10:30 am on Wednesday, July 24.


> Thank you.


> Joshua R. Goodbaum

> Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.

> 405 Orange Street

> New Haven, Connecticut 06511

> Tel.  (203) 777-4425

> Fax  (203) 776-3965

> jgoodbaum@garrisonlaw.com

> garrisonlaw.com


> **From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
> **Sent:** Monday, July 15, 2013 3:49 PM
> **To:** Joseph D. Garrison; Joshua R. Goodbaum; Ethan Levin-Epstein; ssegal@myhrattorney.com; Arao@duanemorris.com; Mtiliakos@duanemorris.com
> **Cc:** jonathanweed@adr.org
> **Subject:** Re: Savaria v. Steiner

Dear Counsel:


Would it be appropriate for us to have a brief conference call now
to set a schedule for the clause construction briefing?


I am available at or after 2:30pm on July 18, anytime on July 19, at or
before 11am on July 22, anytime on July 23, or at or before 11am on
July 24.


Edith N. Dinneen

Arbitrator


For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the
review of the party to whom it is addressed. If you have received this transmission in error, please immediately
return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other
privilege.


Edith N. Dinneen
Arbitrator


Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614


Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614


Edie

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614


Edith N. Dinneen
Arbitrator


Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

7

**Rao, Anthony**

| | |
|---|---|
| **From:** | Rao, Anthony |
| **Sent:** | Monday, July 29, 2013 11:40 AM |
| **To:** | 'JGarrison@garrisonlaw.com'; 'ssegal@myhrattorney.com'; Tiliakos, Michael |
| **Subject:** | RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12 |

Dear Joe:

Sorry again that I had to miss the call on Thursday. I just got a message from my assistant that you called this morning to discuss a briefing schedule. Thanks for following up.

I understand Arbitrator Dinneen wants us to confer on clause construction, and if necessary, agree on a briefing schedule.

Our position is that the arbitration agreement does not expressly or implicitly permit class or collective action arbitration. As such, "... it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to arbitration." Stolt-Nielsen v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1776 (2010) ("...an intention to authorize class arbitration cannot be "infer[red] solely from the fact of the parties' agreement to arbitrate").

The unanimous opinion in Oxford Health Plans LLC v. Sutter, No. 12-135 (June 10, 2013) solidifies our position. Oxford did not hold that class action arbitrations are permissible when an arbitration agreement is silent as to class action waiver. Rather, it narrowly held that because the parties agreed the arbitrator should decide whether their contract authorized class arbitration, and he concluded that it did, then the arbitral decision must stand (regardless of a court's view of the decision's "(de)merits"). We do not agree (and expressly deny) that Arbitrator Dinneen has the authority, by contract or otherwise, to decide whether our arbitration agreement authorizes class/collective action arbitration.

Oxford is fundamentally different than Stolt-Nielson because in Stolt-Nielsen, the arbitrators neither interpreted a contract nor identified an agreement authorizing class proceedings. Rather, the parties in Stolt-Nielsen entered into a stipulation that they had never reached an agreement on class arbitration. Instead of interpreting the parties' intent, the Stolt-Nielsen arbitrators imposed their own conception of sound policy when they ordered class proceedings ("the task of an arbitrator ... is to interpret and enforce a contract, not to make public policy"). We feel strongly that if Arbitrator Dinneen decides that class/collective arbitration is permissible under our arbitration agreement (where there is no language granting her this authority, or even the authority to decide arbitrability of claims), then such a decision would be outside the scope of her contractual authority and directly contrary to Stolt-Nielson.

The established law make a clause construction hearing inappropriate in this matter. We are ready to arbitrate individual arbitrations (those current or former employees who actually file for arbitration) beginning in October 2013.

However, if your team wants to go through the clause construction process, pick a date when you want to file your papers supporting your argument that a class/collective action may be maintained in arbitration; we will file our opposition two weeks later (no reply brief). If Arbitrator Dinneen decides she can rule on the issue, then she can make her decision on the papers or hold a telephonic hearing and then make her decision. The losing party may immediately appeal her decision to federal

court.  If she decides she cannot rule on the issue, you can make your class/collective action arbitration arguments before the US District Court in Ct. while we stay the arbitrations pending the Court's arbitrability ruling.



Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, July 25, 2013 2:25 PM
**To:** Rao, Anthony; JonathanWeed@adr.org; JGoodbaum@garrisonlaw.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael
**Subject:** Re: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12

Mr. Segal and I were on the call today, and I told him that all counsel should confer and agree on a clause construction briefing schedule and advise me by 5pm on July 31 as to what it will be.

Edith N. Dinneen
Arbitrator

In a message dated 7/25/2013 11:36:10 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:

I have 3 court filings today and have to move the conference to tomorrow.  Sorry. I can do 2:00 pm tomorrow.



Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

**From:** AAA Jonathan Weed [mailto:JonathanWeed@adr.org]
**Sent:** Thursday, July 18, 2013 3:18 PM
**To:** EdieDinneen@aol.com; JGoodbaum@garrisonlaw.com; Rao, Anthony
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael; AAA Jonathan Weed
**Subject:** RE: Savaria v. Steiner - Setting conference call - AAA No. 12 160 454 12

Dear Counsel,

Per the below, this will confirm that a conference call has been set for July 25, 2013 at 2:00 PM EDT. Please dial in to the conference call by using the following telephone number and security code:

Telephone: (888) 537-7715

Security Code: 43775158#

Please note that the Case Administrator will not initiate the conference call. All participants are requested to dial in at the above time in order to ensure that the call may begin promptly.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

3

 **Jonathan Weed, Manager of ADR Services**
American Arbitration Association
T:401 431 4721
F:866 644 0234
E:JonathanWeed@adr.org
950 Warren Ave.
East Providence, RI 02914-1414
www.adr.org

Yvonne L. Baglini, Director
Northeast Case Management Center

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Thursday, July 18, 2013 8:39 AM
**To:** JGoodbaum@garrisonlaw.com; ARao@duanemorris.com
**Cc:** JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; MTIliakos@duanemorris.com; AAA Jonathan Weed
**Subject:** Re: Savaria v. Steiner

Mr. Weed - Please set up a conference call for 2pm on July 25. Thank you.


In a message dated 7/18/2013 8:25:03 A.M. Eastern Daylight Time, JGoodbaum@garrisonlaw.com writes:

July 25 after 2pm is fine for Claimants. Please advise.


**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Wednesday, July 17, 2013 3:57 PM
**To:** ARao@duanemorris.com; Joshua R. Goodbaum
**Cc:** Joseph D. Garrison; ssegal@myhrattorney.com; MTIliakos@duanemorris.com; jonathanweed@adr.org
**Subject:** Re: Savaria v. Steiner


I'm available on July 25 anytime except 9:30am to 12:30pm.


Alternatively, if you want to discuss and agree on a clause construction schedule on your own, that's fine too.

4

In a message dated 7/16/2013 11:17:35 A.M. Eastern Daylight Time, ARao@duanemorris.com writes:

I am in depo in Ohio both days but Thursday the 25th is open.

Anthony Rao

On Jul 16, 2013, at 9:43 AM, "Joshua R. Goodbaum" <JGoodbaum@garrisonlaw.com> wrote:

Dear Arbitrator Dinneen:

The Claimants' counsel are available anytime on Tuesday, July 23, or before 10:30 am on Wednesday, July 24.

Thank you.

Joshua R. Goodbaum

Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.

405 Orange Street

New Haven, Connecticut 06511

Tel.  (203) 777-4425

Fax  (203) 776-3965

jgoodbaum@garrisonlaw.com

garrisonlaw.com

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Monday, July 15, 2013 3:49 PM
**To:** Joseph D. Garrison; Joshua R. Goodbaum; Ethan Levin-Epstein;
ssegal@myhrattorney.com; Arao@duanemorris.com;
Mtiliakos@duanemorris.com
**Cc:** jonathanweed@adr.org
**Subject:** Re: Savaria v. Steiner

Dear Counsel:

Would it be appropriate for us to have a brief conference call now to set a schedule for the clause construction briefing?

I am available at or after 2:30pm on July 18, anytime on July 19, at or before 11am on July 22, anytime on July 23, or at or before 11am on July 24.

Edith N. Dinneen

Arbitrator

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

Edith N. Dinneen
Arbitrator

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

Edie

6

Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614


Edith N. Dinneen
Arbitrator


Edith N. Dinneen, Esq.
Arbitrator and Mediator
1707 So. Hesperides St.
Tampa, FL 33629
813.286.0614

## Rao, Anthony

| | |
|---|---|
| **From:** | Joseph D. Garrison <JGarrison@garrisonlaw.com> |
| **Sent:** | Wednesday, July 31, 2013 10:41 AM |
| **To:** | Rao, Anthony |
| **Subject:** | Clause Construction Briefing |

We disagree with your interpretation of the arbitrator's authority to determine whether a class action arbitration is appropriate, so we will be briefing this matter. We suggest that our initial brief would be due on August 23. You suggested that you needed two weeks, but Labor Day falls into that two weeks so you will need to let me know whether your brief would be due on September 6 or September 13. Either date is fine with us. We would then request two weeks for our reply, so it would be due either September 13 or September 20, depending on your choice of your due date.

Because I am supposed to reply to the arbitrator today, please let me know your pleasure as soon as you can.

1

EXHIBIT 7

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

## ATTORNEYS AT LAW
### 405 ORANGE STREET
### NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD^
NINA T. PIRROTTI*
JOSHUA R. GOODBAUM^*

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

* ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

December 20, 2012


RECEIVED
Voorhees, NJ
DEC 21 2012
AMERICAN ARBITRATION
ASSOCIATION

**VIA FEDERAL EXPRESS**

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Re:   Catherine Sullivan v. Steiner Leisure, Ltd.

To Whom It May Concern:

We have enclosed, for filing, the Claimant's Demand for Arbitration pertaining to the above-referenced matter. Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

Ms. Sullivan is a member of the Claimant Class in AAA CASE 12 160 00454 12, *Savaria et al v. Steiner Leisure Ltd.* We respectfully request that Ms. Sullivan's individual claims be consolidated with the Class arbitration.

Thank you.

Respectfully submitted,

Joseph D. Garrison
Attorney for the Claimants

JDG/lmd
Enclosure

**American Arbitration Association**
*Dispute Resolution Services Worldwide*
Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Employment Arbitration Rules Demand for Arbitration**
*Please visit our website at www.adr.org if you would like to file this case online.*

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* [X] *There is no additional administrative fee for this service.*

| Parties (Claimant) | |  |  |
|---|---|---|---|
| Catherine Sullivan | | | |
| Name of Claimant: | | | |
| 76 Geer Avenue | | | |
| Address: | | | |
| Norwich | CT | 06360 | |
| City: | State | Zip: | |
| 1-860-227-5789 | | | |
| Phone: | Fax: | | |
| CSullivan223@yahoo.com | | | |
| Email Address: | | | |

Joseph Garrison
Representative's Name (if known):
Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.
Firm (if applicable):
405 Orange Street
Address:
New Haven          CT          06511
City:                      State       Zip:
203-777-4425          203-776-3965
Phone:                    Fax:
jgarrison@garrisonlaw.com
Email Address:

*RECEIVED*
*Voorhees, NJ*
*DEC 21 2012*
*AMERICAN ARBITRATION ASSOCIATION*

| Parties (Respondent): | | | |
|---|---|---|---|
| Steiner Leisure, Ltd. | | | |
| Name of Respondent: | | | |
| 770 South Dixie Highway, Suite 200 | | | |
| Address: | | | |
| Coral Gables | FL | 33124 | |
| City: | State | Zip: | |
| 1-305-358-9002 | | | |
| Phone: | Fax: | | |
| www.steinerleisure.com | | | |
| Email Address: | | | |

Representative's Name (if known):

Firm (if applicable):

Address:

City:                      State       Zip:

Phone:                    Fax:

Email Address:

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

[X] Less than $100,000   [ ] $100,000 - $250,000   [ ] Over $250,000

Amount of Claim:

Claim Involves:

[X] Statutorily Protected Rights   [ ] Non-statutorily protected rights

In detail, please describe the nature of each claim.
You may attach additional pages if necessary:

SEE ATTACHED

**Other Relief Sought:** [ ] Arbitration Costs  [X] Attorney's Fees  [X] Interest  [X] Punitive/Exemplary Damages  [ ] Other:

**Neutral:** Please describe the qualifications for arbitrator(s)
to hear this dispute:

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____   Days: _____

Hearing locale: Uncasville, Connecticut

[ ] Requested by Claimant  [X] Locale provision included in the contract

**Filing Fee:** [X] Employer-Promulgated Plan fee requirement or $175     (max amount per AAA rules)
[ ] Standard Fee Schedule for individually negotiated contracts     [ ] Flexible Fee Schedule for individually negotiated contracts
Amount Tendered:

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as
provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043.  Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are
entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to
all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe
that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household.
Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case
Filing Services can be reached at 377-495-4185.

Signature of claimant or representative: _____   Date: 12-21-12

<u>Demand for Arbitration by the American Arbitration Association</u>

Catherine Sullivan,
Claimant,

v.

Steiner Leisure Limited,
Respondent.

## Background

1. Catherine Sullivan ("Ms. Sullivan" or "Claimant") resides in Connecticut.

2. Steiner Leisure Limited ("Steiner" or "Respondent") is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

3. Respondent owns and operates the Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa").

4. Ms. Sullivan worked as a massage therapist at the Spa from May 2003 until her termination on February 2, 2012.

## Retaliation

5. In or about August 2010, while working at the Spa, Ms. Sullivan fell over a piece of furniture and broke her wrist in two places.

6. Ms. Sullivan's medical condition prevented her from working from August 2010 until January 2011.

7. During that time, Ms. Sullivan applied for and obtained workers' compensation benefits pursuant to the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-290a.

8. Prior to applying for workers' compensation benefits, Ms. Sullivan had no material disciplinary issues at the Spa, and she received the Spa's "Employee of the Month" award several times.

9. Upon her return to the Spa in January 2011, however, Ms. Sullivan was repeatedly subjected to unwarranted monitoring, warnings, and discipline by the Spa's management, including being called into the Spa's office for issues that before her leave had or would have gone unmentioned.

10. On February 2, 2012, after approximately one year of harassing behavior on the part of the Spa's management, Ms. Sullivan was terminated for a pretextual reason that was not worthy of belief.

**Claim One: Connecticut Workers' Compensation Act (CT WCA), Conn. Gen. Stat. § 31-290a – Retaliatory Discharge**

11. Paragraphs 1-10 are realleged and incorporated by reference herein.

12. Claimant is an employee within the meaning of the CT WCA, Conn. Gen. Stat. § 31-275(9).

13. Respondent is an employer within the meaning of the CT WCA, Conn. Gen. Stat. § 31-275(10).

14. Claimant engaged in a protected activity insofar as she filed for workers' compensation benefits.

15. Respondent was aware that Claimant filed for workers' compensation benefits.

16. Respondent took an adverse action against Claimant insofar as it harassed and ultimately terminated her.

17. A causal connection exists between Claimant's protected activity and Respondent's adverse action.

18. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-290a(b), including attorney's fees and costs.

**Claim Two: Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-290a – Punitive Damages for Retaliatory Discharge**

19. Paragraphs 1-18 are realleged and incorporated by reference herein.

20. Respondent's retaliation against Claimant was committed willfully or with reckless indifference to Claimant's rights under the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-290a.

21. Claimant is owed punitive damages under Conn. Gen. Stat. § 31-290a(b).

2

Dated: December 19, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANT

By: ___/s/ Joseph D. Garrison_____
Joseph D. Garrison
Ethan A. Levin-Epstein
Joshua R. Goodbaum
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
    FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT 06511
Tel.:   (203) 777-4425
Fax:   (203) 776-3965
jgarrison@garrisonlaw.com
elevin-epstein@garrisonlaw.com
jgoodbaum@garrisonlaw.com

3

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

8

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission.  The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA.  The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States.  The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility.  Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

Employees with questions or seeking more information in immigration law issues are encourag
to contact the Human Resources representative.  Employees may raise questions or complai
about immigration law compliance without fear of reprisal.

## Anti-Harassment

### Preface

Legal and moral precepts make harassment in the workplace (i.e., like harassment on the basis
color, race, religion, or national origin) completely improper.  The Equal Employme
Opportunities Commission has a specific section on sexual harassment. The Company's policy h
long been zero tolerance of such discrimination, and this policy is written to affirm the Compan
position against illegal harassment, including sexual harassment.

### Policy

It has long been the Company's policy that all employees have the right to work in an environme
free from any type of unlawful discrimination, which includes an environment free from sex
harassment.

Our policy on the subject is as follows:

1. The Company shall not tolerate illegal harassment including sexual harassment of employe
   in any form. Any such conduct shall result in disciplinary action up to and includi
   dismissal.
2. No supervisor shall threaten, suggest, or imply that an employee's refusal to submit to sex
   advances will adversely affect the employee's employment, evaluation, wages, advanceme
   assigned duties, shifts, or any other condition of employment or career development. N
   shall any supervisor suggest or imply that an employee's acquiescence to sexual advanc
   may favorably affect the employee's condition of employment or career development.
3. Other sexually harassing conduct in the workplace, whether committed by supervisory
   non supervisory personnel, is also prohibited. This includes, but is not limited to; offensi
   sexual flirtations, advances, propositions; verbal abuse of a sexual nature; graphic or verl
   commentaries about an individual's body; sexually degrading words used to describe
   individual; or any offensive display in the workplace of sexually suggestive objects
   pictures.
4. Harassing conduct in the workplace conducted by a vendor, customer or client is al
   prohibited.

8

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

### ATTORNEYS AT LAW
### 405 ORANGE STREET
### NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON*
STEPHEN J. FITZGERALD*
NINA T. PIRROTTI*
JOSHUA R. GOODBAUM^*

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

* ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

December 20, 2012

**VIA FEDERAL EXPRESS**

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Re:   Caroline Griffin v. Steiner Leisure, Ltd.

To Whom It May Concern:

        We have enclosed, for filing, the Claimant's Demand for Arbitration pertaining to the above-referenced matter. Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

        Ms. Griffin is a member of the Claimant Class in AAA CASE 12 160 00454 12, *Savaria et al v. Steiner Leisure Ltd.* We respectfully request that Ms. Griffin's individual claims be consolidated with the Class arbitration.

        Thank you.

                                                Respectfully submitted,

                                                Joseph D. Garrison
                                                Attorney for the Claimants

JDG/lmd
Enclosure

**American Arbitration Association**
*Dispute Resolution Services Worldwide*
Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Employment Arbitration Rules Demand for Arbitration**
*Please visit our website at www.adr.org if you would like to file this case online.*

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* [X] *There is no additional administrative fee for this service.*

| **Parties (Claimant)** | |
|---|---|
| Caroline Griffin | Joseph Garrison |
| Name of Claimant: | Representative's Name (if known): |
| 2 That Way, P.O. Box 114 | Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. |
| Address: | Firm (if applicable): |
| | 405 Orange Street |
| | Address: |

| Hopkinton | RI | 02833 | New Haven | CT | 06511 |
|---|---|---|---|---|---|
| City: | State | Zip: | City: | State | Zip: |
| 1-401-207-4579 | | | 203-777-4425 | | 203-776-3965 |
| Phone: | Fax: | | Phone: | | Fax: |
| Caroline3373@aol.com | | | jgarrison@garrisonlaw.com | | |
| Email Address: | | | Email Address: | | |

*RECEIVED Voorhees, NJ*

*DEC 31 2012*

*AMERICAN ARBITRATION ASSOCIATION*

| **Parties (Respondent):** | |
|---|---|
| Steiner Leisure, Ltd. | |
| Name of Respondent: | Representative's Name (if known): |
| 770 South Dixie Highway, Suite 200 | |
| Address: | Firm (if applicable): |
| | |
| | Address: |

| Coral Gables | FL | 33124 | | | |
|---|---|---|---|---|---|
| City: | State | Zip: | City: | State | Zip: |
| 1-305-358-9002 | | | | | |
| Phone: | Fax: | | Phone: | | Fax: |
| www.steinerleisure.com | | | | | |
| Email Address: | | | Email Address: | | |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

[X] Less than $100,000  [ ] $100,000 - $250,000  [ ] Over $250,000

Amount of Claim: _____

Claim involves:
[X] Statutorily Protected Rights  [ ] Non-statutorily protected rights

In detail, please describe the nature of each claim.
You may attach additional pages if necessary:

SEE ATTACHED

**Other Relief Sought:** [ ] Arbitration Costs  [X] Attorney's Fees  [X] Interest  [X] Punitive/Exemplary Damages  [ ] Other: _____

**Neutral:** Please describe the qualifications for arbitrator(s) to hear this dispute:

**Hearing:** Estimated time needed to present case at hearing:
Hours: _____   Days: _____
Hearing locale: Uncasville, Connecticut
[ ] Requested by Claimant  [ ] Locale provision included in the contract

**Filing Fee:** [X] Employer-Promulgated Plan fee requirement or $175   *(max amount per AAA rules)*
[ ] Standard Fee Schedule for individually negotiated contracts   [ ] Flexible Fee Schedule for individually negotiated contracts
Amount Tendered: _____

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185.

Signature of claimant or representative: _____   Date: 12-20-12

<u>Demand for Arbitration by the American Arbitration Association</u>

Caroline Griffin,
Claimant,

v.

Steiner Leisure Limited,
Respondent.

## Background

1. Caroline Griffin ("Ms. Griffin" or "Claimant") resides in Rhode Island.

2. Steiner Leisure Limited ("Steiner" or "Respondent") is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

3. Respondent owns and operates the Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa").

4. Ms. Griffin worked as an esthetician at the Spa from August 1, 2008, until her termination on June 29, 2012.

## Medical Leave Claims

5. In or about May 2012, Ms. Griffin was diagnosed with a serious health condition in her foot. The condition required her to take medical leave from her job at the Spa.

6. Ms. Griffin arranged with her manager to take leave under the federal and/or Connecticut Family & Medical Leave Acts (FMLA), and she did take FMLA leave for approximately three weeks.

7. Approximately one week after she returned to work at the Spa following her FMLA leave, Ms. Griffin's again experienced health problems in her foot. She called the Spa and informed them that she planned to take a "sick day."

8. Ms. Griffin earned five sick days per year, and at that point, she had not yet used any of her sick days.

9. Soon after Ms. Griffin called into work, Spa manager Heather Lunny contacted her. Ms. Lunny told Ms. Griffin that it was unacceptable for her to call in sick, and she told Ms. Griffin that, if she did not go to work that night despite her foot injury, she would be terminated. Ms. Griffin told Ms. Lunny that she was unable to go to work, and Ms. Lunny terminated her employment.

## Claim One: Federal Family & Medical Leave Act (FMLA), 29 U.S.C. § 2615 — Interference

10. Paragraphs 1-9 are realleged and incorporated by reference herein.

11. Claimant was an eligible employee under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, insofar as she was employed by Respondent for 12 or more months before her termination and worked 1,250 or more hours for Respondent during the 12-month period preceding her termination.

12. Respondent is an "employer" under the FMLA insofar as it was engaged in commerce and employed 50 or more employees for each working day during each of the 20 or more calendar workweeks preceding Claimant's termination.

13. Claimant was entitled to leave under the FMLA insofar as she had a serious health condition in her foot that rendered her unable to perform one or more of the essential functions of her job.

14. Respondent interfered with Claimant's exercise of her rights under the FMLA insofar as it terminated her employment rather than allowing her to take additional FMLA leave.

15. As a result of Respondent's interference with Claimant's rights under the FMLA, Claimant suffered damages.

16. Claimant is owed all appropriate relief under 29 U.S.C. § 2617.

## Claim Two: Federal Family & Medical Leave Act (FMLA), 29 U.S.C. § 2615 — Retaliation

17. Paragraphs 1-16 are realleged and incorporated by reference herein.

18. Claimant exercised rights protected by the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, insofar as she requested and took FMLA leave from Respondent following the diagnosis of a serious health condition in her foot.

19. Claimant was qualified for the employment position she held with Respondent before she was terminated.

20. Claimant suffered an adverse employment action insofar as she was terminated by Respondent.

21. Claimant's termination occurred under circumstances giving rise to an inference of retaliatory intent insofar as the termination occurred approximately one week after Claimant returned from FMLA leave and the reason given for the termination is not worthy of belief.

22. As a result of Respondent's retaliation against Claimant's exercise of her rights under the FMLA, Claimant suffered damages.

2

23. Claimant is owed all appropriate relief under 29 U.S.C. § 2617.

**Claim Three: Connecticut Family & Medical Leave Act (CT FMLA), Conn. Gen. Stat. § 31-51pp – Interference**

24. Paragraphs 1-9 are realleged and incorporated by reference herein.

25. Claimant was an eligible employee under the CT FMLA, Conn. Gen. Stat. § 31-51kk(1), because she worked for Respondent for at least twelve months before the alleged interference and worked for Respondent for at least one thousand hours during the twelve-month period preceding her CT FMLA leave.

26. Respondent is an employer under the CT FMLA, Conn. Gen. Stat. § 31-51kk(4), because it employs 75 or more employees.

27. Claimant was entitled to leave under the CT FMLA insofar as she had a serious health condition in her foot that rendered her unable to perform one or more of the essential functions of her job.

28. Respondent interfered with Claimant's exercise of her rights under the CT FMLA insofar as it terminated her employment rather than allowing her to take additional CT FMLA leave.

29. As a result of Respondent's interference with Claimant's rights under the CT FMLA, Claimant suffered damages.

30. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-51pp(c)(2).

**Claim Four: Connecticut Family & Medical Leave Act (CT FMLA), Conn. Gen. Stat. § 31-51pp – Retaliation**

31. Paragraphs 24-30 are realleged and incorporated by reference herein.

32. Claimant exercised rights protected by the CT FMLA, Conn. Gen. Stat. § 31-51kk *et seq.*, insofar as she requested and took CT FMLA leave from Respondent following the diagnosis of a serious health condition in her foot.

33. Claimant was qualified for the employment position she held with Respondent before she was terminated.

34. Claimant suffered an adverse employment action insofar as she was terminated by Respondent.

35. Claimant's termination occurred under circumstances giving rise to an inference of retaliatory intent insofar as the termination occurred approximately one week after Claimant returned from CT FMLA leave and the reason given for the termination is not worthy of belief.

3

36. Claimant's termination constituted impermissible retaliation under Conn. Gen. Stat. § 31-51pp(a)(2), insofar as her exercise of rights afforded by the CT FMLA was a motivating factor in her termination.

37. As a result of Respondent's retaliation against Claimant's exercise of her rights under the CT FMLA, Claimant suffered damages.

38. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-51pp(c)(2).

## Claim Five: Conn. Gen. Stat. § 31-69b – Retaliatory Discharge

39. Paragraphs 1-9 are realleged and incorporated by reference herein.

40. In or about the spring of 2012, Ms. Griffin noticed irregularities in her paychecks. She suspected that the Spa was not adequately compensating her for her services.

41. Ms. Griffin decided to participate in an investigation by the Connecticut Department of Labor (CT DOL) into the Spa's compensation of its employees.

42. In or about May 2012, the Spa learned that Ms. Griffin, along with numerous other employees, had complained to the CT DOL about their compensation.

43. Less than two months later, Ms. Griffin was terminated for a pretextual reason that was not worthy of belief.

44. Within several months of Ms. Griffin's termination, numerous other Spa employees who, like Ms. Griffin, had instigated, participated in, or assisted the CT DOL's investigation of the Spa were also terminated, all for reasons that would not ordinarily support a termination.

45. Claimant was an employee of Respondent within the meaning of Conn. Gen. Stat. § 31-58.

46. Respondent is an employer within the meaning of Conn. Gen. Stat. § 31-58.

47. Respondent discharged Claimant because she filed a claim under Chapter 558 of Title 31 of the Connecticut General Statutes, caused an investigation or proceeding under Chapter 558 to be instituted, and/or exercised a right afford to her by Chapter 558, in violation of Conn. Gen. Stat. § 31-69b(a).

48. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-69b(b).

## Claim Six: Conn. Gen. Stat. § 31-69b – Retaliatory Discharge – Punitive Damages

49. Paragraphs 39-48 are realleged and incorporated by reference herein.

50. Respondent's unlawful actions were committed maliciously or with reckless indifference to Claimant's protected rights under Conn. Gen. Stat. § 31-69b.

4

51. Claimant is owed punitive damages under Conn. Gen. Stat. § 31-69b(b).

Dated: December 20, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANT

By: _/s/ Joseph D. Garrison_
Joseph D. Garrison
Ethan A. Levin-Epstein
Joshua R. Goodbaum
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
    FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT 06511
Tel.:  (203) 777-4425
Fax:  (203) 776-3965
jgarrison@garrisonlaw.com
elevin-epstein@garrisonlaw.com
jgoodbaum@garrisonlaw.com

5

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

6

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

Employees with questions or seeking more information in immigration law issues are encourag to contact the Human Resources representative. Employees may raise questions or complai about immigration law compliance without fear of reprisal.

# Anti-Harassment

## Preface

Legal and moral precepts make harassment in the workplace (i.e., like harassment on the basis color, race, religion, or national origin) completely improper. The Equal Employme Opportunities Commission has a specific section on sexual harassment. The Company's policy h long been zero tolerance of such discrimination, and this policy is written to affirm the Compan position against illegal harassment, including sexual harassment.

## Policy

It has long been the Company's policy that all employees have the right to work in an environme free from any type of unlawful discrimination, which includes an environment free from sext harassment.

Our policy on the subject is as follows:

1. The Company shall not tolerate illegal harassment including sexual harassment of employe in any form. Any such conduct shall result in disciplinary action up to and includi dismissal.

2. No supervisor shall threaten, suggest, or imply that an employee's refusal to submit to sext advances will adversely affect the employee's employment, evaluation, wages, advanceme assigned duties, shifts, or any other condition of employment or career development. N shall any supervisor suggest or imply that an employee's acquiescence to sexual advanc may favorably affect the employee's condition of employment or career development.

3. Other sexually harassing conduct in the workplace, whether committed by supervisory non supervisory personnel, is also prohibited. This includes, but is not limited to; offensi sexual flirtations, advances, propositions; verbal abuse of a sexual nature; graphic or verl commentaries about an individual's body; sexually degrading words used to describe individual; or any offensive display in the workplace of sexually suggestive objects pictures.

4. Harassing conduct in the workplace conducted by a vendor, customer or client is al prohibited.

8

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

ATTORNEYS AT LAW
405 ORANGE STREET
NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD*
NINA T. PIRROTTI*
JOSHUA R. GOODBAUM^*

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

* ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

January 11, 2013

**VIA FEDERAL EXPRESS**
American Arbitration Association
950 Warren Avenue
Providence, Rhode Island 02914 - 1414
**ATTENTION: JONATHAN WEED, MANAGER OF ADR SERVICES**

Re:     Nicole Briere v. Steiner Leisure, Ltd.

Dear Mr. Weed:

　　　　We have enclosed, for filing, the Claimant's Demand for Arbitration pertaining to the above-referenced matter.  Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

　　　　Ms. Briere is a member of the Claimant Class in AAA CASE 12 160 00454 12, *Savaria et al v. Steiner Leisure Ltd.*  We respectfully request that Ms. Briere's individual claims be consolidated with the Class arbitration.

　　　　Thank you.

Respectfully submitted,

Joseph D. Garrison
Attorney for the Claimants

JDG/lmd
Enclosure
cc Anthony Raio, Esq. (via electronic mail only – araio@duanemorris.com)
　　Michael Tiliakos, Esq. (via electronic mail only – mtiliakos@duanemorris.com)
　　Scott Segal, Esq. (via electronic mail only – ssegal@mylmattorney.com)

## American Arbitration Association
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

## Employment Arbitration Rules Demand for Arbitration
*Please visit our website at www.adr.org if you would like to file this case online.*

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☒ There is no additional administrative fee for this service.

| Parties (Claimant) | |
|---|---|
| Nicole Briere | Joseph Garrison |
| Name of Claimant: | Representative's Name (if known): |
| 479 Hartford Road | Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. |
| Address: | Firm (if applicable): |
| Brooklyn           CT        06234 | 405 Orange Street |
| City:        State      Zip: | Address: |
| 1-860-779-9437 | New Haven        CT        06511 |
| Phone:        Fax: | City:        State      Zip: |
| nicolebriere@gmail.com | 203-777-4425        203-776-3965 |
| Email Address: | Phone:        Fax: |
| | jgarrison@garrisonlaw.com |
| | Email Address: |

| Parties (Respondent): | |
|---|---|
| Steiner Leisure, Ltd. | Representative's Name (if known): |
| Name of Respondent: | |
| 770 South Dixie Highway, Suite 200 | Firm (if applicable): |
| Address: | |
| Coral Gables           FL        33124 | Address: |
| City:        State      Zip: | |
| 1-305-358-9002 | City:        State      Zip: |
| Phone:        Fax: | |
| www.steinerleisure.com | Phone:        Fax: |
| Email Address: | Email Address: |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

☒ Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

Amount of Claim: _____

**Claim involves:**

☒ Statutorily Protected Rights  ☐ Non-statutorily protected rights

In detail, please describe the nature of each claim.
You may attach additional pages if necessary:

SEE ATTACHED

**Other Relief Sought:** ☐ Arbitration Costs  ☒ Attorney's Fees  ☒ Interest  ☒ Punitive/Exemplary Damages  ☐ Other: _____

**Neutral:** Please describe the qualifications for arbitrator(s)
to hear this dispute:

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____   Days: _____

Hearing locale: Uncasville, Connecticut

☐ Requested by Claimant  ☒ Locale provision included in the contract

**Filing Fee:** ☒ Employer-Promulgated Plan fee requirement or $175    *(max amount per AAA rules)*
☐ Standard Fee Schedule for individually negotiated contracts    ☐ Flexible Fee Schedule for individually negotiated contracts
Amount Tendered: _____

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as
provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043.  Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are
entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees.  This law applies to all consumer agreements subject to the California Arbitration Act, and to
all consumer arbitrations conducted in California.  Only those disputes arising out of employer promulgated plans are included in the consumer definition.  If you believe
that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household.
Please contact the AAA's Western Case Management Center at 1-877-528-0879.  If you have any questions regarding the waiver of administrative fees, AAA Case
Filing Services can be reached at 877-495-4185.

Signature of claimant or representative: *Joseph D. Garrison*        Date: 1/11/13

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

6

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

## Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

Employees with questions or seeking more information in immigration law issues are encourag
to contact the Human Resources representative. Employees may raise questions or complai
about immigration law compliance without fear of reprisal.

## Anti-Harassment

### Preface

Legal and moral precepts make harassment in the workplace (i.e., like harassment on the basis
color, race, religion, or national origin) completely improper. The Equal Employme
Opportunities Commission has a specific section on sexual harassment. The Company's policy h
long been zero tolerance of such discrimination, and this policy is written to affirm the Compan
position against illegal harassment, including sexual harassment.

### Policy

It has long been the Company's policy that all employees have the right to work in an environme
free from any type of unlawful discrimination, which includes an environment free from sex
harassment.

Our policy on the subject is as follows:

1. The Company shall not tolerate illegal harassment including sexual harassment of employe
   in any form. Any such conduct shall result in disciplinary action up to and includi
   dismissal.

2. No supervisor shall threaten, suggest, or imply that an employee's refusal to submit to sext
   advances will adversely affect the employee's employment, evaluation, wages, advanceme
   assigned duties, shifts, or any other condition of employment or career development. N
   shall any supervisor suggest or imply that an employee's acquiescence to sexual advanc
   may favorably affect the employee's condition of employment or career development.

3. Other sexually harassing conduct in the workplace, whether committed by supervisory
   non supervisory personnel, is also prohibited. This includes, but is not limited to; offensi
   sexual flirtations, advances, propositions; verbal abuse of a sexual nature; graphic or verl
   commentaries about an individual's body; sexually degrading words used to describe
   individual; or any offensive display in the workplace of sexually suggestive objects
   pictures.

4. Harassing conduct in the workplace conducted by a vendor, customer or client is al
   prohibited.

<u>Demand for Arbitration by the American Arbitration Association</u>

Nicole Briere,
**Claimant,**

v.

**Steiner Leisure Limited,**
**Respondent.**

<u>**Background**</u>

1. Nicole Briere ("Ms. Briere" or "Claimant") resides in Connecticut.

2. Steiner Leisure Limited ("Steiner" or "Respondent") is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

3. Respondent owns and operates the Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa").

4. Ms. Briere worked as a massage therapist at the Spa from September 2005, until her constructive discharge on April 5, 2012.

<u>**Medical Leave Interference**</u>

5. In the summer of 2011, Ms. Briere developed a number of medical conditions that are typically associated with stress, including irritable bowel syndrome, irregular heartbeat, panic attacks, anxiety, and depression.

6. Ms. Briere's physician believed that these conditions were related to the stressful environment at the Spa following a Tribal investigation into the Spa's director, Heather Lunny, and he suggested that she take intermittent leave in order to attend doctor's appointments as necessary.

7. Beginning in August 2011 and continuing until December 2011, Ms. Briere repeatedly submitted forms provided to her by her doctor seeking approval for intermittent FMLA leave.

8. Respondent repeatedly ignored Ms. Briere's applications for leave.

9. On December 7, 2011, Respondent finally authorized Ms. Briere's leave.

10. Since Ms. Briere's FMLA leave was intermittent, she continued to work at the Spa as her conditions allowed.

11. On January 6, 2012, Spa managers Courtney Sullivan and Heather Lunny called Ms. Briere into a meeting and told her that she could not be on FMLA leave while also working. They told her that intermittent leave did not exist and that she either had to take full-time leave or work a full schedule.

12. Because Ms. Briere did not want to stop working completely, she wrote a letter (at the managers' urging) stating that she did not require medical leave, even though she foreseeably continued to need such care.

13. Respondent then terminated Ms. Briere's leave status.

14. Approximately three weeks after resuming her full work schedule, Ms. Briere became severely ill.

15. Ms. Briere's doctor advised her that, if intermittent FMLA leave was unavailable, she should take full-time FMLA leave from the Spa.

16. If Respondent had allowed Ms. Briere to take intermittent leave, she would have taken that and continued to work at the Spa. Instead, Respondent's interference with Ms. Briere's intermittent leave forced her to take full-time FMLA, which she did not want.

17. Ms. Briere took numerous sick and vacation days that she otherwise would not have taken had Respondent authorized her intermittent leave when she initially requested it and/or not unlawfully cancelled her intermittent leave.

18. Ms. Briere applied for full-time FMLA leave, and Respondent subsequently issued a new FMLA authorization for Ms. Briere (dated February 14, 2012).

## Claim One: Federal Family & Medical Leave Act (FMLA), 29 U.S.C. § 2615 – Interference

19. Paragraphs 1-18 are realleged and incorporated by reference herein.

20. Claimant was an eligible employee under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, insofar as she was employed by Respondent for 12 or more months before her termination and worked 1,250 or more hours for Respondent during the 12-month period preceding her termination.

21. Respondent is an "employer" under the FMLA insofar as it was engaged in commerce and employed 50 or more employees for each working day during each of the 20 or more calendar workweeks preceding Claimant's termination.

22. Claimant was entitled to leave under the FMLA insofar as she had a serious health condition that rendered her unable to perform one or more of the essential functions of her job.

23. Respondent interfered with Claimant's exercise of her rights under the FMLA insofar as it failed promptly to grant her FMLA leave after she repeatedly requested it and then forced her to abandon her leave based on Respondent's erroneous statement of the law.

2

24. As a result of Respondent's interference with Claimant's rights under the FMLA, Claimant suffered damages.

25. Claimant is owed all appropriate relief under 29 U.S.C. § 2617.

**Claim Two: Connecticut Family & Medical Leave Act (CT FMLA); Conn. Gen. Stat. § 31-51pp -- Interference**

26. Paragraphs 1-18 are realleged and incorporated by reference herein.

27. Claimant was an eligible employee under the CT FMLA, Conn. Gen. Stat. § 31-51kk(1), because she worked for Respondent for at least 12 months before the alleged interference and worked for Respondent for at least 1,000 hours during the 12-month period preceding her CT FMLA leave.

28. Respondent is an employer under the CT FMLA, Conn. Gen. Stat. § 31-51kk(4), because it employs 75 or more employees.

29. Claimant was entitled to leave under the CT FMLA insofar as she had a serious health condition that rendered her unable to perform one or more of the essential functions of her job.

30. Respondent interfered with Claimant's exercise of her rights under the FMLA insofar as it failed promptly to grant her FMLA leave after she repeatedly requested it and then forced her to abandon her leave based on Respondent's erroneous statement of the law.

31. As a result of Respondent's interference with Claimant's rights under the CT FMLA, Claimant suffered damages.

32. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-51pp(c)(2).

**Retaliation/Discrimination**

33. Following her return from full-time FMLA leave on March 26, 2012, Respondent's management subjected Ms. Briere to extremely difficult and stressful conditions.

34. For example, during the course of a morning shift, Respondent on more than one occasion told Ms. Briere that she would need to stay until the end of the night. This meant that she would work a double shift of 13-14 consecutive hours. Respondent gave Ms. Briere little-to-no notice of these shift changes, such that Ms. Briere was unable to arrange childcare for her children. But when Ms. Briere advised Respondent that she did not have sufficient notice, Respondent threatened to cut her future shifts if she did not agree to the schedule change and work the double shift.

35. Respondent forced Ms. Briere to work double shifts of 13-14 hours with no lunch break or any other break. Alternatively, when lunch was scheduled for Ms. Briere during double shifts, Respondent frequently canceled her lunch.

36. Respondent did not accommodate Ms. Briere's requests to adjust her schedule to attend doctor's appointments, even when she gave Respondent ample notice.

37. Respondent changed Ms. Briere's schedule with no notice, leaving her unable to plan childcare and hence to work the scheduled hours.

38. Ms. Briere found these conditions, individually or in combination, so difficult or unpleasant that she felt compelled to resign involuntarily, and she did in fact so do.

39. A reasonable person in Ms. Briere's position would have found these conditions, individually or in combination, so difficult or unpleasant that she would have felt compelled to resign.

40. By these conditions, individually or in combination, Respondent intentionally created an intolerable work atmosphere for Claimant in order to force her to resign.

**Claim Three: Federal Family & Medical Leave Act (FMLA), 29 U.S.C. § 2615 – Retaliation**

41. Paragraphs 1-4 and 33-40 are realleged and incorporated by reference herein.

42. Claimant exercised rights protected by the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, insofar as she requested and took FMLA leave from Respondent following the diagnosis of a serious health condition.

43. Claimant was qualified for the employment position she held with Respondent.

44. Claimant suffered numerous adverse employment actions, both in the terms of her employment and in her constructive discharge.

45. The adverse employment actions occurred under circumstances giving rise to an inference of retaliatory intent insofar as the actions occurred soon after Claimant returned from FMLA leave and were preceded by Respondent's consistent hostility to Claimant's exercise of her FMLA rights.

46. As a result of Respondent's retaliation against Claimant's exercise of her rights under the FMLA, Claimant suffered damages.

47. Claimant is owed all appropriate relief under 29 U.S.C. § 2617.

**Claim Four: Connecticut Family & Medical Leave Act (CT FMLA), Conn. Gen. Stat. § 31-51pp – Retaliation**

48. Paragraphs 1-4 and 33-40 are realleged and incorporated by reference herein.

4

49. Claimant exercised rights protected by the CT FMLA, Conn. Gen. Stat. § 31-51kk *et seq.*, insofar as she requested and took CT FMLA leave from Respondent following the diagnosis of a serious health condition.

50. Claimant was qualified for the employment position she held with Respondent.

51. Claimant suffered numerous adverse employment actions, both in the terms of her employment and in her constructive discharge.

52. The adverse employment actions occurred under circumstances giving rise to an inference of retaliatory intent insofar as the actions occurred soon after Claimant returned from FMLA leave and were preceded by Respondent's consistent hostility to Claimant's exercise of her FMLA rights.

53. The adverse employment actions constituted impermissible retaliation under Conn. Gen. Stat. § 31-51pp(a)(2), insofar as Claimant's exercise of rights afforded by the CT FMLA was a motivating factor in the adverse actions.

54. As a result of Respondent's retaliation against Claimant's exercise of her rights under the CT FMLA, Claimant suffered damages.

55. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-51pp(c)(2).

## Claim Five: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60 – Disability Discrimination / Harassment Based on Disability Creating a Hostile Work Environment

56. Paragraphs 1-5 and 33-40 are realleged and incorporated by reference herein.

57. Claimant suffered from a disability as defined under the CFEPA in that she had chronic physical impairments.

58. Claimant's disability or perceived disability was a factor that made a difference in Respondent's negative treatment of her, including in the terms of her employment and its constructive discharge of her, in violation of Conn. Gen. Stat. § 46a-60.

59. As a result of Respondent's conduct, Claimant suffered both economic and emotional harm.

60. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 46a-104.

## Claim Six: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60 – Punitive Damages for Disability Discrimination / Harassment Based on Disability Creating a Hostile Work Environment

61. Paragraphs 56-59 are realleged and incorporated by reference herein.

5

62. Respondent's actions in discriminating against Claimant on the basis of her disability or perceived disability were willful or recklessly indifferent to Claimant's rights under Conn. Gen. Stat. § 46a-60.

63. Claimant is owed punitive damages under Conn. Gen. Stat. § 46a-104.

Dated: January 11, 2013

RESPECTFULLY SUBMITTED,
THE CLAIMANT

By:   /s/ Joseph D. Garrison
     Joseph D. Garrison
     Ethan A. Levin-Epstein
     Joshua R. Goodbaum
     GARRISON, LEVIN-EPSTEIN, RICHARDSON,
        FITZGERALD & PIRROTTI, P.C.
     405 Orange Street
     New Haven, CT  06511
     Tel.:   (203) 777-4425
     Fax:   (203) 776-3965
     jgarrison@garrisonlaw.com
     elevin-epstein@garrisonlaw.com
     jgoodbaum@garrisonlaw.com

6

# GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.

### ATTORNEYS AT LAW
### 405 ORANGE STREET
### NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD°
NINA T. PIRROTTI°
JOSHUA R. GOODBAUM^°

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

° ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR .
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

December 18, 2012

**VIA FEDERAL EXPRESS**

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

RECEIVED
Voorhees, NJ

DEC 1 9 2012

AMERICAN ARBITRATION
ASSOCIATION

Re:    <u>Ashley Serio v. Steiner Leisure, Ltd.</u>

To Whom It May Concern:

        We have enclosed, for filing, the Claimant's Demand for Arbitration pertaining to the above-referenced matter.  Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

        Ms. Serio is a member of the Claimant Class in AAA CASE 12 160 00454 12, *Savaria et al v. Steiner Leisure Ltd.*   We respectfully request that Ms. Serio's individual claims be consolidated with the Class arbitration.

        Thank you.

                                                Respectfully submitted,

                                                Joseph D. Garrison
                                                Attorney for the Claimants

JDG/lmd
Enclosure

**American Arbitration Association**
*Dispute Resolution Services Worldwide*
Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Employment Arbitration Rules Demand for Arbitration**
*Please visit our website at www.adr.org if you would like to file this case online.*

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☒   *There is no additional administrative fee for this service.*

| **Parties (Claimant)** | | | | Joseph Garrison | | |
|---|---|---|---|---|---|---|
| Ashley Serio | | | | Representative's Name (if known): | | |
| Name of Claimant: | | | | Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. | | |
| 16 Brookside Road | | | | Firm (if applicable): | | |
| Address: | | | | 405 Orange Street | | |
| Westerly | RI | 02891 | | Address: | | |
| City: | State | Zip: | | New Haven | CT | 06511 |
| 1-860-334-1273 | | | | City: | State | Zip: |
| Phone: | Fax: | | | 203-777-4425 | 203-776-3985 | |
| Aheon143@hotmail.com | | | | Phone: | Fax: | |
| Email Address: | | | | jgarrison@garrisonlaw.com | | |
| | | | | Email Address: | | |

RECEIVED
Voorhees, NJ
DEC 1 9 2012
AMERICAN ARBITRATION
ASSOCIATION

| **Parties (Respondent):** | | | | Representative's Name (if known): | | |
|---|---|---|---|---|---|---|
| Steiner Leisure, Ltd. | | | | | | |
| Name of Respondent: | | | | Firm (if applicable): | | |
| 770 South Dixie Highway, Suite 200 | | | | | | |
| Address: | | | | Address: | | |
| Coral Gables | FL | 33124 | | | | |
| City: | State | Zip: | | City: | State | Zip: |
| 1-305-358-9002 | | | | | | |
| Phone: | Fax: | | | Phone: | Fax: | |
| www.steinerleisure.com | | | | | | |
| Email Address: | | | | Email Address: | | |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

☒ Less than $100,000   ☐ $100,000 - $250,000   ☐ Over $250,000

Amount of Claim: _____

**Claim involves:**

☒ Statutorily Protected Rights   ☐ Non-statutorily protected rights

**In detail, please describe the nature of each claim.**
You may attach additional pages if necessary:

SEE ATTACHED

**Other Relief Sought:** ☐ Arbitration Costs   ☒ Attorney's Fees   ☐ Interest   ☒ Punitive/Exemplary Damages   ☐ Other: _____

**Neutral:** Please describe the qualifications for arbitrator(s)
to hear this dispute:

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____   Days: _____

Hearing locale: Uncasville, Connecticut

☐ Requested by Claimant   ☒ Locale provision included in the contract

**Filing Fee:** ☒ Employer-Promulgated Plan fee requirement or $175   *(max amount per AAA rules)*

☐ Standard Fee Schedule for individually negotiated contracts   ☐ Flexible Fee Schedule for individually negotiated contracts

Amount Tendered: _____

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as
provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043. Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are
entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to
all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe
that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household.
Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case
Filing Services can be reached at 877-495-4185.

Signature of claimant or representative: _____   Date: 12/18/12

<u>Demand for Arbitration by the American Arbitration Association</u>

Ashley Serio,
Claimant,

v.

Steiner Leisure Limited,
Respondent.

## Background

1. Ashley Serio ("Ms. Serio" or "Claimant") resides in Rhode Island.

2. Steiner Leisure Limited ("Steiner" or "Respondent") is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

3. Respondent owns and operates the Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa").

4. Ms. Serio worked as an esthetician at the Spa from October 1, 2007, until her termination on February 28, 2012.

## Claim One: Negligent Misrepresentation

5. Paragraphs 1-4 are realleged

6. On Thursday, February 23, 2012, Ms. Serio experienced severe anxiety, including crying and hyperventilating, while at work at the Spa. She felt that she could not continue to work that day, and she approached her supervisor, Anna Luzzi, for permission to go home sick. Ms. Luzzi said she would need to ask her manager, Heather Lunny.

7. Ms. Serio spoke with Ms. Luzzi and Ms. Lunny, and she received permission from both of them to go home sick for the remainder of the day. Ms. Serio also spoke with another supervisor, Nancy Chartier, who also gave Ms. Serio permission to go home sick.

8. Ms. Lunny, Ms. Luzzi, and Ms. Chartier each represented to Ms. Serio that she had permission to go home sick. At no time did any of the Spa's managers or supervisors indicate to Ms. Serio that she would experience any negative consequences for going home sick.

9. Ms. Serio left work and went home sick.

10. Ms. Serio was not scheduled to work Thursday or Friday. She returned to work on Saturday and worked a full shift. She was not scheduled for work Sunday or Monday.

11. Ms. Serio was scheduled to work a fourteen-hour double shift on Tuesday, February 28, 2012. Approximately halfway through her shift that day, she noticed that a block had been placed in her schedule for a meeting with Ms. Lunny and another Spa manager, Courtney Sullivan.

12. Ms. Serio went to the meeting with Ms. Lunny and Ms. Sullivan. They informed Ms. Serio that the corporate office believed that Ms. Serio had committed a "fireable" offense and that she was terminated for job abandonment.

13. In representing to Ms. Serio that she could go home sick, Ms. Lunny, Ms. Luzzi, and Ms. Chartier each acted as agents of Steiner.

14. Respondent supplied false information to Claimant insofar as its agents communicated to her that she could go home sick without any negative consequences.

15. In supplying false information to Claimant, Respondent failed to exercise reasonable care or competence.

16. Claimant justifiably relied on Respondent's agents' representations in deciding to leave work.

17. As a result of Respondent's negligent misrepresentation, Claimant suffered economic and emotional harm.

18. Claimant is owed all damages stemming from Respondent's negligent misrepresentation.

**Disability Claims**

19. For approximately one year prior to her termination from the Spa, Ms. Serio experienced substantial anxiety, including nausea, crying fits, and hyperventilation, related to the negative atmosphere that Respondent's management created at the Spa.

20. Ms. Serio's persistent anxiety negatively impacted her ability to eat, sleep, and work.

21. On February 23, 2012, when Ms. Serio asked for permission to leave work early, she also told Spa management, including Anna Luzzi and Heather Lunny, about her persistent anxiety and how it manifested itself in her daily life.

**Claim Two: Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. – Discrimination Based on "Actual" Disability**

22. Paragraphs 1-4 & 19-21 are realleged and incorporated by reference herein.

2

23. Respondent is an employer under the ADA, 42 U.S.C. § 12111(5)(A), in that it engages in an industry affecting commerce and has employed 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

24. At all relevant times, Claimant suffered from an actual disability under the ADA, 42 U.S.C. § 12102(1)(A), insofar as her persistent anxiety substantially limited one or more of her major life activities, including but not limited to her ability to eat, sleep, and concentrate.

25. Claimant could perform the essential functions of her job with reasonable accommodation — namely, Respondent's implementation and execution of a consistent workplaces policy and schedule for its employees.

26. Claimant suffered an adverse employment action because of her disability.

27. As a result of Respondent's conduct, Claimant suffered both economic and emotional harm.

28. Claimant is owed economic and non-economic damages, as well as attorneys' fees and costs.

**Claim Three: Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* – Discrimination Based on "Actual" Disability – Punitive Damages**

29. Paragraphs 22-28 are realleged and incorporated by reference herein.

30. Respondent's unlawful actions were committed maliciously or with reckless indifference to Claimant's protected rights under the ADA.

31. Claimant is owed punitive damages under 42 U.S.C. § 1981a(b).

**Claim Four: Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* – Discrimination Based on "Perceived" Disability**

32. Paragraphs 1-4 & 19-21 are realleged and incorporated by reference herein.

33. Respondent is an employer under the ADA, 42 U.S.C. § 12111(5)(A), in that it engages in an industry affecting commerce and has employed 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

34. Claimant is a person with a disability under the ADA, 42 U.S.C. § 12102(1)(C), insofar as Respondent and/or its agents regarded her as having a physical or mental impairment — namely, an anxiety disorder.

35. Claimant could perform the essential functions of her job with reasonable accommodation — namely, Respondent's implementation and execution of a consistent workplaces policy and schedule for its employees.

3

36. Claimant suffered an adverse employment action because of her disability.

37. As a result of Respondent's conduct, Claimant suffered both economic and emotional harm.

38. Claimant is owed economic and non-economic damages, as well as attorneys' fees and costs.

### Claim Five: Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* -- Discrimination Based on "Perceived" Disability -- Punitive Damages

39. Paragraphs 32-38 are realleged and incorporated by reference herein.

40. Respondent's unlawful actions were committed maliciously or with reckless indifference to Claimant's protected rights under the ADA.

41. Claimant is owed punitive damages under 42 U.S.C. § 1981a(b).

### Claim Six: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60 -- Disability Discrimination

42. Paragraphs 1-4 & 19-21 are realleged and incorporated by reference herein.

43. Respondent is an employer under the CFEPA, Conn. Gen. Stat. § 46a-51(10), in that it employs three or more persons.

44. Claimant was a person with a mental disability under the CFEPA, Conn. Gen. Stat. § 46a-51(20), in that she had a record of or was regarded by Respondent and/or its agents has having persistent and chronic anxiety — that is, a mental disorder as defined in the most recent edition of the American Psychiatric Association's "Diagnostic and Statistical Manual of Mental Disorders."

45. Claimant could perform the essential functions of her job with reasonable accommodation — namely, Respondent's implementation and execution of a consistent workplaces policy and schedule for its employees.

46. Claimant's disability was a factor that made a difference in Respondent's decision to terminate her employment.

47. As a result of Respondent's conduct, Claimant suffered both economic and emotional harm.

48. Claimant is owed economic and non-economic damages, as well as attorneys' fees and costs.

4

**Claim Seven: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60 – Disability Discrimination – Punitive Damages**

49. Paragraphs 42-48 are realleged and incorporated by reference herein.

50. Respondent's unlawful actions were committed willfully or with reckless indifference to Claimant's protected rights under the CFEPA.

51. Claimant is owed punitive damages under Conn. Gen. Stat. § 46a-104.

Dated: December 17, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANT

By:    _/s/ Joseph D. Garrison_
      Joseph D. Garrison
      Ethan A. Levin-Epstein
      Joshua R. Goodbaum
      GARRISON, LEVIN-EPSTEIN, RICHARDSON,
          FITZGERALD & PIRROTTI, P.C.
      405 Orange Street
      New Haven, CT  06511
      Tel.:    (203) 777-4425
      Fax:    (203) 776-3965
      jgarrison@garrisonlaw.com
      elevin-epstein@garrisonlaw.com
      jgoodbaum@garrisonlaw.com

5

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA").  The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law.  Private arbitration is generally quicker and less costly for all parties than litigation.  For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions.  Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment  (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment.  The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration.   Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

Employees with questions or seeking more information in immigration law issues are encourag
to contact the Human Resources representative. Employees may raise questions or complai
about immigration law compliance without fear of reprisal.

## Anti-Harassment

### Preface

Legal and moral precepts make harassment in the workplace (i.e., like harassment on the basis
color, race, religion, or national origin) completely improper. The Equal Employme
Opportunities Commission has a specific section on sexual harassment. The Company's policy l
long been zero tolerance of such discrimination, and this policy is written to affirm the Compan
position against illegal harassment, including sexual harassment.

### Policy

It has long been the Company's policy that all employees have the right to work in an environme
free from any type of unlawful discrimination, which includes an environment free from sex
harassment.

Our policy on the subject is as follows:

1. The Company shall not tolerate illegal harassment including sexual harassment of employe
   in any form. Any such conduct shall result in disciplinary action up to and includi
   dismissal.
2. No supervisor shall threaten, suggest, or imply that an employee's refusal to submit to sex
   advances will adversely affect the employee's employment, evaluation, wages, advanceme
   assigned duties, shifts, or any other condition of employment or career development. N
   shall any supervisor suggest or imply that an employee's acquiescence to sexual advanc
   may favorably affect the employee's condition of employment or career development.
3. Other sexually harassing conduct in the workplace, whether committed by supervisory
   non supervisory personnel, is also prohibited. This includes, but is not limited to; offensi
   sexual flirtations, advances, propositions; verbal abuse of a sexual nature; graphic or verb
   commentaries about an individual's body; sexually degrading words used to describe
   individual; or any offensive display in the workplace of sexually suggestive objects
   pictures.
4. Harassing conduct in the workplace conducted by a vendor, customer or client is al
   prohibited.

8

**GARRISON, LEVIN-EPSTEIN, RICHARDSON, FITZGERALD & PIRROTTI, P.C.**

ATTORNEYS AT LAW
405 ORANGE STREET
NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
ROBERT A. RICHARDSON
STEPHEN J. FITZGERALD*
NINA T. PIRROTTI*
JOSHUA R. GOODBAUM^*

RECEIVED

DEC 26 2012

American Arbitration Association

TEL. 203-777-4425
WWW.GARRISONLAW.COM

*. ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR
^ ALSO ADMITTED TO DISTRICT OF COLUMBIA BAR

December 21, 2012

**VIA FEDERAL EXPRESS**

American Arbitration Association
950 Warren Avenue
Providence, Rhode Island 02914 - 1414
**ATTENTION: JONATHAN WEED, MANAGER OF ADR SERVICES**

Re:   Nicholle Beaumont v. Steiner Leisure, Ltd.

Dear Mr. Weed:

We have enclosed, for filing, the Claimant's Demand for Arbitration pertaining to the above-referenced matter. Pursuant to the arbitration agreement in the Claimants' employment handbook, the Respondent will pay the initial filing fee.

Ms. Beaumont is a member of the Claimant Class in AAA CASE 12 160 00454 12, *Savaria et al v. Steiner Leisure Ltd.* We respectfully request that Ms. Beaumont's individual claims be consolidated with the Class arbitration.

Thank you.

Respectfully submitted,

Joseph D. Garrison
Attorney for the Claimants

JDG/lmd
Enclosure

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

**Employment Arbitration Rules Demand for Arbitration**
*Please visit our website at www.adr.org if you would like to file this case online.*

Please visit our website at www.adr.org if you
would like to file this case online.
AAA Customer Service can be reached at 800-778-7879

**Mediation:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☒  *There is no additional administrative fee for this service.*

| Parties (Claimant) | Joseph Garrison |
|---|---|
| Nicholle Beaumont | Representative's Name (if known): |
| Name of Claimant: | Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirotti, P.C. |
| 233 Parish Hill Road | Firm (if applicable): |
| Address: | 405 Orange Street |
| North Windham    CT    06256 | Address: |
| City:    State    Zip: | New Haven    CT    06511 |
| 1-860-208-7446 | City:    State    Zip: |
| Phone:    Fax: | 203-777-4425    203-776-3965 |
| Nicholle0405@aol.com | Phone:    Fax: |
| Email Address: | jgarrison@garrisonlaw.com |
|  | Email Address: |

| Parties (Respondent): | Representative's Name (if known): |
|---|---|
| Steiner Leisure, Ltd. |  |
| Name of Respondent: | Firm (if applicable): |
| 770 South Dixie Highway, Suite 200 |  |
| Address: | Address: |
| Coral Gables    FL    33124 |  |
| City:    State    Zip: | City:    State    Zip: |
| 1-305-358-9002 |  |
| Phone:    Fax: | Phone:    Fax: |
| www.steinerleisure.com |  |
| Email Address: | Email Address: |

**Claim:** What was/is the employee's annual wage range?
*Note: This question is required by California law.*

☒ Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

Amount of Claim: _____

**Claim involves:**
☒ Statutorily Protected Rights  ☐ Non-statutorily protected rights

In detail, please describe the nature of each claim.
You may attach additional pages if necessary:

SEE ATTACHED

**Other Relief Sought:** ☐ Arbitration Costs  ☒ Attorney's Fees  ☒ Interest  ☒ Punitive/Exemplary Damages  ☐ Other: _____

**Neutral:** Please describe the qualifications for arbitrator(s) to hear this dispute:

**Hearing:** Estimated time needed to present case at hearing:

Hours: _____    Days: _____

Hearing locale: Uncasville, Connecticut

☐ Requested by Claimant  ☒ Locale provision included in the contract

**Filing Fee:** ☒ Employer-Promulgated Plan fee requirement or $175    *(max amount per AAA rules)*
☐ Standard Fee Schedule for individually negotiated contracts    ☐ Flexible Fee Schedule for individually negotiated contracts
Amount Tendered: _____

**Notice:** To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185.

Signature of claimant or representative: _Joseph D. Garrison_    Date: 12-21-12

<u>**Demand for Arbitration by the American Arbitration Association**</u>

**Nicholle Beaumont,**
**Claimant,**

**v.**

**Steiner Leisure Limited,**
**Respondent.**

**<u>Background</u>**

1.  Nicholle Beaumont ("Ms. Beaumont" or "Claimant") resides in Connecticut.

2.  Steiner Leisure Limited ("Steiner" or "Respondent") is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

3.  Respondent owns and operates the Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa").

4.  Ms. Beaumont worked as a massage therapist at the Spa from October 16, 2007, until her termination on November 8, 2012.

**<u>Claim One: Connecticut Family & Medical Leave Act (CT FMLA), Conn. Gen. Stat. § 31-51pp – Interference</u>**

5.  Paragraphs 1-4 are realleged and incorporated by reference herein.

6.  Claimant is an eligible employee under the CT FMLA, Conn. Gen. Stat. § 31-51kk(1), because she worked for Respondent for at least twelve months before the alleged interference; worked for Respondent for at least one thousand hours during the twelve-month period preceding the condition that gave rise to her need for CT FMLA leave; and would have worked for Respondent for at least one thousand hours during the twelve-month period preceding the first day of her anticipated leave, had Respondent not reduced her hours to avoid CT FMLA eligibility.

7.  Respondent is an employer under the CT FMLA, Conn. Gen. Stat. § 31-51kk(4), because it employs 75 or more employees.

8.  In February 2012, Ms. Beaumont started notifying people, including some of her coworkers, that she was pregnant. At some point, Steiner learned from a third party that Ms. Beaumont was pregnant.

9. Prior to her pregnancy becoming public, Ms. Beaumont worked three seven-hour shifts per week. But after Steiner learned that Ms. Beaumont was pregnant, it cut her to one seven-hour shift per week.

10. Ms. Beaumont was the only employee whose hours were reduced. At the same time that Ms. Beaumont's hours were reduced, Steiner hired several other massage therapists.

11. As a result of the reduction in her hours, Ms. Beaumont was no longer eligible for CT FMLA leave.

12. If Steiner had not reduced Ms. Beaumont's hours, her pregnancy would have rendered her eligible for CT FMLA leave.

13. This recent episode is not the first time that Steiner reduced Ms. Beaumont's hours because of her pregnancy. After Ms. Beaumont informed Steiner of her previous pregnancy in late 2009, she noticed that her shifts were disappearing without any credible explanation. When she approached Steiner manager Stephan Jarzabeck regarding her concern that she would not qualify for FMLA leave with her reduced hours, Mr. Jarzabeck told Ms. Beaumont that: "That's what corporate wants." Ultimately, despite her reduced hours, Ms. Beaumont did qualify for FMLA leave, which she took after the birth of her child.

14. Steiner's reduction in Ms. Beaumont's hours in 2012 constituted impermissible interference with her rights under Conn. Gen. Stat. § 31-51pp(a)(1), insofar as it reduced her hours in order render her ineligible for CT FMLA leave.

15. As a result of Respondent's unlawful actions, Claimant suffered economic and emotional harm.

16. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 31-51pp(c)(2).

**Claim Two: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(B) – Wrongful Denial of Leave of Absence**

17. Paragraphs 1-4 are realleged and incorporated by reference herein.

18. Respondent is an employer within the meaning of the CFEPA, Conn. Gen. Stat. § 46a-51(10), because it employs three or more people.

19. In February 2012, Ms. Beaumont started notifying people, including some of her coworkers, that she was pregnant. At some point, Steiner learned from a third party that Ms. Beaumont was pregnant.

20. Ms. Beaumont's final day at work before the delivery of her child was October 14, 2012.

21. Ms. Beaumont gave birth to a child on October 23, 2012, by caesarean section.

22. Initially, Ms. Beaumont expected that the caesarean section would leave medically unable to return to work for 8 weeks.  (She was ultimately released to return to work after 5 weeks.)

23. This condition constituted a "disability resulting from . . . pregnancy" under Conn. Gen. Stat. § 46a-60(a)(7)(B).

24. Pursuant to instructions from Steiner human resources manager Adrienne Davis, Ms. Beaumont used unpaid medical leave and personal leave available under Steiner's policies.

25. By early November 2012, however, Ms. Beaumont had exhausted her leave under those policies.

26. On November 9, 2012, Ms. Beaumont received a letter from Ms. Davis, Respondent's representative.  The letter, dated the same day, stated as follows:

> Regrettably, I must advise you that on 11/9/12, your leave under our Unpaid Medical Leave and Personal Leave policies is exhausted.
>
> On 10/20/12, a notice was sent to you detailing our policy on non-FMLA Leave.  Specifically, it stated that should you exhaust your accrued Vacation and Sick Time, and not return to work within two weeks and three days from the time your leave of absence was granted, the company will terminate your employment.
>
> Because you have not been released to return to work, and have exhausted all available time off, your employment must be terminated effective 11/8/12.
>
> You are eligible for re-employment and welcome to re-apply at any time, should there be an open position upon your availability to return to work.

27. By refusing to allow Ms. Beaumont to remain on a reasonable continuation of her medical leave following her pregnancy, Steiner "refuse[d] to grant [her] a reasonable leave of absence for disability resulting from her pregnancy," in violation of Conn. Gen. Stat. § 46a-60(a)(7)(B).

28. As a result of Respondent's unlawful actions, Claimant suffered economic and emotional harm.

29. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 46a-104.

**Claim Three: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(B) – Wrongful Denial of Leave of Absence – Punitive Damages**

30. Paragraphs 17-29 are realleged and incorporated by reference herein.

31. Respondent's unlawful actions were committed willfully or with reckless indifference to Claimant's protected rights under the CFEPA.

32. Claimant is owed punitive damages under Conn. Gen. Stat. § 46a-104.

**Claim Four: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(D) – Wrongful Failure to Reinstate**

33. Paragraphs 17-26 are realleged and incorporated by reference herein.

34. Steiner human resources manager Adrienne Davis told Ms. Beaumont by telephone on October 20, 2012, that Steiner's policy allowed a 6-month maternity leave. Ms. Davis also told Ms. Beaumont that her job would be available upon return from pregnancy leave, although she would not be guaranteed seniority or her original pay rate.

35. During that telephone call, Ms. Beaumont signaled her intent to return to the Spa following the birth of her child. Specifically, Ms. Beaumont told Ms. Davis that she planned to take 6 to 8 weeks of medical leave, depending on the type of delivery she ultimately had and when her doctor determined she was medically fit to return to work.

36. By refusing to allow Ms. Beaumont to return to her position after she received medical authorization to work, Steiner "fail[ed] or refuse[d] to reinstate [her] to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits," in violation of Conn. Gen. Stat. § 46a-60(a)(7)(D).

37. As a result of Respondent's unlawful actions, Claimant suffered economic and emotional harm.

38. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 46a-104.

**Claim Five: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(D) – Wrongful Failure to Reinstate – Punitive Damages**

39. Paragraphs 33-38 are realleged and incorporated by reference herein.

40. Respondent's unlawful actions were committed willfully or with reckless indifference to Claimant's protected rights under the CFEPA.

41. Claimant is owed punitive damages under Conn. Gen. Stat. § 46a-104.

**Claim Six: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(A) – Wrongful Termination**

42. Paragraphs 33-35 are realleged and incorporated by reference herein.

4

43. At all times, Claimant performed her job satisfactorily or better.

44. Claimant's pregnancy was a factor that made a difference in Respondent's decision to terminate her employment, in violation of Conn. Gen. Stat. § 46a-60(a)(7)(A).

45. As a result of Respondent's unlawful actions, Claimant suffered economic and emotional harm.

46. Claimant is owed all appropriate relief under Conn. Gen. Stat. § 46a-104.

**Claim Seven: Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(7)(A) – Wrongful Termination – Punitive Damages**

47. Paragraphs 42-46 are realleged and incorporated by reference herein.

48. Respondent's unlawful actions were committed willfully or with reckless indifference to Claimant's protected rights under the CFEPA.

49. Claimant is owed punitive damages under Conn. Gen. Stat. § 46a-104.

**Claim Eight: Pregnancy Discrimination Act, 42 U.S.C. § 2000e – Wrongful Termination**

50. Paragraphs 1-4, 8-10, 20-22, 24-26 are realleged and incorporated by reference herein.

51. At all times, Claimant performed her job satisfactorily or better.

52. Claimant's pregnancy was a factor that made a difference in Respondent's decision to terminate her employment, in violation of 42 U.S.C. § 2000e(k).

53. As a result of Respondent's unlawful actions, Claimant suffered economic and emotional harm.

54. Claimant is owed all appropriate relief under 42 U.S.C. § 1981a.

**Claim Nine: Pregnancy Discrimination Act, 42 U.S.C. § 2000e – Wrongful Termination – Punitive Damages**

55. Paragraphs 50-54 are realleged and incorporated by reference herein.

56. Respondent's unlawful actions were committed willfully or with reckless indifference to Claimant's protected rights under the Pregnancy Discrimination Act.

57. Claimant is owed punitive damages under 42 U.S.C. § 1981a(b)(1).

Dated: December 20, 2012

RESPECTFULLY SUBMITTED,
THE CLAIMANT

By:     */s/ Joseph D. Garrison*
       Joseph D. Garrison
       Ethan A. Levin-Epstein
       Joshua R. Goodbaum
       GARRISON, LEVIN-EPSTEIN, RICHARDSON,
          FITZGERALD & PIRROTTI, P.C.
       405 Orange Street
       New Haven, CT 06511
       Tel.:    (203) 777-4425
       Fax:    (203) 776-3965
       jgarrison@garrisonlaw.com
       elevin-epstein@garrisonlaw.com
       jgoodbaum@garrisonlaw.com

6

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

6

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

Employees with questions or seeking more information in immigration law issues are encourag to contact the Human Resources representative. Employees may raise questions or complai about immigration law compliance without fear of reprisal.

## Anti-Harassment

### Preface

Legal and moral precepts make harassment in the workplace (i.e., like harassment on the basis color, race, religion, or national origin) completely improper. The Equal Employme Opportunities Commission has a specific section on sexual harassment. The Company's policy h long been zero tolerance of such discrimination, and this policy is written to affirm the Compan position against illegal harassment, including sexual harassment.

### Policy

It has long been the Company's policy that all employees have the right to work in an environme free from any type of unlawful discrimination, which includes an environment free from sext harassment.

Our policy on the subject is as follows:

1. The Company shall not tolerate illegal harassment including sexual harassment of employe in any form. Any such conduct shall result in disciplinary action up to and includi dismissal.
2. No supervisor shall threaten, suggest, or imply that an employee's refusal to submit to sext advances will adversely affect the employee's employment, evaluation, wages, advanceme assigned duties, shifts, or any other condition of employment or career development. N shall any supervisor suggest or imply that an employee's acquiescence to sexual advanc may favorably affect the employee's condition of employment or career development.
3. Other sexually harassing conduct in the workplace, whether committed by supervisory non supervisory personnel, is also prohibited. This includes, but is not limited to; offensi sexual flirtations, advances, propositions; verbal abuse of a sexual nature; graphic or verb commentaries about an individual's body; sexually degrading words used to describe individual; or any offensive display in the workplace of sexually suggestive objects pictures.
4. Harassing conduct in the workplace conducted by a vendor, customer or client is al prohibited.

8

EXHIBIT 8



# Employment Arbitration Rules and Mediation Procedures

*Rules Amended and Effective November 1, 2009*
*Fee Schedule Amended and Effective June 1, 2010*

American Arbitration Association

www.adr.org



## Table of Contents

| | |
|---|---|
| Introduction | 8 |
| Role of the American Arbitration Association | 9 |
| Legal Basis of Employment ADR | 9 |
| The Fairness Issue: The Due Process Protocol | 10 |
| AAA's Employment ADR Rules | 11 |
| AAA's Policy on Employment ADR | 12 |
| Notification | 12 |
| Costs of Employment Arbitration | 12 |
| Designing an ADR Program | 13 |
| Alternative Dispute Resolution Options | 14 |
| Types of Disputes Covered | 16 |
| | |
| Employment Arbitration Rules and Mediation Procedures | 17 |
| 1.   Applicable Rules of Arbitration | 17 |
| 2.   Notification | 17 |
| 3.   AAA as Administrator of the Arbitration | 18 |
| 4.   Initiation of Arbitration | 18 |
| 5.   Changes of Claim | 20 |
| 6.   Jurisdiction | 20 |
| 7.   Administrative and Mediation Conferences | 21 |
| 8.   Arbitration Management Conference | 21 |
| 9.   Discovery | 23 |
| 10. Fixing of Locale | 23 |
| 11. Date, Time and Place of Hearing | 23 |

Employment Arbitration Rules and Mediation Procedures

12. Number, Qualifications and Appointment
     of Neutral Arbitrators                                          24

13. Party Appointed Arbitrators                                     25

14. Appointment of Chairperson by Party-Appointed
     Arbitrators or Parties                                         26

15. Disclosure                                                      27

16. Disqualification of Arbitrator                                  27

17. Communication with Arbitrator                                   28

18. Vacancies                                                       28

19. Representation                                                  29

20. Stenographic Record                                             29

21. Interpreters                                                    29

22. Attendance at Hearings                                          30

23. Confidentiality                                                 30

24. Postponements                                                   30

25. Oaths                                                           30

26. Majority Decision                                               30

27. Dispositive Motions                                             31

28. Order of Proceedings                                            31

29. Arbitration in the Absence of a Party or Representative         32

30. Evidence                                                        32

31. Inspection                                                      33

32. Interim Measures                                                33

33. Closing of Hearing                                              34

34. Reopening of Hearing                                            34

35. Waiver of Oral Hearing                                          34

36.  Waiver of Objection/Lack of Compliance with These Rules    35

37.  Extensions of Time    35

38.  Serving of Notice    35

39.  The Award    36

40.  Modification of Award    37

41.  Release of Documents for Judicial Proceedings    37

42.  Applications to Court    37

43.  Administrative Fees    38

44.  Neutral Arbitrator's Compensation    38

45.  Expenses    38

46.  Deposits    39

47.  Suspension for Non-Payment    39

48.  Interpretation and Application of Rules    39

Costs of Arbitration (including AAA Administrative Fees)    39

For Disputes Arising Out of Employer-Promulgated Plans    40

Filing Fees    40

Hearing Fees    41

Postponement/Cancellation Fees    41

Hearing Room Rental    41

Abeyance Fees    41

Expenses    42

For Disputes Arising Out of Individually-Negotiated
Employment Agreements and Contracts    42

5

Employment Arbitration Rules and Mediation Procedures

**Administrative Fee Schedules (Standard and Flexible Fee)**   42

Standard Fee Schedule   44

Refund Schedule   45

Flexible Fee Schedule   46

Hearing Room Rental   48

Abeyance Fee   49

Expenses   49

**For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")**   49

Optional Rules for Emergency Measures of Protection   50

O-1.   Applicability   50

O-2.   Appointment of Emergency Arbitrator   50

O-3.   Schedule   50

O-4.   Interim Award   51

O-5.   Constitution of the Panel   51

O-6.   Security   51

O-7.   Special Master   52

O-8.   Costs   52

Employment Mediation Procedures   53

M-1.   Agreement of Parties   53

M-2.   Initiation of Mediation   53

M-3.   Fixing of Locale (the city, county, state, territory and, if applicable, country of the Mediation)   54

M-4.   Representation   54

M-5.   Appointment of the Mediator   55

6

M-6.   Mediator's Impartiality and Duty to Disclose          55

M-7.   Vacancies          56

M-8.   Duties and Responsibilities of the Mediator          56

M-9.   Responsibilities of the Parties          58

M-10. Privacy          58

M-11. Confidentiality          58

M-12. No Stenographic Record          59

M-13. Termination of Mediation          59

M-14. Exclusion of Liability          60

M-15. Interpretation and Application of Procedures          60

M-16. Deposits          61

M-17. Expenses          60

M-18. Cost of the Mediation          61

Employment Arbitration Rules and Mediation Procedures

# Employment Arbitration Rules and Mediation Procedures

## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes.

These Rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

8

### Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

### Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination — in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the *Gilmer* Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically

9

Employment Arbitration Rules and Mediation Procedures

declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act.

The specific issue left open by *Gilmer* was decided 10 years later by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

### The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol*, which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The *Due Process Protocol* encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the

10

National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol*.

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

### AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules reflected the guidelines outlined in the *Due Process Protocol* and were based upon the AAA's *California Employment Dispute Resolution Rules*, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

Employment Arbitration Rules and Mediation Procedures

### AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

### Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

Copies of all plans should be sent to the
American Arbitration Association,
725 South Figueroa Street, Suite 2400,
Los Angeles, CA 90017;
FAX: 213.622.6199.

### Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA

12

makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

### Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

> The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

> A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation.

13

Employment Arbitration Rules and Mediation Procedures

> The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

> Programs which use arbitration as a final step may employ:

  ◆ pre-dispute, voluntary final and binding arbitration;

  ◆ pre-dispute, mandatory nonbinding arbitration;

  ◆ pre-dispute, mandatory final and binding arbitration; or

  ◆ post-dispute, voluntary final and binding arbitration.

> Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures*.

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide*, which is available from the AAA's website, **www.adr.org**.

## Alternative Dispute Resolution Options

### Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

### Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

14

**Peer Review**

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

**Internal Mediation**

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

**Fact-Finding**

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

**Arbitration**

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

   **Pre-Dispute, Voluntary Final and Binding Arbitration**
      The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

15

Employment Arbitration Rules and Mediation Procedures

**Pre-Dispute, Mandatory Nonbinding Arbitration**
The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

**Pre-Dispute, Mandatory Final and Binding Arbitration**
The parties must arbitrate unresolved disputes and they are bound by the outcome.

**Post-Dispute, Voluntary Final and Binding Arbitration**
The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

## Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

16

# Employment Arbitration Rules and Mediation Procedures

## 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.

These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

---

* *The National Rules for the Resolution of Employment Disputes* have been re-named the *Employment Arbitration Rules and Mediation Procedures*. Any arbitration agreements providing for arbitration under its *National Rules for the Resolution of Employment Disputes* shall be administered pursuant to these *Employment Arbitration Rules and Mediation Procedures*.

## 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

(i)   notify the Association of its intention to do so and,

Employment Arbitration Rules and Mediation Procedures

(ii)  provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

### 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

### 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner:

a.   The parties may submit a joint request for arbitration.

b.   In the absence of a joint request for arbitration:

(i) The initiating party (hereinafter "Claimant[s]") shall:

(1)  File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

18

(2) Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

(3) Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

(ii) The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(iii) The Respondent(s):

(1) May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

(2) Simultaneously shall send a copy of any counterclaim to the Claimant.

(3) Shall include with its filing the applicable filing fee provided for by these rules.

(iv) The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

19

Employment Arbitration Rules and Mediation Procedures

c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

20

### 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

### 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

a.  the issues to be arbitrated;

b.  the date, time, place and estimated duration of the hearing;

c.  the resolution of outstanding discovery issues and establishment of discovery parameters;

d.  the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;

21

Employment Arbitration Rules and Mediation Procedures

e.   the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

f.   the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

g.   the value of bifurcating the arbitration into a liability phase and damages phase;

h.   the need for a stenographic record;

i.   whether the parties will summarize their arguments orally or in writing;

j.   the form of the award;

k.   any other issues relating to the subject or conduct of the arbitration;

l.   the allocation of attorney's fees and costs;

m.   the specification of undisclosed claims;

n.   the extent to which documentary evidence may be submitted at the hearing;

o.   the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

p.   any disputes over the AAA's determination regarding whether the dispute arose from an individually–negotiated employment agreement or contract, or from an employer–promulgated plan (see Costs of Arbitration Section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

22

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery-related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale
(the city, county, state, territory and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

Employment Arbitration Rules and Mediation Procedures

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

a.  If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

b.  Qualifications

   (i)  Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

   (ii)  Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

   (iii) The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

   (iv) The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually–negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

c.  If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

   (i)  Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

24

(ii) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

(iii) From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party-Appointed Arbitrators

a.  If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

b.  Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

25

Employment Arbitration Rules and Mediation Procedures

c.  If the agreement specifies a period of time within which an arbitra-
tor shall be appointed and any party fails to make the appointment
within that period, the AAA shall make the appointment.

d.  If no period of time is specified in the agreement, the AAA shall
notify the party to make the appointment. If within 15 days after
such notice has been sent, an arbitrator has not been appointed by
a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

a.  If, pursuant to Section R-13, either the parties have directly
appointed arbitrators, or the arbitrators have been appointed
by the AAA, and the parties have authorized them to appoint a
chairperson within a specified time and no appointment is made
within that time or any agreed extension, the AAA may appoint
the chairperson.

b.  If no period of time is specified for appointment of the chairper-
son and the party-appointed arbitrators or the parties do not make
the appointment within 15 days from the date of the appointment
of the last party-appointed arbitrator, the AAA may appoint the
chairperson.

c.  If the parties have agreed that their party-appointed arbitrators
shall appoint the chairperson from the National Roster, the AAA
shall furnish to the party-appointed arbitrators, in the manner
provided in Section R-12, a list selected from the National Roster,
and the appointment of the chairperson shall be made as provided
in that Section.

## 15. Disclosure

a.  Any person appointed or to be appointed as an arbitrator
    shall disclose to the AAA any circumstance likely to give
    rise to justifiable doubt as to the arbitrator's impartiality or
    independence, including any bias or any financial or personal
    interest in the result of the arbitration or any past or present
    relationship with the parties or their representatives.
    Such obligation shall remain in effect throughout the arbitration.

b.  Upon receipt of such information from the arbitrator or another
    source, the AAA shall communicate the information to the parties
    and, if it deems it appropriate to do so, to the arbitrator and
    others.

c.  In order to encourage disclosure by arbitrators, disclosure of
    information pursuant to this Section R-15 is not to be construed
    as an indication that the arbitrator considers that the disclosed
    circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

a.  Any arbitrator shall be impartial and independent and shall
    perform his or her duties with diligence and in good faith, and
    shall be subject to disqualification for:

    (i)   partiality or lack of independence,

    (ii)  inability or refusal to perform his or her duties with diligence
          and in good faith, and

    (iii) any grounds for disqualification provided by applicable law.
          The parties may agree in writing, however, that arbitrators
          directly appointed by a party pursuant to Section R-13
          shall be nonneutral, in which case such arbitrators need
          not be impartial or independent and shall not be subject to
          disqualification for partiality or lack of independence.

27

Employment Arbitration Rules and Mediation Procedures

b.  Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

### 17. Communication with Arbitrator

a.  No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

b.  Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

### 18. Vacancies

a.  If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

28

b.   In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c.   In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

29

Employment Arbitration Rules and Mediation Procedures

### 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

### 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

### 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

### 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

31

Employment Arbitration Rules and Mediation Procedures

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

## 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

32

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

Employment Arbitration Rules and Mediation Procedures

### 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

### 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

### 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings.

If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

34

### 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

### 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

### 38. Serving of Notice

a.  Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b.  The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these Rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

c.  Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

35

Employment Arbitration Rules and Mediation Procedures

### 39. The Award

a.  The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b.  An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c.  The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

d.  The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

e.  If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

f.  The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

g.  The arbitrator's award shall be final and binding.

36

### 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

### 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

### 42. Applications to Court

a.  No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b.  Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

c.  Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d.  Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

Employment Arbitration Rules and Mediation Procedures

### 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 39-48).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

### 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and monies collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration Section.

### 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof

38

and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration Section.

## 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

## 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

## 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

39

Employment Arbitration Rules and Mediation Procedures

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

### For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

> * Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $925 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less.

40

A nonrefundable fee in the amount of $1,800 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

### (ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

### (iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

### (iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

### (v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

41

Employment Arbitration Rules and Mediation Procedures

## (vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

## For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, on the following page, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

## Administrative Fee Schedules (Standard and Flexible Fee)

The AAA has two administrative fee options for parties filing claims or counterclaims, the     Standard Fee Schedule and Flexible Fee Schedule. The Standard Fee Schedule has a two payment schedule, and the Flexible Fee Schedule has a three payment schedule which offers lower initial filing fees, but potentially higher total administrative fees of approximately 12% to 19% for cases that proceed to a hearing. The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related Disputes when filing a consumer-related claim. Note that the Flexible Fee Schedule is not available on cases administered under these supplementary procedures.

42

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

**Fees for incomplete or deficient filings:** Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of the other parties to the dispute to have the arbitration administered by the AAA.  However, where the AAA is unable to obtain the agreement of the parties to have the AAA administer the arbitration, the AAA will administratively close the case and will not proceed with the administration of the arbitration.  In these cases, the AAA will return the filing fees to the filing party, less the amount specified in the fee schedule below for deficient filings.

Parties that file demands for arbitration that are incomplete or otherwise do not meet the filing requirements contained in these Rules shall also be charged the amount specified below for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

**Fees for additional services:** The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules which may be required by the parties' agreement or stipulation.

Employment Arbitration Rules and Mediation Procedures

## (i) Standard Fee Schedule

An Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. A Final Fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Final Fee |
|---|---|---|
| Above $0 to $10,000 | $775 | $200 |
| Above $10,000 to $75,000 | $975 | $300 |
| Above $75,000 to $150,000 | $1,850 | $750 |
| Above $150,000 to $300,000 | $2,800 | $1,250 |
| Above $300,000 to $500,000 | $4,350 | $1,750 |
| Above $500,000 to $1,000,000 | $6,200 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,200 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,200 | $4,000 |
| Above $10,000,000 | Base fee of $12,800 plus .01% of the amount above $10,000,000 Fee Capped at $65,000 | $6,000 |
| Nonmonetary Claims [1] | $3,350 | $1,250 |
| Deficient Claim Filing Fee [2] | $350 | |
| Additional Services [3] | | |

[1]This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $10,200.

[2]The Deficient Claim Filing Fee shall not be charged in cases filed by a consumer in an arbitration governed by the Supplementary Procedures for the Resolution of Consumer-Related Disputes, or in cases filed by an Employee who is submitting their dispute to arbitration pursuant to an employer promulgated plan.

44

[3]*The AAA may assess additional fees where procedures or services outside the Rules sections are required under the parties' agreement or by stipulation.*

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,800 for the Initial Filing Fee, plus a $1,250 Final Fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases filed under either the Flexible Fee Schedule or the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879.

(ii) Refund Schedule for Standard Fee Schedule

The AAA offers a refund schedule on filing fees connected with the Standard Fee Schedule. For cases with claims up to $75,000, a minimum filing fee of $350 will not be refunded. For all other cases, a minimum fee of $600 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

> 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

45

Employment Arbitration Rules and Mediation Procedures

> 50% of the filing fee, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

> 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

(iii) Flexible Fee Schedule

A non-refundable Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. Upon receipt of the Demand for Arbitration, the AAA will promptly initiate the case and notify all parties as well as establish the due date for filing of an Answer, which may include a Counterclaim. In order to proceed with the further administration of the arbitration and appointment of the arbitrator(s), the appropriate, non-refundable Proceed Fee outlined below must be paid.

If a Proceed Fee is not submitted within ninety (90) days of the filing of the Claimant's Demand for Arbitration, the Association will administratively close the file and notify all parties.

No refunds or refund schedule will apply to the Filing or Proceed Fees once received.

The Flexible Fee Schedule below also may be utilized for the filing of counterclaims. However, as with the Claimant's claim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

A Final Fee will be incurred for all claims and/or counterclaims that proceed to their first hearing. This fee will be payable in advance when the first hearing is scheduled, but will be refunded at the

46

conclusion of the case if no hearings have occurred. However, if the Association is not notified of a cancellation at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

All fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Proceed Fee | Final Fee |
|---|---|---|---|
| Above $0 to $10,000 | $400 | $475 | $200 |
| Above $10,000 to $75,000 | $625 | $500 | $300 |
| Above $75,000 to $150,000 | $850 | $1250 | $750 |
| Above $150,000 to $300,000 | $1,000 | $2125 | $1,250 |
| Above $300,000 to $500,000 | $1,500 | $3,400 | $1,750 |
| Above $500,000 to $1,000,000 | $2,500 | $4,500 | $2,500 |
| Above $1,000,000 to $5,000,000 | $2,500 | $6,700 | $3,250 |
| Above $5,000,000 to $10,000,000 | $3,500 | $8,200 | $4,000 |
| Above $10,000,000 | $4,500 | $10,300 plus .01% of claim amount over $10,000,000 up to $65,000 | $6,000 |
| Nonmonetary[1] | $2,000 | $2,000 | $1,250 |
| Deficient Claim Filing Fee | $350 | | |
| Additional Services[2] | | | |

[1] *This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $3,500 and a proceed fee of $8,200.*

[2] *The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.*

47

Employment Arbitration Rules and Mediation Procedures

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879. All fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $1,000 for the Initial Filing Fee; $2,125 for the Proceed Fee; and $1,250 for the Final Fee.

Under the Flexible Fee Schedule, a party's obligation to pay the Proceed Fee shall remain in effect regardless of any agreement of the parties to stay, postpone or otherwise modify the arbitration proceedings. Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Note: The date of receipt by the AAA of the demand for arbitration will be used to calculate the ninety (90) day time limit for payment of the Proceed Fee.

There is no Refund Schedule in the Flexible Fee Schedule.


(iv) Hearing Room Rental

The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

(v) Abeyance Fee

Parties on cases filed under the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

Employment Arbitration Rules and Mediation Procedures

## OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

50

## O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

## O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

## O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

## O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

Employment Arbitration Rules and Mediation Procedures

## O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration Section.

## Employment Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile at **www.adr.org**.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

ii.  The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

iii. A brief statement of the nature of the dispute and the relief requested.

iv.  Any specific qualifications the mediator should possess.

53

Employment Arbitration Rules and Mediation Procedures

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

### M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the Mediation)

i    When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.

ii   When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.

iii  If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

### M-4. Representation

Any party may participate without representation (pro-se), or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

54

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.aaamediation.com** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

i.  Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

ii. If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

iii. If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the Model Standards of Conduct for Mediators in effect at the time a mediator is appointed to a case. Where there is a conflict between the Model Standards and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial man-

Employment Arbitration Rules and Mediation Procedures

ner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

i.    The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

56

ii.  The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

iii. The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

iv.  The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

v.   In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

vi.  The mediator is not a legal representative of any party and has no fiduciary duty to any party.

vii. The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

57

Employment Arbitration Rules and Mediation Procedures

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

i.   Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

ii.  Admissions made by a party or other participant in the course of the mediation proceedings;

iii. Proposals made or views expressed by the mediator; or

iv.  The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

i.   By the execution of a settlement agreement by the parties; or

ii.  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

iii. By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

iv.  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

59

Employment Arbitration Rules and Mediation Procedures

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

M-18. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the AAA to invite parties to mediate.

The cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. This rate covers both mediator compensation and an allocated portion for the AAA's services. There is a four-hour or one half-day minimum charge for a mediation conference. Expenses referenced in Section M-17 may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the request to initiate mediation is filed but prior to the mediation conference, the cost is $200 plus any mediator time and charges incurred. These costs shall be borne by the initiating party unless the parties agree otherwise.

If you have questions about mediation costs or services visit **www.aaamediation.com** or contact your local AAA office.

Employment Arbitration Rules and Mediation Procedures

Notes

©2010 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the administrative services of the AAA. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact the AAA at 800.778.7879 or websitemail@adr.org for additional information.



EXHIBIT 9

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| DOREEN SAVARIA and CRYSTAL RAIA, individually and on behalf of other similarly situated employees of Elemis Spa, | ) ) ) | AAA Case No.: 12-460-454-12 |
| | ) | |
| Claimants, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| STEINER LEISURE LIMITED,, | ) ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE TO CLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF CLASS ARBITRATION

The Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013) and its earlier decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S Ct. 1758 (2010) compel Respondent Steiner Leisure Limited ("Steiner") to bring an application for declaratory and injunctive relief before the Connecticut District Court. The application and complaint (courtesy copies will be emailed today), which will be served on Claimant's counsel via overnight mail after we receive court-stamped copies, rests on the principle that a Court, not an arbitrator, must decide the gateway issue of arbitrability of class and collective action claims of unnamed claimants when a valid arbitration agreement is silent on the issue.

Steiner respects the authority granted to Arbitrator Dinneen in the Arbitration Agreement. However, because Steiner does not agree that any arbitrator has the power to decide whether Steiner's Arbitration Agreement authorizes class or collective action arbitration, and because *Oxford Health* greatly limits the appeal rights of arbitrability decisions (when parties agree or stipulate that an arbitrator may decide arbitrability of class/collective claims), Steiner feels compelled to seek declaratory and injunctive relief from a court.

Another compelling reason for Steiner to seek declaratory and injunctive relief from a court is the Second Circuit's August 9, 2013 ruling in *Sutherland v. Ernst & Young, LLC*, No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013) holding that the ability to bring a FLSA collective action in arbitration is not a substantive right.  Given arbitrability refers to whether arbitrators have the authority to rule on a dispute, which in turn depends entirely on whether the parties to an arbitration agreement agreed to have certain disputes between them resolved through arbitration; and here there is no implicit or explicit power provided to any arbitrator to decide anything other than individual jurisdiction and individual substantive claims; Steiner respectfully asserts that a decision by any arbitrator on this gateway class/collective action arbitrability issue would go beyond his or her express or implied (if any) powers.  As such, Steiner feels a Court should make this gateway arbitrability decision.

Thus, Steiner has commenced an action in Connecticut District Court seeking: (1) declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration; and (2) an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue.

Respectfully submitted, this 20th day of September, 2013.

DUANE MORRIS LLP

/s/ Anthony J. Rao
Anthony J. Rao
Michael Tiliakos

**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036
Attorneys for Steiner Leisure Limited

-2-

EXHIBIT 10

Scott D. Segal, Esq.
Law Offices of Scott D. Segal, P.A.
335 South Biscayne Blvd – Suite 3405
Miami, Florida 33131
Telephone: 305-374-6240
Telefax:  305-374-6394

Anthony Rao, Esq.
Michael Tiliakos, Esq.
Duane Morris LLP
1540 Broadway
New York, New York  10036
Telephone: 212-692-1000
Telecopy: 212-692-1020

*Attorneys for Respondent*
*Steiner Leisure Limited*

**AMERICAN ARBITRATION**
**ASSOCIATION**

-------------------------------------------------------------x
                                                             :
**DAWN SAVARIA AND CRYSTAL RAIA,**       :
**INDIVIDUALLY AND ON BEHALF OF ALL**    :
**OTHER SIMILARLY SITUATED**             :    **AAA NO.**
**EMPLOYEES OF ELEMIS SPA**              :    **12 160 454 12**
                                         :
          **Claimant,**                  :    **FIRST AMENDED ANSWERING**
                                         :    **STATEMENT FROM**
     **vs.**                             :    **RESPONDENT STEINER**
                                         :    **LEISURE LIMITED**
**STEINER LEISURE LIMITED,**             :
                                         :
          **Respondent.**                :
                                         :
-------------------------------------------------------------x

          Respondent Steiner Leisure Limited (the "Company"), by its undersigned counsel,

provides the following Answering Statement to Claimant's Statement of Claim and Demand for

Arbitration ("Demand"):

          The Company generally and specifically denies each, every, and all of the allegations and

claims in the Demand, and the whole thereof, and without limiting the generality of the

foregoing, denies that Claimants have been damaged in any amount, or at all, or by reason of any

act or omissions of the Company, or any of its past or present agents, representatives, or

employees.

The Company further responds that: (1) Claimants' claims are not ripe for arbitration inasmuch as they failed to exhaust their administrative remedies as required by the Company's Dispute Resolution Procedure; (2) Claimants' request for class or collective action treatment must be determined by a court as gateway arbitrability of class and collective action claims of unnamed class members was not clearly and unmistakably granted to the arbitrator to decide; (3) if a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, then Claimants' claims, including but not limited to their claims for alleged commissions owed, unjust enrichment, deprivation of full service charges, theft of gratuities, and monies owed for time worked in the "Poker Room," are not amenable to class or collective action treatment; and (4) Claimants are barred from pursuing claims that were the subject of the Connecticut Department of Labor's investigation under the doctrines of *res judicata* and/or collateral estoppel.

In accordance with the United States Supreme Court decision in *Stolt-Nielsen S.A., et al. v. Animalfeeds International Corp.* (2010) 130 S. Ct. 1758, if a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, Claimants must arbitrate their claims individually because they signed an arbitration agreement that reflects an intent to provide individualized arbitration and does not explicitly provide for class arbitration.

In further response to the Demand, and as separate and distinct affirmative and other defenses, the Company alleges the following defenses. In asserting these defenses, the Company does not assume the burden of proof as to matters that, pursuant to law, are Claimants' burden to prove.

2

## AFFIRMATIVE AND OTHER DEFENSES

The Company reserves its right to assert any and all additional defenses which may

pertain to the Demand once the details of such claims are made available pursuant to discovery.

### FIRST DEFENSE

The Demand and the purported claim or claims against the Company contained therein

fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

To the extent a court determines that the arbitrator decides arbitrability of class and

collective action claims of unnamed class members, Claimants' claims must be brought

individually in arbitration and not as a class or collective action.

### THIRD DEFENSE

Claimants' claims are barred, in whole or in part, because the Claimants failed to exhaust

their administrative remedies.

### FOURTH DEFENSE

Claimants' claims and/or the claims of members of the alleged putative group they

purport to represent[1] are barred, in whole or in part, because of *res judicata* and/or collateral

estoppel.

### FIFTH DEFENSE

The Demand, and each purported cause of action alleged therein, is barred to the extent

Claimants and/or the members of the alleged putative group they purport to represent have

released the Company from all or part of any claims they may have against it.

---

[1] The Company expressly denies the existence of any alleged putative group of persons that Claimants purport to represent in this matter. The Company incorporates (as if fully set forth therein) this express denial each and every time it mentions the alleged putative group in this response.

3

## SIXTH DEFENSE

Claimants and/or the members of the alleged putative group they purport to represent are precluded from recovering any amounts from the Company where the Company has paid Claimants and/or the members of the alleged putative group all sums legally due under Connecticut and federal law.

## SEVENTH DEFENSE

The Demand, and each purported claim alleged therein, is barred in whole or in part because Claimants and/or the members of the alleged putative group they purport to represent misperformed their respective duties and/or failed to perform those duties which the Company realistically expected them to perform.

## EIGHTH DEFENSE

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, Claimants lack standing to assert the legal rights or interests of others.

## NINTH DEFENSE

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, the types of claims alleged by Claimants on behalf of themselves and/or the alleged putative group they purport to represent are matters in which individual questions predominate and thus are not appropriate for class treatment.

## TENTH DEFENSE

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, the alleged putative group that Claimants purport to represent is not so numerous that joinder is impracticable.

4

**ELEVENTH DEFENSE**

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, the purported claims alleged by Claimants are neither common to nor typical of those, if any, of the alleged putative group that Claimants purport to represent.

**TWELFTH DEFENSE**

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, Claimants are not similarly situated to other potential members of the alleged putative group they purport to represent and thus are inadequate representatives of the alleged putative group.

**THIRTEENTH DEFENSE**

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, certain of the interests of the alleged putative group that Claimants purport to represent are in conflict with the interests of all or certain members of the alleged putative group.

**FOURTEENTH DEFENSE**

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, Claimants have not shown and cannot show that class treatment of the purported claims alleged in the Demand are superior to other methods of adjudicating the controversy.

**FIFTEENTH DEFENSE**

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, the Demand, and each purported claim

alleged therein, cannot proceed as a purported class action because difficulties likely to be encountered render the action unmanageable.

### SIXTEENTH DEFENSE

Some or all of the purported claims alleged in the Demand are barred in whole or in part by the equitable doctrines of laches, waiver, estoppel, and/or unclean hands.

### SEVENTEENTH DEFENSE

The Demand, and each purported claim alleged therein, is barred in whole or in part by all applicable statutes of limitation.

### EIGHTEENTH DEFENSE

Claimant and/or the members of the alleged putative group they purports to represent are not entitled to any purported damages and/or penalty award because the Company did not willfully fail to comply with the compensation provisions of Connecticut and federal law, but rather acted in good faith and had reasonable grounds for believing it did not violate them.

### NINETEENTH DEFENSE

Claimants and/or the members of the alleged putative group they purport to represent are barred from recovering any compensatory damages, or any recovery for compensatory damages must be reduced, by virtue of their failure to exercise reasonable diligence to mitigate their alleged damages.

### TWENTIETH DEFENSE

Some or all of the disputed time and/or wages for which Claimants seek recovery is not compensable or recoverable pursuant to the doctrine of de minimis non curat lex, and/or is not compensable or recoverable due to the preliminary or postliminary nature of the activities, and/or is not compensable or recoverable because the Company paid all wages legally due.

6

### TWENTY-FIRST DEFENSE

Although the Company denies that it owes any unpaid wages to Claimants, if it is determined that wages are owed, a reasonable good faith dispute existed as to whether such wages were due, payable and owed.

### TWENTY-SECOND DEFENSE

Claimants' claims for wages or overtime are barred, in whole or in part, as to all hours allegedly worked by Claimants that were not reported in accordance with any applicable policies or procedures, and/or that were allegedly worked without the Company's actual or constructive knowledge.

### TWENTY-THIRD DEFENSE

To the extent a court determines that the arbitrator decides arbitrability of class and collective action claims of unnamed class members, the putative collective action members in Claimants' purported twelfth claim cannot proceed collectively under 29 U.S.C. § 216(b) because they are not similarly situated.

### TWENTY-FOURTH DEFENSE

To the extent Claimants and the putative class/collective action members have received other benefits and/or awards attributable to an injury for which they seek compensation in this matter, such benefits and/or awards should offset, in whole or in part, any award they receive here for the same injury.

### TWENTY-FIFTH DEFENSE

To the extent Claimants and the putative class/collective action members seek the payment of commissions, no commissions are due and payable because they are not deemed earned.

### TWENTY-SIXTH DEFENSE

To the extent Claimants and the putative class/collective action members seek the payment of additional gratuities, no additional payment is due and payable because the alleged additional gratuities were service charges.

### TWENTY-SEVENTH DEFENSE

Claimants' request for class or collective action treatment must be determined by a court as gateway arbitrability of class and collective action claims of unnamed class members was not clearly and unmistakably granted to the arbitrator to decide.

The Company reserves the right to supplement, modify, and/or amend the affirmative defenses set forth herein as information is developed in the course of this action.

**WHEREFORE,** The Company prays for an award as follows:

1. That Claimants' Demand and all claims therein be dismissed with prejudice;

2. For an order of the Arbitrator denying all relief sought by Claimants herein;

3. For an order of the Arbitrator imposing sanctions and costs for Claimants' frivolous claims; and

4. For such other and further relief as the Arbitrator may deem just and proper.

Dated: New York
        September 20, 2013

By:   _/s/ Anthony J. Rao_
         Anthony J. Rao

**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036
(212) 692-1086
Attorneys for Respondent Steiner Leisure Limited

8

To:     Joseph D. Garrison, Esq.
        GARRISON, LEVIN-EPSTEIN, RICHARDSON
           FITZGERALD & PIRROTTI, PC
        405 Orange Street
        New Haven, Connecticut  06511

        Attorneys for Claimants Doreen Savaria, Crystal Raia et al.

EXHIBIT 11

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| **DOREEN SAVARIA and CRYSTAL RAIA,** | : | **AAA Case No.:  12-460-454-12** |
| **Individually and on Behalf of All Other** | : | |
| **Similarly Situated Employees of Elemis Spa,** | : | |
| | : | |
| **Claimants,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEINER LEISURE LIMITED,** | : | |
| | : | |
| **Respondent.** | : | **October 1, 2013** |
| | : | |

## CLAIMANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF CLASS ARBITRATION

Respondent Steiner Leisure Limited's response brief provides no substantive reply to Claimants' arguments regarding clause construction.  Steiner has presented no reason, let alone a compelling one, for the Arbitrator to interpret the arbitration clause, which commits "any and all disputes" to the arbitration process, not to permit class-wide claims.  Steiner has sought a declaratory judgment in federal court, but its lawsuit will not succeed, for the reasons stated in section II.A of the Claimants' initial brief.  Regardless, in the meantime, no court has enjoined the Arbitrator from proceeding, nor has Steiner asked the Arbitrator not to do so.  Accordingly, the Claimants respectfully request a partial final clause construction award allowing them to proceed with class arbitration.

RESPECTFULLY SUBMITTED,
THE CLAIMANTS

By:    */s/ Joseph D. Garrison*
         Joseph D. Garrison
         Joshua R. Goodbaum
         GARRISON, LEVIN-EPSTEIN, RICHARDSON,
            FITZGERALD & PIRROTTI, P.C.
         405 Orange Street
         New Haven, CT 06511
         Tel.: (203) 777-4425
         Fax: (203) 776-3965
         jgarrison@garrisonlaw.com
         jgoodbaum@garrisonlaw.com

**Sweeney, Dolores D.**

| | |
|---|---|
| **From:** | Rao, Anthony |
| **Sent:** | Tuesday, October 01, 2013 12:04 PM |
| **To:** | 'Joshua R. Goodbaum'; EdieDinneen@aol.com |
| **Cc:** | JonathanWeed@adr.org; Tiliakos, Michael; Scott D. Segal, Esq. (ssegal@myhrattorney.com); Joseph D. Garrison; Christina J. Fletcher (CJFletcher@duanemorris.com); Gray, Katelynn M; Hrubos, Natalie |
| **Subject:** | RE: Savaria v. Steiner - Claimants' Reply Memorandum re Clause Construction |
| **Attachments:** | Steiner - AS FILED - Amended Complaint.pdf; Steiner - AS FILED - Memo in Support of Application for Declaratory and ....pdf |

Dear Arbitrator Dinneen:

Contrary to Claimants' reply memorandum, Steiner's submission summarized the reasons why it commenced an action in Connecticut District Court.  In sum, Steiner respectfully seeks declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration;
and an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue.  In an earlier email to you, Steiner stated that under the power provided to you under the arbitration agreement, respectfully, the arbitration agreement does not explicitly provide any arbitrator with the power to decide in a clause construction hearing whether the Claimants may bring this arbitration as a class or collective action.

Although it is obvious that Steiner wishes to have the class/collective action arbitration clause construction hearing stayed pending the Court's gateway arbitrability decision, you are obviously empowered to continue with the individual claims of those who have filed arbitration claims seeking wages.  To the extent Steiner has not formally requested that you to respectfully refrain from proceeding with the class/collective arbitration clause construction hearing pending the court's ruling, it does so now (although this does not seem necessary giving the court filings).

For your file is our Memorandum of Law and Complaint filed with the Connecticut District Court.  Steiner does not seek your consideration or ruling on the gateway class/collective action arbitrability issue.  However, if the Court determines that you are empowered to decide the gateway arbitrability issue, Steiner will submit a formal opposition to Claimant's class/collective action arbitration argument.

Sincerely,



**DuaneMorris**
www.duanemorris.com

**Anthony J. Rao**
Partner

Duane Morris LLP
1540 Broadway
New York, NY 10036-4086

P: +1 212 692 1086
F: +1 212 208 2575
C: +1 646 596 1610

E-MAIL | BIO | VCARD

Click here to read my New York Employment Law blog:
http://blogs.duanemorris.com/DuaneMorrisNYEmploymentLawBlog/

---

**From:** Joshua R. Goodbaum [mailto:JGoodbaum@garrisonlaw.com]
**Sent:** Tuesday, October 01, 2013 9:03 AM
**To:** EdieDinneen@aol.com
**Cc:** JonathanWeed@adr.org; Tiliakos, Michael; Scott D. Segal, Esq. (ssegal@myhrattorney.com); Rao, Anthony; Joseph D. Garrison
**Subject:** Savaria v. Steiner - Claimants' Reply Memorandum re Clause Construction

Dear Arbitrator Dinneen:

Attached please find the Claimants' reply memorandum of law regarding clause construction.

Sincerely,


Joshua R. Goodbaum
Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.
405 Orange Street
New Haven, Connecticut 06511
Tel. (203) 777-4425
Fax (203) 776-3965
jgoodbaum@garrisonlaw.com
garrisonlaw.com

*This transmittal is intended for a particular addresee(s). It may contain a confidential attorney-client communication or confidential attorney work product. If it is not clear that you are the intended recipient, you have received this transmittal in error, and any review, copying, distribution or dissemination of it by you is strictly prohibited. If you suspect that you have received this transmittal in error, please notify Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. immediately at (203) 777-4425, or by e-mail reply to the sender, and delete the transmittal and any attachments. Documents attached to this message are not encrypted. Thank you for your cooperation.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEINER LEISURE LIMITED )<br><br>      Plaintiff, )<br><br>v. )<br><br>DOREEN SAVARIA and CRYSTAL RAIA, )<br>INDIVIDUALLY AND ON BEHALF OF )<br>ALL OTHER SIMILARLY SITUATED )<br>EMPLOYEES OF ELEMIS SPA )<br><br>      Defendants. ) | CIVIL ACTION<br>NO. 3:13cv01379 (MPS)<br><br><br><br><br><br><br><br><br>SEPTEMBER 24, 2013 |

### AMENDED COMPLAINT

Plaintiff, STEINER LEISURE LIMITED, through its attorneys Duane Morris LLP, by way of this Complaint against defendants DOREEN SAVARIA and CRYSTAL RAIA, individually and on behalf of other similarly situated employees of Elemis Spa, alleges as follows:

### NATURE OF ACTION

1. This is a complaint for injunctive relief and a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  This action arises out of a present and actual controversy between Plaintiff, Steiner Leisure Limited, through its subsidiary Steiner Spa Resorts (Connecticut), Inc. d/b/a Elemis Spa at Mohegan Sun ("Steiner") and Defendants DOREEN SAVARIA and CRYSTAL RAIA, individually and on behalf of other similarly situated employees of Elemis Spa ("Defendants") resulting from and concerning Defendants' filing of a purported class action arbitration proceeding with the American Arbitration Association ("AAA") in Connecticut, in which they assert, *inter alia,* eleven Connecticut state law claims for wages and one overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Because a Court, not an arbitrator, must decide the gateway issue of arbitrability of class and collective action claims of unnamed claimants when a valid arbitration agreement is

DM2\4479632.1

silent on the issue, and there is no clear and unmistakable granting of power to an arbitrator to determine arbitrability of class or collective action claims in the applicable arbitration agreement, Steiner seeks declaratory relief to that effect and a permanent injunction preventing Defendants from pursuing class or collective action claims against Steiner with the AAA.

3.    Steiner seeks and is entitled to a declaration that: (1) the court, not an arbitrator, must decide arbitrability of class or collective action claims in arbitration, and (2) Steiner is not required to arbitrate Defendants' class or collective action claims before the AAA.   Furthermore, Steiner seeks an order staying the arbitration pending the court's determination of these issues.

## JURISDICTION AND VENUE

4.    The claims asserted in this Complaint are brought for equitable relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, as amended, in a case of actual controversy within the jurisdiction of the Court.

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there exists complete diversity of citizenship between Steiner and Defendants; and pursuant to 29 U.S.C. § 216 (Fair Labor Standards Act), 28 U.S.C. §137 (interstate commerce), and 28 U.S.C. § 1331 (federal question).

6.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims, namely Defendants' employment with Elemis Spa and the filing of the arbitration with AAA, occurred in this District.

-2-

DM2\4479632.1

## THE PARTIES

7.    Steiner through its subsidiary Steiner Spa Resorts (Connecticut), Inc. d/b/a Elemis

Spa at Mohegan Sun, is a provider of spa services and a manufacturer and distributor of skin, body

and hair products with several brands such as Elemis Spa.

8.    Steiner is and at all relevant times has been, incorporated in Nassau, the Bahamas,

with its principal place of business in Coral Gables, Florida.

9.    Defendant Savaria resides at 23 Macintosh Avenue, Uncasville, Connecticut

06382, and is therefore a citizen of Connecticut.

10.    Defendant Raia resides at 36 Prest Street, New London, Connecticut 06320, and is

therefore a citizen of Connecticut.

## FACTUAL ALLEGATIONS

11.    On or about July 12, 2004, Savaria was hired by Elemis Spa and worked as an

esthetician at the Elemis Spa located at the Mohegan Sun casino in Uncasville, Connecticut until

her separation on or about December 23, 2011.

12.    On or about May 16, 2008, Raia was hired by Elemis Spa and worked as a message

therapist at the Elemis Spa located at the Mohegan Sun casino in Uncasville, Connecticut until her

separation on or about February 28, 2012.

13.    During their employment, Savaria and Raia acknowledged receipt of Steiner's

Employment Arbitration Policy and agreement and signed Employee Dispute Resolution Policy

Agreements ("Arbitration Agreement").

DM2\479632.1

14.     After Defendants separated their employment at Elemis Spa, Defendants filed a demand for arbitration on September 11, 2012 before the American Arbitration Association ("AAA"), case number 12-160-00454-12, which is currently pending in Connecticut.

15.     Defendants' arbitration demand alleges eleven Connecticut state law claims for wages and one overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  Defendants' arbitration demand is brought individually and on behalf of other similarly situated employees of Elemis Spa as a class and collective action.

16.     The Arbitration Agreement is silent as to class or collective actions.

17.     The Arbitration Agreement does not explicitly or implicitly grant the arbitrator with the power to decide whether the Arbitration Agreement authorizes class or collective actions in arbitration.

18.     Steiner has not agreed and expressly denies that the arbitrator has the power to decide whether the Arbitration Agreement authorizes class or collective action arbitration.

### CLAIM FOR RELIEF AGAINST DEFENDANTS

19.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.     The Arbitration Agreement is silent as to class or collective actions and does not explicitly or implicitly grant the arbitrator with the power to decide whether the Arbitration Agreement authorizes class or collective actions in arbitration.

-4-

DM2\4479632.1

21.    The ability to bring a claim as a class or collective action is not a substantive right. *Sutherland v. Ernst & Young, LLC,* No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013).

22.    Steiner has neither consented nor agreed that the arbitrator may decide the arbitrability of class or collective action claims in arbitration.

23.    Steiner expressly denies that the arbitrator has the power to determine the arbitrability of class or collective action claims in arbitration.

24.    There is no clear and unmistakable agreement between Steiner and Defendants' to have the arbitrator decide the arbitrability of class or collective action claims in arbitration.

25.    The Arbitration Agreement does not expressly or implicitly permit class or collective actions arbitration.    *Stolt-Nielsen v. AnimalFeeds International Corp.*, 130 S. Ct. 1758, 1776 (2010).

26.    There exists a substantial, present and justiciable controversy between Steiner and Defendants concerning whether: (1) the court or arbitrator should decide arbitrability of class or collective claims in arbitration when an arbitration agreement does not clearly and unmistakably grant this power to the arbitrator; and (2) the Arbitration Agreement expressly or implicitly permits class or collective action arbitration.

27.    By reason of the foregoing, Steiner requests and is entitled to a declaration that: (1) the court, not an arbitrator, must decide arbitrability of class or collective action claims in arbitration, and (2) it is not required to arbitrate Defendants' class or collective action claims before the AAA.

-5-

DM2\4479632.1

28.     By reason of the foregoing, Steiner also requests that the Court issue a preliminary and permanent injunction preventing the Arbitration, case number 12-160-00454-12, from proceeding as a class or collective action.

**WHEREFORE**, Steiner respectfully requests that this Court grant judgment in its favor as follows:

A.     Declaring, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, that the court, not the arbitrator, must make the determination as to arbitrability of class or collective action claims in arbitration on behalf of unnamed employees or former employees;

B.     Declaring, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, that Steiner is not required to arbitrate Defendants' class or collective action claims before the AAA.

C.     Issuing an order staying the arbitration pending the Court's determinations;

D.     Preliminarily and permanently enjoining Defendants, and anyone acting in concert with them, from pursuing or attempting to pursue class or collective actions against Steiner before the AAA; and

E.     Granting such other and further relief as this Court deems just and proper.

[Space Intentionally Left Blank; Signature Block on Following Page]

DM2\4479632.1

Dated:          September 24, 2013

By:     /s/ Anthony J. Rao                        By:     /s/ Joshua A. Hawks-Ladds
        Anthony J. Rao                                    Joshua A. Hawks-Ladds (ct09446)
        *Pro Hac Vice Application Pending*                Benjamin B. Manchak (ct28929)
        (N.Y. Bar No. 4443370)                            PULLMAN & COMLEY, LLC
        Michael Tiliakos                                  90 State House Square
        *Pro Hac Vice Application Pending*                Hartford, CT   06103-3702
        (N.Y. Bar No. MT1678)                             Telephone: (860) 424-4300
        DUANE MORRIS LLP                                  Facsimile: (860) 424-4370
        1540 Broadway                                     Email: jhawks-ladds@pullcom.com
        New York, NY 10036                                       bmanchak@pullcom.com
        Telephone: (212) 692-1000                         Attorneys for Plaintiff
        Facsimile: (212) 692-1020                         Steiner Leisure Limited
        Attorneys for Plaintiff
        Steiner Leisure Limited

DM2\4479632.1

ACTIVE/76287.1/BMANCHAK/4316078v1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEINER LEISURE LIMITED | ) |
| | ) CIVIL ACTION |
|                      Plaintiff, | ) NO. 3:13-cv-01379 (MPS) |
| | ) |
| v. | ) |
| | ) |
| DOREEN SAVARIA and CRYSTAL RAIA, | ) |
| INDIVIDUALLY AND ON BEHALF OF | ) |
| ALL OTHER SIMILARLY SITUATED | ) |
| EMPLOYEES OF ELEMIS SPA | ) |
| | ) |
|                      Defendants. | ) SEPTEMBER 24, 2013 |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF STEINER LEISURE LIMITED FOR DECLARATORY AND INJUNCTIVE RELIEF

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

MEMORANDUM OF LAW SUPPORTING APPLICATION OF STEINER LEISURE
    LIMITED FOR DECLARATORY AND INJUNCTIVE RELIEF ...................................1

I.     **INTRODUCTION** ..................................................................................1

II.    **STATEMENT OF FACTS** ....................................................................3

    A.    **The Parties** ...................................................................................3

    C.    **Agreement To Arbitrate And Demand To Arbitrate** ....................4

III.   **ARGUMENT AND AUTHORITIES** ....................................................6

    A.    **An Injunction Is Warranted** ..........................................................6

    B.    **Steiner Is Likely To Succeed On The Merits, And/Or There Are
        Sufficiently Serious Questions Going To The Merits To Make Them A
        Fair Ground For Litigation And A Balance Of Hardships Tips
        Decidedly In Steiner's Favor.** ......................................................7

        1.    The Availability Of A Class Or Collective Action In Arbitration Is A
            Gateway Question Of Arbitrability And The Court Must Decide This
            Issue. ....................................................................................7

        2.    There Is No Clear And Unmistakable Evidence That Arbitrability Of Class
            Or Collective Actions Is To Be Decided By An Arbitrator.....................10

            a.    Incorporating The AAA Employment Rules Does Not
                Result In The Incorporation Of The AAA Supplementary
                Class Rules ....................................................................10

            b.    The AAA Arbitration Rules Say Nothing About An
                 Arbitrator's Power To Determine Arbitrability Of
                 Purported Class Or Collective Action Claims In
                 Arbitration, And Any Ambiguity Should Be Resolved By
                 A Court....................................................................11

            c.    The Ability To Bring A Class Or Collective Action Is Not
                 A Substantive Right. .......................................................13

            d.    Second Circuit Cases Concerning Incorporation Of AAA
                 Rules Are Inapposite Or Must Be Reevaluated After The
                 Second Circuit's Rulings In *Sutherland* and *Raniere*. ..................14

          e.     The Arbitration Agreement Explicitly Requires Listing The
                Names Of All Parties ................................................................ 16

    C.    **Steiner Will Suffer Irreparable Harm If The Requested Relief Is
        Denied.**............................................................................................. 17

II.     **CONCLUSION** ............................................................................................. 19

DM2\4478920.1

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ......................................................14

*American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013)...........................13-14

*AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986) .............................8-9, 17

*Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359 (11th Cir. 2005)....................................13

*Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294 (5th Cir. 2004) ...................................13

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .............................................................7

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2nd Cir. 2005)....................................14-15

*Emilio v. Sprint Spectrum L.P.*, 508 F. Appx. 3 (2nd Cir. 2013).............................................14-15

*First Options of Chicago v. Kaplan*, 514 US 938 (1995) .............................................................8

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d
    414 (2003)...............................................................................................................................9

*Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618 (9th Cir. 2011) ...............................................13

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002).............................................................9

*Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2nd Cir., 2011)...............................................14, 16

*Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002) ..........................................................................12

*Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979 (2nd Cir.
    1997).................................................................................................................................7, 18

*Merrill Lynch Investment Mgrs. v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003).........................18

*Morris v. Ernst & Young LLP*, Case No. C-12-04964 RMW, 2013 WL 3460052 (N.D.
    Cal. July 9, 2013) ...................................................................................................................13

*Morris v. Regis Corp.*, 2008 U.S. Dist. LEXIS 56612 (D. Me. July 25, 2008)............................12

*Mount Ararat Cemetery v. Cemetery Workers & Greens Attendant Union, Local 365*, 975
    F. Supp. 445 (E.D.N.Y. 1997) ................................................................................................17

*Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013).......................................................13

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013)................................................Passim

*Raniere et al., v. Citigroup Inc., et al.,* No. 11-5213, 2013 U.S. App. LEXIS 16765 (2d Cir. Aug. 12, 2013)..................................................................................................13-15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234 (2d Cir. 2011)............................13

*Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 879 F. Supp. 403,404 (S.D.N.Y. 1995), *rev'd on other grounds,* 85 F.3d 21 (2d Cir. 1996)....................................................18

*Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582-583 (1960).....................................8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S Ct. 1758 (2010)........................1, 11-12, 16

*Sutherland v. Ernst & Young, LLC,* No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013) .................................................................................................2, 13-15

*T.Co Metals LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329 (2nd Cir., 2010) ................14-15

*Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989) .......................................................................................................12

*Zubak v. Meyer,* No. 97 Civ. 5337, 1998 WL 314801 (S.D.N.Y. June 15, 1998)........................18

**Statutes**

9 U.S.C. § 2 .........................................................................................................................................7

29 U.S.C. § 201, et seq..........................................................................................................................3

DM2\4478920.1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEINER LEISURE LIMITED | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | NO. 3:13-cv-01379 (MPS) |
| | ) | |
| v. | ) | |
| | ) | |
| DOREEN SAVARIA and CRYSTAL RAIA, | ) | |
| INDIVIDUALLY AND ON BEHALF OF | ) | |
| ALL OTHER SIMILARLY SITUATED | ) | |
| EMPLOYEES OF ELEMIS SPA | ) | |
| | ) | |
| Defendants. | ) | SEPTEMBER 24, 2013 |

**MEMORANDUM OF LAW SUPPORTING APPLICATION OF STEINER LEISURE**
**LIMITED FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.      INTRODUCTION**

The Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter,* 133 S. Ct. 2064 (2013) and its earlier decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S Ct. 1758 (2010) compel Plaintiff Steiner Leisure Limited ("Steiner" or "Plaintiff") to bring the instant application for declaratory and injunctive relief. This application rests on the sound principle that a Court, not an arbitrator, must decide the gateway issue of arbitrability of class and collective action claims of unnamed claimants when a valid arbitration agreement is silent on the issue. *Oxford Health* stated that because the parties *agreed* the arbitrator should decide whether the arbitration agreement authorized class arbitration, and he concluded that it did, then the arbitral decision must stand "regardless of a court's view of its (de)merits." *Oxford Health,* 133 S. Ct. at 2068. Because Steiner does not agree and expressly denies that the arbitrator has

DM2\4478920.1

the power to decide whether its Arbitration Agreement authorizes class or collective action arbitration, it seeks declaratory and injunctive relief.[1]

Another compelling reason to seek declaratory and injunctive relief is the Second Circuit's August 9, 2013 ruling in *Sutherland v. Ernst & Young, LLC,* No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013) holding that the ability to bring a FLSA collective action in arbitration is not a substantive right. Given arbitrability refers to whether arbitrators have the authority to rule on a dispute, which in turn depends entirely on whether the parties to an arbitration agreement agreed to have certain disputes between them resolved through arbitration; and here there is no implicit or explicit power provided to the arbitrator to decide anything other than individual jurisdiction and individual *substantive* claims; any decision by an arbitrator on this gateway class/collective action arbitrability issue would go beyond her express and implied powers. The Court must make this arbitrability decision.

As such, Steiner has commenced this action seeking: (1) declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration; and (2) an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue. As demonstrated below, the entry of an order staying the arbitration is necessary to prevent Steiner from suffering

---

[1] Failure to seek Court relief and active participation in a clause construction hearing relating to the applicability of class or collective actions may subject Steiner to virtual non-existent appeal rights. As stated in *Oxford Health*, under the Federal Arbitration Act ("FAA"), courts may vacate an arbitrator's decision only in very limited circumstances. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." 133 S. Ct. at 2068 (citations omitted). "Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." *Id.*

irreparable harm and to preserve the jurisdiction of this Court to determine the issue of gateway arbitrability.

## II. STATEMENT OF FACTS

### A. The Parties

Doreen Savaria and Crystal Raia ("Defendants") are former employees of Steiner who worked at the Elemis Spa located at the Mohegan Sun casino in Uncasville, Connecticut. (*See* Declaration of Bruce Pine in support of the instant application ["Pine Decl."], ¶ 4)[2] Ms. Savaria was an esthetician and Ms. Raia was a message therapist. (Pine Decl., ¶ 6.) Steiner is a provider of spa services and a manufacturer and distributor of skin, body and hair products with several brands such as Elemis Spa. (Pine Decl., ¶ 3.)

### B. Defendants' Demand For Arbitration

On September 11, 2012, Defendants filed a demand for arbitration against Steiner before the American Arbitration Association ("AAA"). (*See* Declaration of Anthony J. Rao in support of the instant application ["Rao Decl."], ¶ 2, Ex. 1.) Defendants' arbitration demand alleges eleven Connecticut state law claims for wages and one overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. (*Id.*, ¶ 4) Defendants' arbitration demand is brought individually and on behalf of other similarly situated employees of Elemis Spa. (*Id.*, ¶ 5) Defendants seek to bring their arbitration as a class or collective action. (*Id., see also,* Rao Decl., ¶ 6, Ex. 2 (Defendants' Memorandum of Law Supporting Class Arbitration (not including exhibits containing case law)). The crux of Defendants' claims is that Steiner failed to pay all

---

[2] To date, there are five individuals who have filed additional individual arbitrations alleging non-wage claims and their counsel asserts these five individuals are "members of the [Defendants'] class" in the Savaria/Raia arbitration which alleges certain wage and hour claims. (*See* Rao Decl., ¶ 3.) In addition to Defendants, the other five employees or former employees are Catherine Sullivan, Nicole Briere, Ashley Serio, Nicholle Beaumont, and Caroline Griffin. (*Id.*)

-3-

wages, failed to pay commissions and gratuities, and failed to pay overtime.  (Rao Decl., ¶ 7, Ex. 1.)  The purported class or collective group is defined as:

> ... all spa service providers who are currently employed by [Steiner] at its Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ..., or who were employed by the same within the previous six (6) years ... includ[ing], ... all message therapists, estheticians, nail technicians, hair stylists, and all other employees who provided skilled spa services to customers at the Spa.

(Rao Decl., ¶ 8, Ex. 1.)

On January 31, 2013, the parties held a case management conference and it was decided to stay the arbitration pending the U.S. Supreme Court's decision in *Oxford Health Plans v. Sutter*, Case No. 12-135 (June 10, 2013) which was to address whether an arbitrator could authorize class or collective action arbitration.  (Rao Decl., ¶ 9, Ex. 3.)  In late July and August 2013, in anticipation of an arbitration conference to discuss possible clause construction, counsel for Steiner advised counsel for Defendants and the chosen arbitrator that, just as in *Oxford Health*, because the arbitration agreement at issue is silent as to class and collective actions and does not provide the arbitrator with the power to decide whether any statutory or common law claim can be brought as a class or collective action, the gateway class or collective action issue must be decided by a Court.  (*Id.*, at ¶ 10, Exs. 4-6.)  Defendants disagreed necessitating this application.  (*Id.*, at ¶ 11, Ex. 5.)

C.      **Agreement To Arbitrate And Demand To Arbitrate**

Attached to the individual arbitration demands of Defendants and the five employees or ex-employees demanding arbitration is the applicable Steiner Arbitration Agreement.  (Rao Decl., ¶ 12, Ex. 7; Pine Decl., ¶¶ 7,8, Ex.A).  Ms. Savaria and Ms. Raia filed their demands for arbitration on September 11, 2012; Catherine Sullivan and Caroline Griffin filed their arbitration demands on December 20, 2012; Nicole Briere filed her arbitration demand on January 11, 2013; Ashley Serio filed her arbitration demand on December 18, 2012; and Nicholle Beaumont filed

her arbitration demand on December 21, 2012. (Rao Decl., ¶ 12, Ex. 7.) Defendants and the five

employees or ex-employees also signed individual Employee Dispute Resolution Policy

Agreements which contains the same Arbitration Agreement. (Pine Decl., ¶ 9, Ex. B). All seven

of Steiner's Arbitration Agreements attached to the arbitration demands provide in full:

### Employment Arbitration Policy

#### Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions. Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

#### Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

### Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation therefrom shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

### Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

### Representation

Any party may be represented by an attorney or by him/herself.

### Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

### Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

### Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

(Pine Decl. ¶ 8, Ex. A.)

## III.    ARGUMENT AND AUTHORITIES

### A.    An Injunction Is Warranted

To obtain the requested relief, Steiner will establish: (a) irreparable harm; and (b) either

(i) the likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979, 984 (2nd Cir. 1997).

**B.**   **Steiner Is Likely To Succeed On The Merits, And/Or There Are Sufficiently Serious Questions Going To The Merits To Make Them A Fair Ground For Litigation And A Balance Of Hardships Tips Decidedly In Steiner's Favor.**

The U.S. Supreme Court has held that the Federal Arbitration Act ("FAA") applies broadly to arbitration agreements between employees and employers, such as the one at issue here between the individual Defendants and Steiner. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109–19 (2001) (FAA applied to arbitration agreement between retailer employer and salesperson employee).[3]

   **1.**   The Availability Of A Class Or Collective Action In Arbitration Is A Gateway Question Of Arbitrability And The Court Must Decide This Issue.

Arbitrability generally refers to whether arbitrators have the authority to rule on a dispute. This depends on whether the parties to an arbitration agreement have agreed to have certain disputes between them resolved through arbitration. There is no dispute that Steiner and Doreen Savaria, Crystal Raia, Catherine Sullivan, Nicole Briere, Ashley Serio, Nicholle Beaumont, and Caroline Griffin agreed to arbitrate individual "actionable" federal and state wage and hour claims. (*See* Pine Decl. ¶¶ 7-9, Ex. B [*e.g.*, "Any actionable employment disputes will be resolved by arbitration ..."]) That is not the issue here. The issue is whether the parties to the

---

[3] The contracts at issue must involve interstate commerce. *See* 9 U.S.C. § 2; *see also Circuit City Stores, Inc., supra*, 532 U.S. 105. Here, interstate commerce permeates the parties' Arbitration Agreement. Steiner is a public company traded on the Nasdaq. (Pine Decl., ¶ 3.) Steiner is a global provider of spa services, medi-spa services, and a manufacturer and distributor of premium skin, body and hair care products. (*Id.*) Steiner's maritime and resort spa divisions operate in over 200 venues on land and at sea. (*Id.*) Steiner's product brands are distributed via retail outlets all over the world. (*Id.*) Steiner's education group operates at schools in 9 states. (*Id.*)

DM2\4478920.1

Arbitration Agreement provided the arbitrator with the authority to rule on whether Defendants

can bring a class or collective action in arbitration on behalf of unnamed employees or former

employees.  Said another way, did the parties to the Arbitration Agreement provide the arbitrator

with the authority to decide whether Ms. Savaria and Ms. Raia may bring wage and hour claims

in arbitration on behalf of unnamed employees who have not themselves filed arbitration claims?

     In *First Options of Chicago v. Kaplan*, 514 US 938 (1995), the Supreme Court stated that

the parties could agree in an arbitration agreement that an arbitrator has the power to decide

whether the parties agreed to arbitrate certain claims.  *First Options*, at 943 ("Just as the

arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that

dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the

parties agreed about that matter.").  But the courts – not arbitrators – must decide whether the

parties made such an agreement.  The Supreme Court imposed a high standard to be met:

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r]

and unmistakabl[e]' evidence that they did so." *First Options* at 944, quoting from *AT&T*

*Technologies v. Communications Workers*, 475 U.S. 643, 649 (1986).  In other words, because it

is presumed that the matter of arbitrability is to be determined by a court, the Supreme Court

imposed this high standard to be met before the parties are forced to arbitrate a matter of

arbitrability that they assumed would be determined by a court.  *See AT&T Technologies*, at 649

("Unless the parties clearly and unmistakably provide otherwise, the question of whether the

parties agreed to arbitrate is to be decided by the court, not the arbitrator" (*citing Steelworkers v.*

*Warrior & Gulf Nav. Co.*, 363 U. S. 574, 582-583 (1960)).

     The Supreme Court elaborated that this standard should be applied in accordance with

"ordinary state-law principles that govern the formation of contracts." *Id.*  In *First Options*, state

law required that the court determine whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration. *Id.* Similarly, in *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002), the Supreme Court stated that when an issue is a "question of arbitrability" for a court to decide should be applicable "...where contracting parties would likely have expected a court to have decided the gateway matter..." *Howsam*, at 83.

The Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) provides further guidance:

> We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called "question of arbitrability." Those questions — which "include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy" — are presumptively for courts to decide. *Green Tree Financial Corp. v. Bazzle*, 539 U. S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (plurality opinion).

In Justice Alito's concurring opinion in *Oxford Health*, he states that absent members of the class have not conceded that the contract authorizes the arbitrator to decide whether to conduct class arbitration. Thus, the putative class may not be bound by the arbitrator's ultimate resolution of the dispute. Justice Alito does not believe the distribution of Rule 23 opt-out notices cures "this fundamental flaw in the class arbitration proceeding in this case." *Oxford Health,* 133 S. Ct. at 2071 (Alito, J., concurring). Justice Alito stated: "... it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used. *In the absence of concessions like Oxford's, this possibility should give courts pause before concluding that the availability of class arbitration is a question the arbitrator should decide.*" *Id.* at 2072 (emphasis added).

2.    There Is No Clear And Unmistakable Evidence That Arbitrability Of Class Or
      Collective Actions Is To Be Decided By An Arbitrator

Steiner's Arbitration Agreement does not provide, and did not contemplate that the

arbitrator decides arbitrability of class or collective action claims sought to be maintained in

arbitration. (Pine Decl., Ex. 10) Nor does the Arbitration Agreement adopt the AAA

Supplementary Rules For Class Arbitration ("AAA Supplementary Class Rules"). (*Id.*) The

Arbitration Agreement does state, however, that "[t]he arbitrator shall be governed by all

applicable federal and state laws as well as the Employment Rules of AAA." (Pine Decl., Ex.

A).

a.    Incorporating The AAA Employment Rules Does Not Result In The
      Incorporation Of The AAA Supplementary Class Rules

Page 10 of the AAA Employment Arbitration Rules and Mediation Procedures, Amended

and Effective November 1, 2009 ("AAA Arbitration Rules"), states "[t]he parties shall be

deemed to have made these rules a part of their arbitration agreement whenever they have

provided for arbitration ... under its Employment Arbitration Rules and Mediation Procedures

..." (Rao Decl., ¶ 13, Ex. 8). The only mention of the AAA Supplementary Class Rules in the

incorporated AAA Arbitration Rules is as follows: "The AAA's Administered Fee Schedule, as

listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to

disputes proceeding under the Supplementary Rules." Had the AAA wanted its AAA

Supplementary Class Rules incorporated into every arbitration agreement which incorporates the

AAA Arbitration Rules, it would have explicitly said so in the AAA Arbitration Rules.[4]  This

---

[4] The fact that the AAA Supplementary Class Rules state that the rules apply to any dispute
arising out of an agreement that provides for arbitration pursuant to any of the AAA rules where
a party submits a dispute to arbitration on behalf of or against a class or purported class is of no
consequence as there is no agreement between the parties, or between unnamed parties and
Steiner, that class or collective action claims were contemplated and permitted to be brought in
arbitration in the first place.  Further on a more basic level, there is no tie from the AAA

-10-

would be the type of "clear and unmistakable" evidence required to establish that, by

incorporating the AAA Arbitration Rules, the parties explicitly made an agreement that an

arbitrator decides arbitrability of class and collective action claims in arbitration. Such is not the

case here.

        b.      The AAA Arbitration Rules Say Nothing About An Arbitrator's Power To
              Determine Arbitrability Of Purported Class Or Collective Action Claims
              In Arbitration, And Any Ambiguity Should Be Resolved By A Court

There is no debate that the AAA Arbitration Rules were incorporated into the Arbitration

Agreement. As such, the arbitrator has the power to decide jurisdiction of the substantive claims

of the named parties. The AAA Arbitration Rules, however, do not clearly and unmistakably

provide the arbitrator with the power to determine the gateway arbitrability of class or collective

actions directly affecting non-parties (the putative class). In fact, the AAA Arbitration Rules do

not mention arbitrability of class or collective action claims at all.

In *Stolt-Nielsen, S.A., et al. v. AnimalFeeds International Corp.,* 130 S. Ct. 1758 (2010),

wherein the parties submitted the arbitrability of class actions issue to a panel of arbitrators while

also stipulating that the arbitration clause was "silent" with respect to class arbitration, the

Supreme Court stated that "[b]ecause the parties agreed their agreement was 'silent' in the sense

that they had not reached any agreement on the issue of class arbitration, the arbitrators' proper

task was to identify the rule of law that governs in that situation," (e.g., the FAA, federal

maritime law, or New York law). (*Stolt-Nielsen,* at 1765-1768.) As relevant here, *Stolt-Nielsen*

acknowledged that although "interpretation of an arbitration agreement is generally a matter of

state law, the FAA imposes certain rules of fundamental importance, including the basic precept

---

Arbitration Rules <u>to</u> the AAA Supplementary Class Rules in the first instance. Rather the tie (if
any) is <u>from</u> the AAA Supplementary Class Rules – which have never been explicitly
incorporated into the Arbitration Agreement – <u>to</u> the AAA Arbitration Rules. Finally, the AAA
Supplementary Class Rules say nothing about FLSA opt-in collective actions.

DM2\4478920.1

that arbitration 'is a matter of consent, not coercion.'" (*Id.* at 1773 (*quoting Volt Information*

*Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Here, there is no clear and unmistakable consent to allow the arbitrator to rule on this gateway

arbitrability issue. Far from consent, Steiner never intended to provide the arbitrator the power

to determine arbitrability of class or collective action claims in arbitration. (Pine Decl., ¶ 10).

Because there is no such granting of power anywhere in the express Arbitration Agreement or in

the incorporated AAA Arbitration Rules, any decision by an arbitrator on the gateway

class/collective action arbitrability issue would go beyond her express and implied powers.

      Here, Steiner's Arbitration Agreement contains both broad and limiting language. The

Arbitration Agreement states, *inter alia*, that any "actionable" employment disputes will be

resolved by arbitration; and arbitration is required for "all actionable disputes relating to and

arising out of employment or the termination of employment ...." (*See* Pine Decl., ¶ 8, Ex. A.)

The Arbitration Agreement also uses "any and all dispute" language in the last paragraph of the

"Purpose" section. (*Id.*) In the same "Purpose" section, it also states "the employee waives their

right to have such disputes resolved through a trial by jury." (*Id.*) There is no explicit waiver of

a *judge* ruling on any issue, including gateway arbitrability of class or collective actions. *See*

*Morris v. Regis Corp.*, 2008 U.S. Dist. LEXIS 56612, 9-10 (D. Me. July 25, 2008) (a court

determines arbitration enforceability when there is ambiguity as to arbitrability); *Katz v.*

*Feinberg*, 290 F.3d 95 (2d Cir. 2002) (finding the parties did not agree to arbitrate questions of

arbitrability because of certain limiting language in the agreement). Under the most liberal

reading, the incorporated AAA Arbitration Rules and the Arbitration Agreement are vague

necessitating a Court ruling on arbitrability as there is no clear and unmistakable language giving

gateway arbitrability power over unnamed claimants to the arbitrator.

DM2\4478920.1

    c.    <u>The Ability To Bring A Class Or Collective Action Is Not A Substantive</u>
<u>Right.</u>

On August 9, 2013, the Second Circuit in *Sutherland v. Ernst & Young, LLC,* No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013) upheld the enforceability of wage and hour class or collective action waivers in arbitration and held that the FLSA does not confer an unwaivable substantive right to pursue a collective action (the Court also rejected the argument that a collective action is the only means by which plaintiffs can effectively vindicate their rights given the low potential recovery in individual cases).[5]  The Second Circuit joined the "consensus among [its] sister Circuits" that the FLSA does not preclude the waiver of collective action claims because Congress did not intend collective actions to be a substantive right under the FLSA.[6]  *Sutherland,* 2013 U.S. App. LEXIS 16513 at *15-19.  Three days later, the Second Circuit reaffirmed its *Sutherland* holding in *Raniere et al., v. Citigroup Inc., et al.,* No. 11-5213, 2013 U.S. App. LEXIS 16765 (2d Cir. Aug. 12, 2013) (holding in an exemption case that *Sutherland v. Ernst & Young* "directly foreclosed" any argument that "the right to collective action is an integral and fundamentally substantive element of the FLSA …").[7]

---

[5] In light of the Supreme Court's June 20, 2013 decision in *American Express Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304 (2013) (holding plaintiffs cannot invalidate a waiver of class arbitration under the effective vindication doctrine by showing they had no economic incentive to pursue claims individually in arbitration).

[6] Rather a FLSA collective action is a "procedural mechanism[ ]."  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 244 (2d Cir. 2011); *see also Morris v. Ernst & Young LLP,* Case No. C-12-04964 RMW, 2013 WL 3460052 (N.D. Cal. July 9, 2013) (holding that "…Congress did not intend collective actions to be a substantive right under the FLSA, and that such a right may be waived as a part of a valid arbitration agreement.")

[7] *See also, Caley v. Gulfstream Aerospace Corp.,* 428 F. 3d 1359, 1378 (11th Cir. 2005) (enforcing collective action waiver and compelling arbitration of the plaintiffs' individual FLSA overtime claims); *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1054 (8th Cir. 2013) (rejecting NLRB D.R. Horton premise that employee has substantive right to proceed collectively and holding arbitration agreement containing class action waiver enforceable); *Horenstein v. Mortg. Mkt., Inc.,* 9 F. App'x 618, 619 (9th Cir. 2011) ("Although Plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute"); *Carter v. Countrywide Credit Indus. Inc.,* 362 F.3d 294, 298 (5th Cir.

-13-

As for Rule 23 class actions, the Supreme Court in *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2310 (2013) (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011)) stated: "[o]ne might respond, perhaps, that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we have already rejected that proposition..." (*Id.,* at 2310.) Because there is no substantive right to bring a class or collective action in arbitration, there is no "actionable" dispute upon which the arbitrator is to decide arbitrability. Said another way, because the ability to bring a claim as a class or collective action is not a substantive right, the arbitrator has no jurisdiction, even under the AAA Arbitration Rules, to determine the arbitrability of class or collective action claims in arbitration which directly affect unnamed putative class members who have not clearly and unmistakably agreed to class or collective action arbitration. Such is a gateway arbitrability issue which the Court must decide.

> d.   Second Circuit Cases Concerning Incorporation Of AAA Rules Are Inapposite Or Must Be Reevaluated After The Second Circuit's Rulings In *Sutherland* and *Raniere.*

Steiner is aware of the Second Circuit's holdings in *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205 (2nd Cir. 2005), *Emilio v. Sprint Spectrum L.P.,* 508 F. Appx. 3 (2nd Cir. 2013) (unpublished), *T.Co Metals LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329 (2nd Cir., 2010), and *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113 (2nd Cir., 2011), none of which carry the day here.

---

2004) (rejecting plaintiff's claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 503 (4th Cir. 2002) (finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute").

*Contec Corp. v. Remote Solution* did not involve employment law, wage and hour issues, or class or collective actions. Rather, it involved the AAA commercial rules. Steiner agrees with *Contec* in that because the Arbitration Agreement incorporated the AAA Arbitration Rules, the arbitrator has the power to decide arbitrability of the substantive individual claims of the named parties (Doreen Savaria, Crystal Raia, Catherine Sullivan, Nicole Briere, Ashley Serio, Nicholle Beaumont, and Caroline Griffin). Because the ability to bring a class or collective action is *not* a substantive right in the Second Circuit (*See Sutherland, supra;* and *Raniere, supra.*), there is nothing for the arbitrator to decide here. The arbitrator does not have the power to determine whether a class or collective action directly affecting non-parties to the above-mentioned seven Arbitration Agreements can be maintained in arbitration.

*Emilio v. Sprint Spectrum L.P.* involved confirming or vacating an arbitration award, a commercial arbitration, and JAMS rules rather than AAA Arbitration Rules.[8] The JAMS rules explicitly stated: "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Emilio,* at *5-6. No such language exists in the AAA Arbitration Rules. In fact, because the JAMS rules differentiate between jurisdiction and arbitrability, it stands to reason that arbitrability of claims is not the same as jurisdiction (the incorporated AAA Arbitration Rules discusses jurisdiction only: "Jurisdiction ... [t]he arbitrator shall have the power to rule on his or her own jurisdiction ...")[9]

___

[8] Similarly, *T.Co. Metals* did not involve an employment class or collective action; rather it was a commercial case where the parties directly petitioned the arbitrator to amend the original award which contributed to the court's decision on clear and unmistakable intention.

[9] Steiner agrees that the arbitrator has the power to rule on jurisdiction relating to the seven Arbitration Agreements at issue, but she does not have the power to determine gateway arbitrabilty of class or collective action claims of unknown employees who have not submitted any claim for arbitration.

DM2\4478920.1

The issue presented in *Jock v. Sterling Jewelers* was whether a court has the authority to vacate an arbitration award where it believes the arbitrator improperly interpreted the terms of an arbitration agreement to allow a class/collective arbitration to proceed. Here, because Steiner is raising the gateway question of arbitrability in the first instance, which was not the issue before the court in *Jock, Jock* is inapposite.[10] The parties in *Jock* expressly submitted the class or collective action arbitrability question to the arbitrator for a decision. Such is not the case here. Steiner maintains the Arbitration Agreement is silent as to class or collective action arbitration, the arbitrator does not have the power to determine the gateway arbitrability question of class or collective actions in arbitration, and the parties have not submitted the arbitrability question to the arbitrator to decide. Indeed, *Jock* stated that "an arbitrator may exceed her authority by...considering issues beyond those the parties have submitted for her consideration." 646 F.3d at 122. Here, the arbitrator will exceed her authority if she considers the arbitrability of class/collective action claims because the parties did not expressly or implicitly, clearly and unmistakably, agree to submit such questions to the arbitrator.

      e.    The Arbitration Agreement Explicitly Requires Listing The Names Of All Parties

As discussed in *Stolt-Nielsen*, Steiner's Arbitration Agreement specifies with whom the parties chose to arbitrate their disputes. The Arbitration Agreement explicitly states: "The demand shall set forth the claim, including the alleged act or omission at issue, *and the name(s) of all persons involved in the act or omission.*" Unlike the AAA Arbitration Rules and their implicit application here, the requirement to name all parties is <u>explicit</u> in the Arbitration

---

[10] Indeed, the Second Circuit stated: "[w]here the district court strayed was in substituting its interpretation of the agreement for that already undertaken by the arbitrator when she performed the legal analysis she was asked by the parties to undertake." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123-24 (2d. Cir. 2011). This is no different than the Supreme Court's recent ruling in *Oxford Health.*

Agreement. The seven named employees who have filed arbitrations have subjected themselves to the jurisdiction of the arbitrator, and the arbitrator can determine the arbitrability of their substantive claims. However, because the Arbitration Agreement explicitly specifies with whom the parties chose to arbitrate, an arbitrator does not have the power to determine a gateway arbitrability issue (class or collective actions) concerning unnamed claimants who have not submitted arbitration demands thus subjecting themselves to her jurisdiction. The Court must decide this issue. As Justice Alito stated in his *Oxford Health* concurrence, absent members of the class have not conceded that the contract authorizes the arbitrator to decide whether to conduct class arbitration, and the distribution of Rule 23 notices does not cure "this fundamental flaw in the class arbitration proceeding in this case." 133 S. Ct. at 2071 (Alito, J., concurring).

For the above reasons, Steiner has established irreparable harm and the likelihood of success on the merits, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor.

**C.    Steiner Will Suffer Irreparable Harm If The Requested Relief Is Denied.**

Failure to enjoin Defendants from proceeding before the AAA and to stay the arbitration until the Court has determined the gateway arbitrability issue will cause Steiner irreparable harm. It is axiomatic that a party cannot be required to submit a dispute to arbitration when it has not agreed to do so. *AT&T Technologies, Inc, v. Communications Workers,* 475 U.S, 643, 649 (1986). For this reason, when confronted with a request by a party to stay an arbitration, courts presume that the party will "suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration." *Mount Ararat Cemetery v. Cemetery Workers & Greens Attendant Union, Local 365,* 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997) ("irreparable harm element of the preliminary injunction inquiry" is presumed on a motion to stay an arbitration).

-17-

Indeed, in affirming a district court's grant of a preliminary injunction enjoining an arbitration proceeding, the Second Circuit stated that an employer "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979, 984-85 (2d Cir. 1997), *Merrill Lynch Investment Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003).[11] In the case at bar, there is no clear and unmistakable agreement to have the arbitrator determine gateway arbitrability of a class or collective action in arbitration on behalf of unnamed parties. Further, participation in a clause construction hearing relating to the applicability of class or collective actions will subject Steiner to non-existent appeal rights. As stated in *Oxford Health*, courts may vacate an arbitrator's decision only in very limited circumstances. 133 S. Ct. at 2068 ("It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.") (citation omitted). Accordingly, Steiner will suffer irreparable harm if forced to arbitrate this claim.

Steiner has advised the arbitrator and Defendants that Steiner would file this declaratory judgment action and would seek a stay of the pending arbitration. The arbitrator, however, may choose to require Steiner to file an opposition to a pending clause construction brief filed by Defendants seeking the right to bring a class or collective action in arbitration before this action has been resolved. Unless the Court enjoins Defendants from prosecuting their claims in arbitration pending the outcome of the declaratory judgment action, Steiner will be unfairly

---

[11] *See also, Zubak v. Meyer*, No. 97 Civ. 5337, 1998 WL 314801, at *2 (S.D.N.Y. June 15, 1998) ("The Court further finds that plaintiff would suffer irreparable harm in the absence of a preliminary injunction since, should arbitration of the claims unrelated to Towermark proceed, plaintiff would be forced to arbitrate claims outside the substantive scope of the arbitration agreement."); *Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 879 F. Supp. 403,404 (S.D.N.Y. 1995) ("A party so situated will suffer *per se* irreparable harm if a court compels the party to submit to arbitration when it has not agreed to do so"), *rev'd on other grounds*, 85 F.3d 21 (2d Cir. 1996).

subjected to the undue expense and burden of litigating in two separate forums, as well as being subjected to virtually no appeal rights if the arbitrator decides she has the power to determine the gateway arbitrability issue and decides in favor of class or collective action arbitration. Unquestionably, Steiner will suffer irreparable harm unless the Court enjoins the arbitration in its entirety until a determination can be made as to the gateway arbitrability issue.

## II.    CONCLUSION

For all the foregoing reasons, Steiner Leisure Limited respectfully submits that it has established both a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in Steiner's favor, and irreparable injury, and requests that the Court issue declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration; and issue an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue.

Respectfully submitted, this 24th day of September, 2013.

By:   */s/ Anthony J. Rao*
Anthony J. Rao
*Pro Hac Vice Application Pending*
(N.Y. Bar No. 4443370)
Michael Tiliakos
*Pro Hac Vice Application Pending*
(N.Y. Bar No. MT1678)
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
Attorneys for Plaintiff
Steiner Leisure Limited

By:   */s/ Joshua A. Hawks-Ladds*
Joshua A. Hawks-Ladds (ct09446)
Benjamin B. Manchak (ct28929)
PULLMAN & COMLEY, LLC
90 State House Square
Hartford, CT  06103-3702
Telephone: (860) 424-4300
Facsimile: (860) 424-4370
Email: jhawks-ladds@pullcom.com
        bmanchak@pullcom.com
Attorneys for Plaintiff
Steiner Leisure Limited

EXHIBIT 12

AMERICAN ARBITRATION ASSOCIATION
Employment and Class Action Arbitration Tribunal

Doreen Savaria and Crystal Raia, individually
and on behalf of similarly situated employees
of Elemis Spa,

Claimants

v.

Steiner Leisure Limited,

Respondent

Case No. 12-460-454-12

ORDER DENYING STAY

On October 1, 2013, Respondent requested a stay of this arbitration pending resolution of an action it had commenced on September 20, 2013 in the United States District Court for the District of Connecticut ("the court") for injunctive and declaratory relief. Claimants oppose the issuance of a stay.

Procedural Background

In analyzing the appropriateness of the requested stay, the chronology of the arbitration thus far is important, and will therefore be discussed in some detail.

The proceeding began with Claimants' Demand for Arbitration dated September 11, 2012. In accordance with Respondent's "Employment Arbitration Policy" ("the Agreement"), it is being administered by the American Arbitration Association ("AAA") under its Employment Arbitration Rules ("the Employment Arbitration Rules"), as

1

supplemented by its Supplementary Rules for Class Arbitrations ("the Supplementary Rules").[1]

In response to the Demand for Arbitration, on December 7, 2012, Respondent filed its "Answering Statement and Request for an Immediate Clause Construction Hearing from Respondent Steiner Leisure Limited" (emphasis added). In that extensive pleading, Respondent alleged 26 "Affirmative and Other Defenses," and further stated its position (p. 2) that, in accordance with Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010) ("Stolt-Nielsen"), "Claimants must arbitrate their claims individually because they signed an arbitration agreement that reflects an intent to provide individualized arbitration and does not explicitly provide for class arbitration." Respondent also expressly "[r]equest[ed] this threshold issue be addressed at a Clause Construction hearing pursuant to Rule 3" of the Supplementary Rules (p. 2), and prayed for "an immediate Clause Construction hearing" (p. 8).

Pre-hearing conference calls were thereafter held on January 12 and 31, 2013, to discuss, inter alia, scheduling for the clause construction phase of the arbitration. As reflected in Case Management Orders Nos. 1-2, in light of the Supreme Court's granting of certiorari in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 786 (12/7/12), all counsel agreed that it would make sense to stay the clause construction phase until that case was decided.

After the Supreme Court rendered its decision, 133 S. Ct. 2064 (6/10/13) ("Sutter"), I sent an email message to arrange for another conference call to "set a schedule for the clause construction briefing." Respondent said nothing about there

---

[1] See discussion and legal authorities cited in Southern Communications Services, Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011), aff'd on other grounds, ___ F.3d ___, 2013 WL 3481467 (11th Cir. 7/12/13).

being no arbitral authority to decide clause construction, and all counsel agreed to hold the conference on July 25, 2013. That call did not take place, but Claimants' counsel subsequently provided to AAA (and I confirmed in an August 1, 2013 email message) a clause construction schedule that had been discussed and agreed to by both sides: Claimants' brief was due by August 23, Respondent's opposition by September 13, and reply by September 27, 2013.[2]

Later on August 1, 2013, Respondent's counsel, for the first time, notified me of its new position that the Agreement does not authorize any arbitrator to decide the clause construction issue and that, as soon as Claimants filed their clause construction brief, Respondent would go to the court seeking a ruling that only a court, not an arbitrator, has jurisdiction to issue a clause construction determination in this case. Respondent has not attempted to reconcile this position with its entirely contradictory prior conduct and pleading.

Claimants filed their clause construction brief on August 15, 2013 and then agreed to Respondent's September 11, 2013 request to extend the time for Respondent's opposition from September 13 until September 20, 2013. In that opposition, Respondent did not address the clause construction arguments made by Claimants; it instead merely stated that it "does not agree that any arbitrator has the power to decide whether [the Agreement] authorizes class or collective arbitration," and that it had that day

---

[2] At Respondent's request, I added to the schedule an opportunity for Respondent, within three business days of receipt of the reply, to apply for permission to submit a sur-reply.

commenced the court action for declaratory and injunctive relief because the Supreme Court's opinions in Sutter and Stolt-Nielsen "compel[led]" it to do so.[3]

On October 1, 2013, Claimants submitted their reply brief, urging that the arbitrator should proceed to issue a clause construction determination in their favor, in light of the fact that Respondent had not sought a stay from the arbitrator and that no court had enjoined Claimants' normal pursuit of the case in arbitration under the applicable AAA Rules. Respondent did not request permission for any sur-reply.

Later on October 1, 2013, Respondent's counsel wrote that, "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ." Despite the unusual timing, I accepted that October 1, 2013 message as a request for a stay, and sought Claimants' position.

In their October 9, 2013 opposition, Claimants argue that, as set forth in their clause construction brief (pp. 3-5), there is ample authority for me to conclude that the parties have already empowered me to decide the clause construction issue. Citing Sutter, 133 S. Ct. at 2068 n.2, they further point to the fact that, under Supplementary Rule 3,[4] whatever clause construction award I may issue is subject to immediate judicial review, in which Respondent could, if it were displeased with the ruling, obtain judicial consideration of both its new arbitrability issue and the substance of the clause construction determination. They contend that Respondent would thus "lose nothing" if

---

[3] Respondent also simultaneously submitted a First Amended Answer in this arbitration. The only changes in the amended pleading were the deletion of the prior request for an immediate clause construction ruling and the addition of language relating to Respondent's new position about the arbitrator's not having authority to decide clause construction. Claimants have not raised any objection to the filing of the First Amended Answer.

[4] Supplementary Rule 3 states that, as soon as the clause construction award is issued, the "arbitrator shall stay all proceedings . . . for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate" the award.

the arbitration moves forward to a clause construction award, whereas Claimants, who began pursuit of their individual and class claims over a year ago, could face further disruption and lengthy delay if the arbitration is stayed pending resolution of the court action with possible appellate proceedings.

Respondent's October 9, 2013 reply was that it declines to "present the arguments it made to the Court to, or seek the requested relief from, [the arbitrator]." Respondent thus intentionally and unilaterally chose to forego the scheduled (and extended) opportunity to persuade the arbitrator regarding its positions on arbitrability and clause construction, preferring instead to seek and wait for a court ruling.

### Analysis and Order

As reflected in the above chronology, Respondent did not raise this question of who decides the clause construction issue until more than seven months after it expressly and unequivocally asked the arbitrator for an "immediate" clause construction ruling. When Respondent suddenly noted its new, and entirely contradictory, position on August 1, 2013, it made no request for a stay of the arbitration.  Nor did it do so in multiple communications and a brief filed thereafter.  Only when Claimants' October 1, 2013 reply brief noted that Respondent had not sought a stay from the arbitrator, did Respondent then say: "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ."  Respondent has not provided any information as to what the federal court schedule will be or when there may be any decision on a preliminary or final injunction.

Lacking any reasonable explanation for its sudden change in position or the need for the court action, Respondent's request for a stay is less than compelling. It ignores the plain and simple fact that Respondent's "Employment Arbitration Policy" expressly incorporates AAA's "arbitration rules," and that Employment Arbitration Rule 6 states that the "arbitrator shall have the power to rule on . . . her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[5] Respondent has presented me with nothing that diminishes or eliminates that plenary grant of authority to decide whether I have jurisdiction to render a clause construction ruling, nor with any reason to believe that a court would rescind or alter that authority.

I therefore agree with Claimants as to the reasons why a stay should not be granted. Claimants should be allowed to proceed with their case in the orderly manner prescribed by the Supplementary Rules, which at this point means that they are entitled to have an arbitral decision under Rule 3 on clause construction (as previously agreed to and anticipated by all parties).

The parties expressly incorporated AAA's "arbitration rules" into their Agreement, and Supplementary Rule 1 says that the Supplementary Rules "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any rules of [AAA] where a party submits a dispute to arbitration on behalf of . . . a class or purported class, and shall supplement any other applicable AAA rules." And Supplementary Rule 3 says that, "[u]pon appointment, the arbitrator shall determine as a

---

[5] Although an issue of arbitrability is generally one for a court to decide, "when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co. Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (based on language identical to Employment Rule 6); accord, T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344-45 (2d Cir. 2010); Emilio v. Sprint Spectrum L.P., 508 Fed. Appx. 3, 4-5 (2d Cir. 2013).

threshold matter, in a reasoned partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class."

That is the process that was put into the parties' Agreement and, despite Respondent's change of mind, that is the mandate that was already given to me. Issuing a clause construction award is what I am supposed to be doing at this stage of the proceeding, and Respondent has shown no valid reason why that step should be postponed.[6]

Furthermore, as Claimants note, if Respondent believes it is entitled to have a court rule as to who should decide the clause construction issue, it will have an opportunity to do so: Supplementary Rule 3 expressly allows any aggrieved party to challenge an arbitral clause construction award in court, with full judicial review de novo if the arbitrator has exceeded her authority.[7] Sutter, 133 S. Ct. at 2068 n.2.

Accordingly, I find that Respondent has failed to present adequate justification for issuance of a stay, and its request is denied.

DATED: October 29, 2013

*Edith N. Dinneen*

EDITH N. DINNEEN

---

[6] Of course, arbitration is a creature of contract, and an arbitrator is empowered to do only what the parties agreed she should do. In other contexts, therefore, I have sometimes declined to take action on grounds of lack of jurisdiction, and I would not hesitate to do so here if I had reason to believe that issuing a clause construction award would exceed my authority.

[7] Obviously, if the arbitrator's clause construction award were to be in Respondent's favor, Respondent would presumably have no reason to seek vacatur, its arbitrability issue would then be moot, and there would not be (or have been) any need for the court to undertake the task of deciding anything.

7

# EXHIBIT 13

AMERICAN ARBITRATION ASSOCIATION

Employment and Class Action Arbitration Tribunal

Doreen Savaria and Crystal Raia, individually
and on behalf of similarly situated employees
of Elemis Spa,

Claimants

v.

Steiner Leisure Limited,

Respondent

Case No. 12-460-454-12

PARTIAL FINAL CLAUSE CONSTRUCTION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the

parties' arbitration agreement, and having been duly sworn, and having heard the

allegations and arguments of the parties, do hereby issue this Partial Final Clause

Construction Award:

Background

According to the September 11, 2012 Demand for Arbitration filed with the

American Arbitration Association ("AAA"), named Claimants Doreen Savaria and

Crystal Raia ("Claimants"), individually and on behalf of others, are suing Respondent

Steiner Leisure Limited ("Respondent") with causes of action based on various statutes

and the common law of Connecticut, as well as one cause of action for alleged violation

of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201 et seq.  All of their

1

claims relate to aspects of their compensation as employees of Respondent at its Elemis Spa in Uncasville, Connecticut.

That employment was subject to Respondent's "Employment Arbitration Policy ("the Agreement"), which states that "[a]ny actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association," and that arbitration "shall be administered by [AAA] under its arbitration rules."

In accordance with the Agreement, the case is proceeding under AAA's Employment Arbitration Rules (the "Employment Rules"), as supplemented by AAA's Supplementary Rules for Class Arbitrations (the "Supplementary Rules").[1]   Under Supplementary Rule 3, the first step in the resolution of this dispute is for the "arbitrator [to] determine . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class," which is an issue known as "clause construction."[2]

<u>Procedural History</u>

In analyzing the clause construction issue here, the chronology of the case thus far is important and will be discussed in some detail.[3]

In response to the Demand for Arbitration, on December 7, 2012 Respondent filed its "Answering Statement <u>and Request for an Immediate Clause Construction Hearing from Respondent Steiner Leisure Limited</u>" (emphasis added).  In that extensive pleading,

---

[1] See discussion and legal authorities cited in <u>Southern Communications Services, Inc. v. Thomas</u>, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011), <u>aff'd on other grounds</u>, ___ F.3d ___, 2013 WL 3481467 (11th Cir. 7/12/13).

[2] The next question, under Supplementary Rule 4, of whether a class arbitration will actually be certified, and on what terms, is not part of this analysis.  Any arguments as to which members of the alleged class would participate in and be bound by the outcome of class arbitration would be considered at that later juncture.

[3] This chronology is copied from the October 29, 2013 Order Denying Stay; in light of the availability of immediate judicial review of this award under Supplementary Rule 3, the procedural history is repeated here in its entirety rather than being merely cross-referenced.

Respondent alleged 26 "Affirmative and Other Defenses," and further stated its position (p. 2) that, in accordance with Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010) ("Stolt-Nielsen"), "Claimants must arbitrate their claims individually because they signed an arbitration agreement that reflects an intent to provide individualized arbitration and does not explicitly provide for class arbitration." Respondent also expressly "[r]equest[ed] this threshold issue be addressed at a Clause Construction hearing pursuant to Rule 3" of the Supplementary Rules (p. 2), and prayed for "an immediate Clause Construction hearing" (p. 8).

Pre-hearing conference calls were thereafter held on January 12 and 31, 2013, to discuss, inter alia, scheduling for the clause construction phase of the arbitration. As reflected in Case Management Orders Nos. 1-2, in light of the Supreme Court's grant of certiorari in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 786 (12/7/12), all counsel agreed that it would make sense to stay the clause construction phase until that case was decided.

After the Supreme Court rendered its decision, 133 S. Ct. 2064 (6/10/13) ("Sutter"), I sent an email message to arrange for another conference call to "set a schedule for the clause construction briefing." Respondent said nothing about there being no arbitral authority to decide clause construction, and all counsel agreed to hold the conference on July 25, 2013. That call did not take place, but Claimants' counsel subsequently provided to AAA (and I confirmed in an August 1, 2013 email message) a clause construction schedule that had been discussed and agreed to by both sides:

Claimants' brief was due by August 23, Respondent's opposition by September 13, and reply by September 27, 2013.[4]

Later on August 1, 2013, Respondent's counsel, for the first time, notified me of its new position that the Agreement does not authorize any arbitrator to decide the clause construction issue and that, as soon as Claimants filed their clause construction brief, Respondent would go to court seeking a ruling that only a court, not an arbitrator, has jurisdiction to issue a clause construction determination in this case. Respondent has not attempted to reconcile this position with its entirely contradictory prior conduct and pleading.

Claimants filed their clause construction brief on August 15, 2013 and then agreed to Respondent's September 11, 2013 request to extend the time for Respondent's opposition from September 13 until September 20, 2013. In that opposition, Respondent did not address the clause construction arguments made by Claimants; it instead merely stated that it "does not agree that any arbitrator has the power to decide whether [the Agreement] authorizes class or collective arbitration," and that it had that day commenced the court action for declaratory and injunctive relief because the Supreme Court's opinions in Sutter and Stolt-Nielsen "compel[led]" it to do so.[5]

On October 1, 2013, Claimants submitted their reply brief, urging that the arbitrator should proceed to issue a clause construction determination in their favor, in light of the fact that Respondent had not sought a stay from the arbitrator and that no

---

[4] At Respondent's request, I added to the schedule an opportunity for Respondent, within three business days of receipt of the reply, to apply for permission to submit a sur-reply.

[5] Respondent also simultaneously submitted a First Amended Answer in this arbitration. The only changes in the amended pleading were the deletion of the prior request for an immediate clause construction ruling and the addition of language relating to Respondent's new position about the arbitrator's not having authority to decide clause construction. Claimants have not raised any objection to the filing of the First Amended Answer.

court had enjoined Claimants' normal pursuit of the case in arbitration under the applicable AAA Rules. Respondent did not request permission for any sur-reply.

Later on October 1, 2013, Respondent's counsel wrote that, "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ." Despite the unusual timing, I accepted that last message as a request for a stay, and sought Claimants' position.

In their October 9, 2013 opposition, Claimants argue that, as set forth in their clause construction brief (pp. 3-5), there is ample authority for me to conclude that the parties have already empowered me to decide the clause construction issue. Citing Sutter, 133 S. Ct. at 2068 n.2, they further point to the fact that, under Supplementary Rule 3,[6] whatever clause construction award I may issue is subject to immediate judicial review, in which Respondent could, if it were displeased with the ruling, obtain judicial consideration of both its new arbitrability issue and the substance of the clause construction determination. They contend that Respondent would thus "lose nothing" if the arbitration moves forward to a clause construction award, whereas Claimants, who began pursuit of their individual and class claims over a year ago, could face a further lengthy delay if the arbitration is stayed pending resolution of the court action with possible appellate proceedings.

Respondent's October 9, 2013 reply was that it declines to "present the arguments it made to the Court to, or seek the requested relief from, [the arbitrator]." Respondent thus intentionally and unilaterally chose to forego the scheduled (and extended)

---

[6] Supplementary Rule 3 states that, as soon as the clause construction award is issued, the "arbitrator shall stay all proceedings . . . for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate" the award.

5

opportunity to persuade the arbitrator regarding its positions on arbitrability and clause construction, preferring instead to seek and wait for a court ruling.

By Order dated October 29, 2013, I denied the request for a stay, and the case is now ready for a clause construction determination.

<u>Issues to Be Determined</u>

1.  Have the parties given the arbitrator authority to decide the Supplementary Rule 3 clause construction issue?

2.  If they have given that authority, does the Agreement allow for the possibility that this arbitration could proceed on a class and/or collective basis.[7]

<u>1.  The Arbitrator Has Authority to Decide Clause Construction in This Case</u>

AAA's Employment Rule 6 states that the "arbitrator shall have the power to rule on . . . her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement . . . [, and] that any objection to the jurisdiction of the arbitrator or to the arbitrability of a claim" must be made "no later than the filing of the answering statement that gives rise to the objection." Ignoring Employment Rule 6, Respondent now contends that the parties have not already granted authority to the arbitrator to render a clause construction award, and that only a court may do so. At this stage of the proceedings, that argument is neither cognizable nor correct.

_____

[7] As set forth above, the record before me does not include substantive input from Respondent on either of these questions, and that has caused me to pause and consider the propriety of proceeding to decide them at this time. For the following reasons, my conclusion is that I should do so. The absence of input from Respondent is not due simply to an inadvertently-missed deadline: to the contrary, Respondent knowingly allowed the agreed-upon briefing schedule to pass by. It has stated that it will address the arbitrability and clause construction issues before me only if and when the court decides that I am authorized to hear them, and the possible consequences (and attendant risks) of that deliberately-chosen strategy must have been apparent. In these circumstances, it would not be fair to Claimants – nor appropriately custodial of the arbitration process – for me to allow one party to unilaterally halt the arbitration by deciding not to adhere to its prior commitment and insistence that the arbitrator rule on clause construction. I acknowledge that Respondent's counsel's October 1, 2013 message said it "does not seek [my] consideration or ruling on the gateway class/collective action arbitrability issue," but I also see that position as undeniably trumped and refuted by the fact that Respondent has already agreed that I should do so.

6

Here, as in Southern Communications Services, Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337 (N.D. Ga. 2011), aff'd on other grounds, ___ F.3d ___, 2013 WL 3481467 (11th Cir. 7/12/13), "the parties . . . specifically granted the arbitrator the power to interpret their agreement and decide whether it authorized class arbitrations, both in writing and by their conduct" (emphasis added). The following re-cap of Respondent's conduct, as well as of the language of the Agreement, confirms that there was such an agreement regarding arbitral jurisdiction over clause construction.

Prior to its sudden about-face on August 1, 2013, Respondent had proceeded without any jurisdictional objection to the fact that, under Supplementary Rule 3, the arbitrator's first task would be to decide clause construction. That was evident in Respondent's December 7, 2012 Answering Statement, where it sought an "immediate clause construction ruling. It was also seen in the two conference calls in January 2013 (as confirmed in Case Management Orders Nos. 1-2), and in the ensuing communications in which Respondent participated for the clause construction scheduling.

Even when the stipulated postponement of clause construction ended after the June 10, 2013 Sutter decision, Respondent continued on track toward having the arbitrator decide clause construction, with no attempted reservation of any purported right to raise a jurisdictional objection. Then, almost two months after Sutter, Respondent suddenly, and without any explanation, made a 180-degree turn and said that the Agreement does not allow the arbitrator to decide clause construction, which was a direct and total contradiction of what Respondent had previously committed to do.

Under AAA's Employment Rule 6, an objection to arbitral jurisdiction over the clause construction issue should have been made when Respondent filed its Answering

Statement on December 7, 2012. At that time (and for months thereafter), however, Respondent did not just fail to make such an objection - to the contrary, it was actually affirmatively asking the arbitrator to "immediately" (pp. 2, 8) do what it now says the arbitrator does not have the power to do. That makes no sense.

In short, it is simply too late under Employment Rule 6 – and too inconsistent – for Respondents now to articulate for the first time a contrary position that clause construction is a gateway "arbitrability" issue that should be reserved for judicial determination. See Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (plurality opinion).[8] There is no justification for this untimely jurisdictional challenge regarding clause construction, and Respondents are estopped from raising it.

Furthermore, even if it were allowable, the argument is meritless. The Agreement expressly provides for "arbitration administered by the [AAA] under its arbitration rules," which also include AAA's Supplementary Rules for Class Arbitrations.[9] Supplementary Rule 3 expressly commits the clause construction issue to the arbitrator: "the arbitrator shall determine as a threshold matter, in a reasoned, partial

---

[8] The question as to who should decide clause construction is not new in the law of arbitration. In Stolt-Nielsen, 559 U.S. 662, 680 (2010), the Supreme Court "made clear that [it had] not yet decided whether the availability of class arbitration is a question of arbitrability" that would ordinarily be reserved for a court. As the Supreme Court noted in Sutter, Stolt-Nielsen had "flagged" this as a possible question of arbitrability, and Sutter confirmed that the issue remains an open question. 133 S. Ct. at 2068 n.2. Sutter thus did not change the law on this question of arbitrability; it merely noted what had been for years a question unanswered by the Supreme Court. Furthermore, even before Sutter, in Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 123-24 (2d Cir. 2011), cert. denied, 132 S. Ct. 1742 (2012) (also an employment case), the Second Circuit had identified a "threshold" issue of "whether the parties had submitted to the arbitrator the question of whether their agreement permitted class arbitration," and had found that the employer had done so (as here) by expressly asking the arbitrator to issue a clause construction ruling in its favor. Jock had also presaged (and was effectively affirmed by) Sutter in saying that vacatur of an award is not proper "as long as the arbitrator is even arguably construing and applying the contract and acting within the scope of his authority." Id. at 122. And that Jock holding itself was not new, having been preceded by several similar Second Circuit decisions. See id. at 121-25.

[9] See n.1, supra.

final award on the construction of the arbitration clause, whether the arbitration clause permits the arbitration to proceed on behalf of . . . a class" (emphasis added).

Thus, in choosing to arbitrate under AAA's rules, Respondent has already committed to having clause construction decided by the arbitrator, not by the court. Although an issue of arbitrability is generally one for a court to decide, "when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co, Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (based on language identical to Employment Rule 6); accord, T.Co Metals, LLC v. Dempsey Pipe and Supply, Inc., 592 F.3d 329, 344-45 (2d Cir. 2010); Emilio v. Sprint Spectrum L.P., 508 Fed. Appx. 3, 4-5 (2d Cir. 2013), Southern Communications, supra, 829 F. Supp. 2d at 1337-38,

Both Respondent's own prior conduct in this case and the Agreement itself confirm that the parties agreed on having the arbitrator decide clause construction.

### 2. The Agreement Allows for Class/Collective Arbitration

The current legal standard for determining if an arbitration contract allows for class arbitration is found in Stolt-Nielsen, supra, 559 U.S. 662 (2010). The question is not whether the contract forbids class arbitration, but whether it allows it: a "party may not be compelled under the [Federal Arbitration Act, 9 U.S.C. Secs. 1 et seq.] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. at 684 (emphasis in original). Such an agreement can be explicit or implicit, but the plain existence of an agreement to arbitrate cannot give rise to an

inference that there was necessarily an agreement to arbitrate class as well as individual claims. Id.

In Stolt-Nielsen, the parties stipulated both that their arbitration contract was "silent" regarding (i.e., it did not contain any express mention of) class arbitration, and that they had not made any agreement, one way or the other, on the subject.[10] Because of the latter aspect of their stipulation, the Supreme Court had no occasion to decide "what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," and Stolt-Nielsen thus did not answer that specific question. Id. at n.10. It is clear, however, that the omission of the specific words "class" or "class action" is not necessarily determinative of a lack of intent to authorize class arbitration; the rest of the language used may – or may not - point to an agreement that allows for class arbitration. See e.g., Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 222-25 (3d Cir. 2012), aff'd, 133 S. Ct. 2064 (2013); Fantastic Sams Franchise Corp. v. FSRO Ass'n, 683 F.3d 18, 22 (1st Cir. 2012); Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 124 (2d Cir. 2011) ("Jock"), cert. denied, 132 S. Ct. 1742 (2012); accord, Southern Communications, supra, 829 F. Supp.2d at 1335-37.

The Federal Arbitration Act ("FAA"), 9 U.S.C. Sec. 2, requires enforcement of the Agreement according to its own terms, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985), and the analysis begins with an examination and interpretation of the language actually used in the Agreement. Under the FAA, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

---

[10] There is no such stipulation in this case; although they differ as to what their agreement was, both sides contend there was an agreement as to whether class arbitration would or would not be allowed.

waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Memorial Hospital v.</u>
<u>Mercury Construction Corp.</u>, 460 U.S. 1, 24-25 (1983).

Here, the Agreement, drafted by Respondent and apparently imposed as a
condition of employment, says in relevant part:

"Any actionable employment disputes will be resolved by arbitration conducted
under the auspices of [AAA] . . . , and all parties agree that a neutral third party will have
complete and binding authority to decide a dispute instead of a court of law."

"[Arbitration] shall be the exclusive method of resolving any and all disputes and
the employee waives their [sic] right to have such disputes resolved through a trial by
jury."

"[Arbitration is] the required and exclusive forum for the resolution of all
actionable disputes relating to or arising out of or relating to employment . . . , including,
but not limited, [sic] to . . . any . . . federal, state or local statute, regulation or common
law doctrine . . . ."

"Any claim arising out of or relating to the employee's employment . . . shall be
settled by arbitration . . . administered by [AAA] under its arbitration rules."

"The arbitrator shall be governed by all applicable federal and state laws as well
as the Employment Rules of AAA . . . . The arbitrator shall have the power to award all
relief available under federal, state, and common law."

Interpretation of arbitration commitments such as these is governed by state law
contract principles and a determination of the parties' intent.[11] <u>Jock</u>, 646 F.3d at 126.
Here, I find the contractual language to be undeniably broad and purposely expansive.

---

[11] "A contract must be construed to effectuate the intent of the parties, which is determined from the
language used interpreted in the light of the situation of the parties and the circumstances connected with
the transaction." <u>Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys.</u>, 252 Conn. 479, 498 (2000).

The Agreement creates a comprehensive commitment to arbitrate – making "[a]ny actionable employment disputes" and "any claim arising out of or relating to . . . employment" subject to arbitration, which "shall be the exclusive method of resolving any and all disputes" and is "the required and exclusive forum for the resolution of all actionable disputes." It expressly incorporates "any and all" employment-related claims arising under federal, state or local statutes or under common law, and it makes no attempt to limit arbitral jurisdiction over any such claims.[12]

Significantly, the Agreement also expressly vests the arbitrator with "the power to award all relief available under federal, state, and common law" (emphasis added). That language obviously reinforces the Agreement's express incorporation of AAA's Employment Rule 39(d), which says that the "arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court . . . in accordance with applicable law" (emphasis added). The thrust of the contractual language is thus that employees are precluded from going to court, but they will not be disadvantaged in doing so because arbitration would offer them the same opportunities they would have in court.

Both the language of the Agreement and Employment Rule 39(d) thus evoke a similarity with the arbitration contract that was at issue in Jock. There, the Second Circuit upheld an arbitrator's conclusion that, although the contract said nothing about class arbitration, class claims were nevertheless allowed based on other contractual

---

[12] Although, as the arbitrator in Jock noted, an employee's intent in a contract such as this may be "problematic" to determine, 646 F. 3d at 117, it is reasonable to assume that employees would think that their only concession was that if any legal employment disputes arose, they would have to be resolved in arbitration rather than in court with a right to a jury trial. By analogy with the situation in Carroll v. Aetna Cas. & Sur. Co., 189 Conn. 16, 19-20 (1983), it may therefore be fair to say that the Agreement constitutes an "unrestricted" submission to arbitration of any and all actionable employment disputes, and there is no question that all of the causes of action alleged here are employment-related.

language assuring that "the arbitrator has the 'power to award any types of . . . relief that would be available in a court'" (emphasis added). 646 F.3d at 126-27.

The actual issue presented in Jock was whether the arbitrator had exceeded her powers in reaching that decision (id. at 123-24), and the Second Circuit held that she had not. Significantly, however, the majority also chose to augment its holding with dictum explaining why the arbitrator's decision allowing class arbitration would be a proper and reasonable interpretation of the contract.[13] Id. at 125-27. Relying on the contractual language, the majority said that "to deny the [employees] the right to seek classwide relief would deny them access to at least one type of legal or equitable relief available to them in court – namely, certification to pursue classwide relief." Id. at 126. The majority in Jock thus concluded that entitlement to bring class claims was an integral part of what the contract offered the employees – an opportunity to pursue in arbitration that which they would be entitled to seek in court (id. at 126-27), which is what Rule 39(d) also affords here.[14]

In accordance with the mandate of Stolt-Nielsen, I have thus examined and interpreted the language of the Agreement. Guided by Jock and by Employment Rule

---

[13] Although the arbitrator's decision in Jock was rendered before the Supreme Court ruled in Stolt-Nielsen, it was clear that the Second Circuit cautiously and thoroughly applied the Stolt-Nielsen standards in reviewing her decision.

[14] The Jock majority also noted that the applicable state law did not "bar class arbitration." 646 F.3d at 124. That would apparently also be true in this case, where Connecticut law "favor[s] class actions as an efficient mechanism to adjudicate claims" in appropriate circumstances. See TES Franchising v. Kastel, 2007 WL 1748141 at *4 (Conn.Super. 5/25/07). Furthermore, the Connecticut Supreme Court has held that a New York statute barring a plaintiff from pursuing class claims is substantive, not procedural, inasmuch as it "abridges the rights of individuals to bring class actions." Weber v. U.S. Sterling Securities, Inc., 282 Conn. 722, 738-39 (2007). Claimants here are seeking to enforce substantive statutory and common law rights which, under the theory of Weber, would include the right to pursue class-wide remedies and relief. Respondent's September 20, 2013 citation to Sutherland v. Ernst & Young, LLC, 2013 U.S. App. LEXIS 16513 (2d Cir. 8/9/13) as a "compelling reason" for its court action does not address or diminish the holding in Weber, and also misconstrues the holding in Sutherland, which was that the right to proceed collectively under the FLSA is waivable (as it was expressly done in that case) in the appropriate circumstances. Reliance on Sutherland also ignores the fact that the FLSA is the basis of just one of twelve causes of action being asserted in this case.

39(d) (as incorporated into the Agreement), I find that the claims asserted by Claimants in this case do fall within the scope of the Agreement and are subject to arbitral jurisdiction.

\* \* \* \* \*

## Partial Final Award

The Agreement is hereby construed as allowing Claimant to include in this arbitration the pursuit of class and/or collective claims.[15]   In accordance with Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, I retain jurisdiction and order that all proceedings herein be stayed for a period of 30 days from issuance of this Partial Final Award so that any party may seek to have this decision confirmed or vacated in a court of competent jurisdiction.   Lifting of the stay and resumption of the proceedings will be as specified in Supplementary Rule 3.


DATED: October 30, 2013                                    *Edith N. Dinneen*
                                                            Edith N. Dinneen
                                                            Arbitrator


I, Edith N. Dinneen, do hereby affirm, upon my Oath as Arbitrator, that I am the individual described in and who executed this instrument, which is my Partial Final Clause Construction Award.


DATED: October 30, 2013                                    *Edith N. Dinneen*
                                                            Edith N. Dinneen
                                                            Arbitrator


---

[15] Obviously, no determination is being made at this time as to whether any class certification would be appropriate, or whether Claimant would prevail on any individual or class claims.  See Jock, 646 F.3d at 127 n.3.

14

EXHIBIT 14



REED ELSEVIER, INC., through its LexisNexis Division, Plaintiff-Appellee, v.
CRAIG CROCKETT, as alleged assignee of Dehart and Crockett, P.C.; CRAIG M.
CROCKETT, P.C., d/b/a Crockett Firm, Defendants-Appellants.

No. 12-3574

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

13a0323p.06; *2013 U.S. App. LEXIS 22408; 2013 FED App. 0323P (6th Cir.)*

January 17, 2013, Argued
November 5, 2013, Decided
November 5, 2013, Filed

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Southern District of Ohio at Dayton. No. 3:10-cv-00248--Walter H. Rice, District Judge.
*Reed Elsevier, Inc. v. Crockett, 2012 U.S. Dist. LEXIS 49751 (S.D. Ohio, Apr. 9, 2012)*
*Reed Elsevier, Inc. v. Crockett, 2012 U.S. Dist. LEXIS 23947 (S.D. Ohio, Feb. 24, 2012)*

**COUNSEL:** ARGUED: Blair C. Fensterstock, FENSTERSTOCK & PARTNERS LLP, New York, New York, for Appellants.

Charles J. Faruki, FARUKI, IRELAND & COX, P.L.L., Dayton, Ohio, for Appellee.

ON BRIEF: Blair C. Fensterstock, Eugene D. Kublanovsky, FENSTERSTOCK & PARTNERS LLP, New York, New York, Patrick F. Haggerty, Lindsey A. Carr-Siegler, FRANTZ WARD LLP, Cleveland, Ohio, for Appellants.

Charles J. Faruki, Donald E. Burton, FARUKI, IRELAND & COX, P.L.L., Dayton, Ohio, for Appellee.

**JUDGES:** Before: BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

**OPINION BY: KETHLEDGE**

**OPINION**

[**1] KETHLEDGE, Circuit Judge. Craig Crockett's law firm signed an adhesion contract with LexisNexis that contained an arbitration clause. Eventually the parties had a billing dispute. The arbitration clause provided that any arbitration with respect to [**2] LexisNexis's charges must occur in the city where LexisNexis is located. That provision and others made arbitration of Crockett's individual claims economically unfeasible, so Crockett filed an arbitration demand on behalf of himself and a putative class of other [*2] LexisNexis customers. But the arbitration clause says nothing about classwide arbitration, and the Supreme Court has recently made clear that we must interpret arbitration clauses according to their terms. We therefore agree with the district court that the arbitration clause does not permit the classwide arbitration that Crockett seeks here.

I.

LexisNexis (a business division of Reed Elsevier) provides legal-research services, primarily on-line. In 2007, Craig Crockett and his former law firm--Dehart & Crockett, P.C.--subscribed to a LexisNexis Subscription Plan. The Plan allowed subscribers unlimited access to

2013 U.S. App. LEXIS 22408, *2; 2013 FED App. 0323P (6th Cir.), **2

certain legal databases for a flat, monthly fee. Subscribers could access other databases for an additional fee. According to Crockett, LexisNexis told subscribers that a warning sign—such as a dollar ($) sign—would display if the subscriber was about to use a database outside of the Plan.

Several years after signing up for the Plan, Crockett complained to LexisNexis that his firm was being charged additional fees without any warning that the firm was using a database outside the Plan. LexisNexis allegedly insisted on payment of the additional fees anyway. Soon thereafter, Deharí [*3] & Crockett dissolved. Crockett then formed the Crockett Firm and entered into a LexisNexis subscription agreement that is materially identical to the Plan.

The Plan contains an arbitration clause. In 2010, Crockett filed an arbitration demand with the American Arbitration Association against LexisNexis on behalf of himself and two putative classes. One class comprised law firms that were charged additional fees by LexisNexis. The other class comprised clients onto whom such fees were passed. The demand sets forth state-law claims for fraud, negligent misrepresentation, breach of contract, negligence, gross negligence, unjust enrichment, [**3] and violation of the New York Consumer Protection Act. Crockett sought damages in excess of $500 million.

In response, LexisNexis sued Crockett in a federal district court in Ohio, seeking a declaration that the Plan's arbitration clause does not authorize class arbitration. LexisNexis also sought an injunction barring Crockett from proceeding with classwide arbitration. In an opinion that thoroughly canvassed the caselaw, the district court granted summary judgment in favor of LexisNexis on its declaratory claim and dismissed the injunctive claim without [*4] prejudice.

This appeal followed.

II.

We review the district court's grant of summary judgment de novo. *Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 171 (6th Cir. 2011).*

A.

1.

Crockett first argues that an arbitrator, rather than the district court, should have decided whether the Plan's arbitration clause authorizes classwide arbitration. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648-49, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).* Thus, an arbitrator has authority to answer the question whether an agreement provides for classwide arbitration—a question we refer to here as "classwide arbitrability"—only if the parties have authorized the arbitrator to answer that question. *See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).* As to this much, the law is clear.

Less clear is the showing necessary for a court to decide that the parties have authorized an arbitrator to determine classwide arbitrability. On the one hand, courts presume that so-called "gateway disputes" are "for judicial determination unless the parties clearly and unmistakably [*5] provide otherwise." *Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)* [**4] (internal quotation marks and alterations omitted). Gateway disputes include "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003)* (plurality opinion). These matters are important enough that courts "hesitate to interpret silence or ambiguity" as grounds for giving an arbitrator the power to decide them, because "doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options, 514 U.S. at 945.*

On the other hand, "the law reverses the presumption[,]" *id.,* with respect to what we refer to here as "subsidiary questions." Subsidiary questions "grow out of the dispute and bear on its final disposition[,]" *John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964);* and they include, for example, issues related to "waiver, delay," or "whether a condition precedent to arbitrability has been fulfilled." *Howsam, 537 U.S. at 84-85* (quotation marks and citation [*6] omitted). Once a court decides that the parties have agreed to resolve a particular dispute through arbitration, it follows almost a *fortiorari*—absent clear language to the contrary in the parties' agreement—that they would have

agreed to have an arbitrator decide these subsidiary questions as well.

So we must determine whether classwide arbitrability is a gateway question or a subsidiary one. The Supreme Court faced this same issue in *Bazzle*, though only a plurality of the Justices agreed upon its resolution. There, the plurality concluded that classwide arbitrability is merely a subsidiary question (as we use that term here) because it concerns not whether the parties "agreed to arbitrate a matter[,]" but rather "what kind of arbitration proceeding the parties agreed to." *539 U.S. at 452* (emphasis omitted). Crockett urges us to adopt the same reasoning and conclusion here.

Although the Supreme Court's puzzle of cases on this issue is not yet complete, the Court has sorted the border pieces and filled in much of the background. As an initial matter, the Court has pointedly observed that "only the plurality" in *Bazzle* decided whether classwide arbitrability is a gateway question. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). [*7] And just last Term, the Court flatly [**5] stated that it "has not yet decided whether the availability of class arbitration" is a gateway question. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2, 186 L. Ed. 2d 113 (2013). Thus, the issue before us--whether classwide arbitrability is presumptively for an arbitrator to decide, or presumptively for a judge--remains an open one.

But for Crockett the caselaw is even worse than that--for essentially the Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one. The Court has stated that it "cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen, 559 U.S. at 685*. Indeed, for several reasons, the Court has characterized the differences between bilateral and classwide arbitration as "fundamental." *Id. at 686*; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750, 179 L. Ed. 2d 742 (2011) (same). First, arbitration's putative benefits--"lower costs, greater efficiency and speed," et cetera--"are much less assured" with respect to classwide arbitration, "giving reason to doubt the parties' mutual consent" [*8] to that procedure. *Stolt-Nielsen at 685*; *see also Concepcion*, 131 S.Ct. at 1751 (stating that "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration--its informality--and

makes the process slower, more costly, and more likely to generate procedural morass than final judgment"). Second, "[c]onfidentiality becomes more difficult" in classwide arbitrations, *id. at 1750*--thus "potentially frustrating the parties' assumptions when they agreed to arbitrate." *Stolt-Nielsen, 559 U.S. at 686*. Third, "the commercial stakes of class-action arbitration are comparable to those of class-action litigation"--indeed, Crockett seeks an award of $500 million here--"even though the scope of judicial review is much more limited[.]" *Id. at 686-87*. And then there are the due-process concerns: once an arbitration is expanded classwide, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Id. at 686*. Consequently, the absent parties "must be afforded notice, an opportunity to be heard, and a right to opt out of the class." *Concepcion, 131 S. Ct. at 1751*. Indeed, "where [*9] absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to [**6] decide on a classwide basis which arbitration procedures are to be used." *Oxford Health, 133 S. Ct. at 2071-72* (Alito, J., concurring). Thus, in sum, "[a]rbitration is poorly suited to the higher stakes of class litigation." *Concepcion, 131 S.Ct at 1752*.

Crockett's argument does not fit this puzzle. Gateway questions are fundamental to the manner in which the parties will resolve their dispute--whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail. Unlike the question whether, say, one party to an arbitration agreement has waived his claim against the other--which of course is a subsidiary question--the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide arbitration would "forc[e] parties to arbitrate" not merely a single "matter [*10] that they may well not have agreed to arbitrate[,]" *Howsam, 537 U.S. at 84*, but thousands of them. We therefore hold that the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id. at 83* (internal quotations and alterations omitted).

2.

Crockett cannot make that showing here. The Plan's arbitration clause provides, in relevant part:

> **2. Arbitration**    Except as provided below, any controversy, claim or counterclaim (whether characterized as permissive or compulsory) arising out of or in connection with this Order (including any amendment or addenda thereto), whether based on contract, tort, statute, or other legal theory (including but not limited to any claim of fraud or misrepresentation) will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the American Arbitration Association ("AAA").

[**7] The clause also provides: "Issues of arbitrability will be determined in accordance and solely with the federal substantive and procedural laws relating to arbitration[.]"

This language does not [*11] clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration. Instead it does not mention classwide arbitration at all. It is true that the clause provides that "any controversy . . . arising out of or in connection with this Order" shall be resolved by binding arbitration; and one might argue that the question whether an arbitrator should decide classwide arbitrability is a "controversy . . . arising . . . in connection with" Crockett's order. That, indeed, was the interpretation that the plurality gave to analogous language in *Bazzle. See 539 U.S. at 448* (plurality opinion). But given the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. Thus, at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts. *Stolt-Nielsen, 559 U.S. at 684-85.* We therefore agree with the district court that the question whether Crockett and LexisNexis agreed to arbitrate must "be decided by the [*12] court, not the arbitrator." *AT&T Techs., 475*

*U.S. at 649.* And so we turn to that question next.

B.

The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. A second reason, as the district court correctly observed, is that the clause limits its scope to claims "arising from or in connection with *this Order*," as opposed to other customers' orders. Crockett responds that the arbitration clause refers to the AAA's Commercial Rules, which themselves incorporate the AAA's Supplemental Rules for Class Arbitration. But the Supplemental Rules expressly state that one should "not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Crockett also responds that the agreement does not expressly exclude the possibility of classwide arbitration, which is [**8] true enough. But the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here.

The Supreme Court has made clear that "[a]n implicit agreement to [*13] authorize class-action arbitration" should not be inferred "solely from the fact of the parties' agreement to arbitrate." *Stolt-Nielsen, 559 U.S. at 685.* That, at bottom, is the inference that Crockett asks us to make here. The agreement in this case does not provide for classwide arbitration.

C.

Crockett's remaining argument is that, if read not to permit classwide arbitration, the arbitration clause is unconscionable. The clause is indeed as one-sided as Crockett says: the clause favors LexisNexis at every turn, and as a practical matter makes it economically unfeasible for Crockett or any other customer to assert the individual claims that Crockett seeks to assert here. The clause provides that any arbitration of any dispute concerning LexisNexis's charges must occur in Dayton, Ohio, where LexisNexis is headquartered. The customer must pay his own legal fees, even if the arbitrator concludes that LexisNexis's charges were improper. And unlike many corporations that require arbitration of disputes with their customers, LexisNexis makes its customer split the tab for the arbitrator's fee.

The idea that the arbitration agreement in this case

2013 U.S. App. LEXIS 22408, *13; 2013 FED App. 0323P (6th Cir.), **8

reflects the intent of anyone but LexisNexis [*14] is the purest legal fiction. But all of these things--the one-sided nature of the arbitration clause, and its adhesive nature--were also present in *American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)*. And there the Supreme Court held that, all of those concerns notwithstanding, the absence of a class-action right does not render an arbitration

agreement unenforceable. *Id. at 2309* (The solution to Crockett's problem is likely a market solution; as the district court observed, Westlaw's agreement with its customers lacks any arbitration clause, much less a clause of the sort at issue here.) Under *Italian Colors*, therefore, the agreement here is not unconscionable.

[**9] The district court's judgment is affirmed.

EXHIBIT 15

# Supplementary Rules for Class Arbitrations

Rules Effective October 8, 2003
Fees Effective January 1, 2010

## Table of Contents

| | |
|---|---|
| 1. Applicability | 1 |
| 2. Class Arbitration Roster and Number of Arbitrators | 2 |
| 3. Construction of the Arbitration Clause | 2 |
| 4. Class Certification | 2 |
| 5. Class Determination Award | 3 |
| 6. Notice of Class Determination | 4 |
| 7. Final Award | 4 |
| 8. Settlement, Voluntary Dismissal, or Compromise | 5 |
| 9. Confidentiality; Class Arbitration Docket | 5 |
| 10. Form and Publication of Awards | 5 |
| 11. Administrative Fees and Suspension for Nonpayment | 6 |
| 12. Applications to Court and Exclusion of Liability | 6 |

## 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

## 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three arbitrators.

## 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

## 4. Class Certification

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class

members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

## 5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

## 6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

(5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;

(6) the binding effect of a class judgment on class members;

(7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

(8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

## 7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

## 8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

(2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request

exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

## 9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

(1) a copy of the demand for arbitration;

(2) the identities of the parties;

(3) the names and contact information of counsel for each party;

(4) a list of awards made in the arbitration by the arbitrator; and

(5) the date, time and place of any scheduled hearings.

## 10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

## 11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,350 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA

may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been suspended shall be published on the AAA's Class Arbitration Docket.

## 12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

© 2011 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

EXHIBIT 16

# Hrubos, Natalie

| | |
|---|---|
| **From:** | EdieDinneen@aol.com |
| **Sent:** | Thursday, November 21, 2013 9:12 AM |
| **To:** | Hrubos, Natalie |
| **Cc:** | Rao, Anthony; Tiliakos, Michael; JGarrison@garrisonlaw.com; JGoodbaum@garrisonlaw.com; ssegal@myhrattorney.com; jonathanweed@adr.org |
| **Subject:** | Re: FW: 10-30-13: Partial Final Clause Construction Award: Savaria v. Steiner... |

Respondent's November 19, 2013 request for a stay of the arbitration proceedings in AAA Case No. 12 160 00454 12 is granted, subject to the following conditions:

1.  A motion to vacate or modify the October 30, 2013 Partial Final Clause Construction Award must be filed in District Court by no later than November 29, 2013 (or as soon thereafter as Court Rules may permit), and such filing should be confirmed to AAA and to me within one day.

2.  Within three days of entry of the District Court's ruling on the motion, Respondent must provide a copy to AAA and to me.

3.  Any party then intending to appeal the District Court's ruling may apply for an extension of the stay; if no such request is made, or if it is not granted, the stay will expire 15 days after entry of the District Court's ruling.

Edith N. Dinneen
Arbitrator

In a message dated 11/21/2013 7:38:00 A.M. Eastern Standard Time, NFHrubos@duanemorris.com writes:

Arbitrator Dinneen,


I received your email that you are unable to open the attachment to my message yesterday. As a result, I am now forwarding you the email from Claimants' counsel that I had attached to yesterday's message, in which Claimants' counsel advised us that Claimants do not oppose our request for stay pending District Court level review of our motion to vacate. Please see below. Let me know if you have any further questions.


Thank you,

Natalie


**Natalie F. Hrubos**
Associate

1

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
P: +1 215 979 1517
F: +1 215 405 3710

NFHrubos@duanemorris.com
www.duanemorris.com

---

**From:** Joshua R. Goodbaum [mailto:JGoodbaum@garrisonlaw.com]
**Sent:** Wednesday, November 20, 2013 10:51 AM
**To:** Hrubos, Natalie; Joseph D. Garrison
**Cc:** Rao, Anthony; Tiliakos, Michael
**Subject:** RE: 10-30-13: Partial Final Clause Construction Award: Savaria v. Steiner - 1...


Dear Natalie:


The Claimants do not oppose your request to stay the arbitration proceedings pending the District Court's resolution of your motion to vacate.  We do not consent at this point to any additional stay beyond the District Court level (that is – for any appeal you may take).


Regards,


Joshua R. Goodbaum

Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.

405 Orange Street

New Haven, Connecticut 06511

Tel.  (203) 777-4425

Fax  (203) 776-3965

jgoodbaum@garrisonlaw.com

garrisonlaw.com

*This transmittal is intended for a particular addressee(s).  It may contain a confidential attorney-client communication or confidential attorney work product.  If it is not clear that you are the intended recipient, you have received this transmittal in error, and any review, copying, distribution or dissemination of it by you is strictly prohibited.  If you suspect that you have received this transmittal in error, please notify Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. immediately at (203) 777-4425, or by e-mail reply to the sender, and delete the transmittal and any attachments.  Documents attached to this message are not encrypted.  Thank you for your cooperation.*

**From:** Hrubos, Natalie [mailto:NFHrubos@duanemorris.com]
**Sent:** Tuesday, November 19, 2013 7:31 PM
**To:** Joshua R. Goodbaum; Joseph D. Garrison
**Cc:** Rao, Anthony; Tiliakos, Michael
**Subject:** FW: 10-30-13: Partial Final Clause Construction Award: Savaria v. Steiner - 1...

Joseph and Joshua –

As you know, we have asked Arbitrator Dinneen to stay arbitration proceedings until the court rules on Steiner's motion to vacate her Partial Final Clause Construction Award.  Per the arbitrator's email below, what is your position on a stay of arbitration proceedings pending judicial review? Please let us know as soon as possible tonight or first thing tomorrow morning.

Thank you,

Natalie

**Natalie F. Hrubos**
Associate

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
**P:** +1 215 979 1517
**F:** +1 215 405 3710

NFHrubos@duanemorris.com
www.duanemorris.com

**From:** EdieDinneen@aol.com [mailto:EdieDinneen@aol.com]
**Sent:** Tuesday, November 19, 2013 6:53 PM
**To:** Hrubos, Natalie
**Cc:** JonathanWeed@adr.org; JGoodbaum@garrisonlaw.com; JGarrison@garrisonlaw.com; ssegal@myhrattorney.com; Tiliakos, Michael; Rao, Anthony
**Subject:** Re: 10-30-13: Partial Final Clause Construction Award: Savaria v. Steiner - 1...

It would be inappropriate for me to respond to this inquiry without knowing Claimants' position.  Have you asked Claimants' counsel about their intentions?

Edith N. Dinneen

Arbitrator

3

In a message dated 11/19/2013 9:55:43 A.M. Eastern Standard Time, NFHrubos@duanemorris.com writes:

Arbitrator Dinneen:

I write on behalf of Anthony Rao and Michael Tiliakos of Duane Morris LLP, which represents Steiner Leisure Limited ("Steiner") in the above referenced matter. This email is to inform you that Steiner is seeking judicial review of the Partial Final Award issued by you on October 30, 2013 (attached) and to respectfully request that you stay arbitration proceedings until you are informed of the court's ruling.

The Partial Final Award provides that in accordance with Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, all proceedings are stayed for a period of 30 days from issuance of the Partial Final Award "so that any party may seek to have this decision confirmed or vacated in a court of competent jurisdiction." As such, we understand that arbitration proceedings are currently stayed through Friday, November 29, 2013.  However, the Partial Final Award further provides: "Lifting of the stay and resumption of the proceedings will be as specified in Supplementary Rule 3."

Supplementary Rule 3, *inter alia*, provides as follows: "The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. **If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court**." (emphasis added).

Steiner will file its motion to vacate the Partial  Final Award this week.  Steiner asks that you further stay arbitration proceedings until the court rules on this motion because, absent a stay, Steiner will incur irreparable harm and substantial costs if the arbitration proceedings go forward pending judicial review. If the court determines that vacatur of the Partial Final Award is warranted in this case, any class or collective arbitration proceedings will have been a waste. A stay pending judicial review will, therefore, conserve the parties' time and resources and avoid unnecessary and wasteful proceedings.

Please let us know by 5 p.m. today whether you will grant this request to stay arbitration proceedings until the court rules on Steiner's motion to vacate the Partial Final Award.

Thank you for your consideration.

Regards,

Natalie Hrubos

**Natalie F. Hrubos**
Associate

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
**P:** +1 215 979 1517
**F:** +1 215 405 3710

NFHrubos@duanemorris.com
www.duanemorris.com

**From:** AAA Jonathan Weed [mailto:JonathanWeed@adr.org]
**Sent:** Wednesday, October 30, 2013 4:21 PM
**To:** ssegal@myhrattorney.com; 'Joseph D. Garrison'; Rao, Anthony; 'Joshua R. Goodbaum'; 'Ethan Levin-Epstein'; Tiliakos, Michael
**Subject:** 10-30-13: Partial Final Clause Construction Award: Savaria v. Steiner - 12 160 00454 12

Re: 12 160 00454 12

Doreen Savaria and Crystal Raia on behalf of

themselves and all other similarly situated

employees of Elemis Spa

and

Steiner Leisure Limited

Dear Parties:

By direction of the Arbitrator , we herewith transmit to you the duly executed Partial Final Clause Construction Award in the above matter.

Pursuant to the Supplementary Rules for Class Arbitrations and the direction of the Arbitrator, this matter is stayed until  November 29, 2013 to permit the parties to move a court of competent jurisdiction to confirm or vacate the Partial Final Clause Construction Award.  We ask the parties to keep the Association advised of any pending court actions.

So that our records are accurate, please provide the Association with a copy of any court order directly pertaining to the Partial Final Clause Construction Award.

Please be advised, pursuant to Rule 11 (a) of the Supplementary Rules for Class Arbitrations, once the arbitration proceeds beyond the Clause Construction Award, a supplemental filing fee shall be paid to the Association.  This fee is based upon the amount of the claim, in accordance with the fee schedule contained in the Commercial Rules.  Accordingly, (if a claim range is not stated), a fee of  $12,800 will be due from Claimant when this arbitration continues beyond clause construction.

Please do not hesitate to contact me should you have any questions or concerns.

Sincerely,

Sara Isom on behalf of

**Jonathan Weed, Manager of ADR Services**
American Arbitration Association
**T:**401 431 4721
**F:**866 644 0234
950 Warren Ave.
East Providence, RI 02914-1414
www.adr.org

Yvonne L. Baglini, Director
Northeast Case Management Center

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the

intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.