# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| **STEINER LEISURE LIMITED,** | : | |
| | : | **CIVIL ACTION NO.:** |
| **Plaintiff,** | : | |
| | : | **3:13-cv-1379 (MPS)** |
| **v.** | : | |
| | : | |
| **DOREEN SAVARIA and CRYSTAL** | : | |
| **RAIA, Individually and on Behalf of** | : | |
| **All Other Similarly Situated Employees** | : | |
| **of Elemis Spa,** | : | |
| | : | |
| **Defendants.** | : | **February 25, 2014** |

_____:

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE
### ARBITRATOR'S PARTIAL FINAL CLAUSE CONSTRUCTION AWARD

Steiner Leisure Limited imposed an arbitration policy upon each of the employees at its Elemis Spa at the Mohegan Sun.  The policy required the employees to arbitrate "[a]ny actionable employment disputes."  When Steiner employees Doreen Savaria and Crystal Raia noticed discrepancies in their compensation, they did just that: they filed a demand for arbitration with the American Arbitration Association (AAA).  Steiner then participated in the selection of the Arbitrator, and it explicitly asked her to "[i]immediate[ly]" construe the parties' arbitration agreement.  That is what the Arbitrator did, and now Steiner, disgruntled by her conclusions, invites this Court to intervene.

Steiner's invitation should be rejected.  Settled law in the Second Circuit dictates that the question of whether the parties' arbitration agreement authorized the arbitration of their dispute was for the Arbitrator to decide in the first instance.  That was all the more true since the agreement explicitly incorporated arbitration rules that so provided and since the party

challenging the clause construction award — Steiner — had previously conceded the Arbitrator's authority to issue the award.  Because the construction of the arbitration clause was properly submitted to the Arbitrator, this Court's review of the award under the Federal Arbitration Act is extraordinarily deferential, and it can be easily confirmed.

Much like the defendant in *Oxford Health Plans LLC v. Sutter*, Steiner "chose arbitration, and it must now live with that choice."  133 S. Ct. 2064, 2071 (2013).  Steiner's Motion to Vacate should be denied.

## I.   FACTUAL BACKGROUND[1]

Doreen Savaria worked as an esthetician for Steiner Leisure Limited from 2004 to 2011, and Crystal Raia worked as a massage therapist for Steiner from 2008 to 2012.  (Dkt. No. 8, Am. Compl. ¶¶ 11-12.)  While they were working for Steiner, Ms. Savaria and Ms. Raia each received Steiner's policy mandating the use of arbitration to resolve all employment disputes. (*Id.* ¶ 13.)  The Employment Arbitration Policy provided, in relevant part:

### Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA"). The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law. Private arbitration is generally quicker and less costly for all parties than litigation. For these reasons, the Company has adopted the Employment Arbitration Policy.

. . .

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

---

[1]  The first two sections of this brief, the Factual Background and the Procedural Background, are substantially the same as those included in the Defendants' Memorandum of Law in Support of Their Motion to Dismiss and/or to Stay Proceedings Pending the Outcome of Ongoing Arbitration.  (Dkt. No. 20-1 at 1-7.)

**Scope**

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment. The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

**Arbitration Rules & Procedures**

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

. . .

**Scope of Relief**

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/ or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

(Exh. A, Employment Arbitration Policy.)

## II.     PROCEDURAL BACKGROUND

### A.     The Parties Submit Their Dispute to Arbitration, and Steiner Seeks an "Immediate" Clause Construction.

Following the termination of their employment with Steiner, and pursuant to the

Employment Arbitration Policy, Ms. Savaria and Ms. Raia filed a demand for class arbitration

against Steiner, on behalf of themselves and all other similarly situated employees.  (Dkt. No. 8,

Am. Compl. ¶¶ 14-15; *see also* Exh. B, Demand for Arbitration (Sept. 11, 2012).)  The "Savaria

Claimants" asserted numerous causes of action regarding wage theft and other wrongful denials

of compensation.  (Exh. B.)

> In response to the Demand for Arbitration, on December 7, 2012 [Steiner] filed its "Answering Statement <u>and Request for an Immediate Clause Construction Hearing from Respondent Steiner Leisure Limited</u>" (emphasis added).  In that extensive pleading, Respondent alleged 26 "Affirmative and Other Defenses," and further stated its position (p. 2) that, in accordance with *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010) ("*Stolt-Nielsen*"), "Claimants must arbitrate their claims individually because they signed an arbitration agreement that reflects an intent to provide individualized arbitration and does not explicitly provide for class arbitration."  [Steiner] also expressly "[r]equest[ed] this threshold issue be addressed at a Clause Construction hearing pursuant to Rule 3" of the Supplementary Rules (p. 2), and prayed for "an immediate Clause Construction hearing" (p. 8).

(Exh. C, AAA Case No. 12-460-454-12, Partial Final Clause Construction Award (Oct. 30,

2013) (Dinneen, Arb.) [hereinafter "Clause Constr. Award"], at 2-3.)

The parties agreed to stay the proceedings pending the U.S. Supreme Court's decision in

*Oxford Health Plans v. Sutter*, 133 S. Ct. 786 (Dec. 7, 2012) (granting certiorari), which

concerned the interpretation of an arbitration clause to allow for class arbitration.  *See Oxford*

*Health Plans v. Sutter*, 133 S. Ct. 2064 (2013).  Following the Supreme Court's decision, the

parties' chosen Arbitrator, Edith Dinneen, contacted the parties to set a schedule for the briefing

regarding the construction of Steiner's Employment Arbitration Policy.  Steiner "said nothing

about there being no arbitral authority to decide clause construction, and all counsel agreed to

hold the conference on July 25, 2013."  (Exh. C, Clause Constr. Award, at 3.)  The parties agreed

to a briefing schedule.  (*Id.* at 3-4.)

**B.     Steiner Does an About-Face, Files a Federal Court Lawsuit, and Unsuccessfully Seeks to Stay the Arbitration.**

> Then:

> [o]n August 1, 2013, [Steiner's] counsel, for the first time, notified [Arbitrator Dinneen] of its new position that the Agreement does not authorize any arbitrator to decide the clause construction issue and that, as soon as Claimants filed their

> clause construction brief, [Steiner] would go to court seeking a ruling that only a court, not an arbitrator, has jurisdiction to issue a clause construction determination in this case.  [Steiner] has not attempted to reconcile this position with its entirely contradictory prior conduct and pleading.

(*Id.* at 4.)  Accordingly, in response to the Savaria Claimants' initial clause construction brief (Exh. D, Claimants' Mem. of Law (Aug. 15, 2013)), Steiner refused to address clause construction.

> [I]t instead merely stated that it "does not agree that any arbitrator has the power to decide whether [the Agreement] authorizes class or collective arbitration," and that it had that day commenced the court action for declaratory and injunctive relief because the Supreme Court's opinions in *Sutter* and *Stolt-Nielsen* "compel[led]" it to do so.

(Exh. C, Clause Constr. Award, at 4 (quoting Exh. E, Response to Claimants' Mem. of Law (Sept. 20, 2013)) (alterations in original).)  The Savaria Claimants filed a reply brief addressing the merits of clause construction, including their argument that the Arbitrator had the authority to interpret the arbitration clause.  (Exh. F, Claimants' Reply Mem. of Law (Oct. 1, 2013).)

Later that same day, Steiner asked the Arbitrator to stay the arbitration pending the outcome of the court action it had filed.  (Exh. G, Email from A. Rao to E. Dinneen (Oct. 1, 2013).)  The Savaria Claimants opposed the request.  (Exh. H, Email from J. Goodbaum to E. Dinneen (Oct. 9, 2013).)  The Arbitrator denied Steiner's request for a stay.  (Exh. I, AAA Case No. 12-460-454-12, Order Denying Stay (Oct. 29, 2013) (Dinneen, Arb.).  *See generally* Exh. C, Clause Constr. Award, at 5-6.)

## C.     The Arbitrator Construes the Parties' Agreement to Allow Clause Construction by an Arbitrator and to Allow Class Arbitration.

Arbitrator Dinneen then issued her Partial Final Clause Construction Award.  (Exh. C.) She decided, as an initial matter, that Steiner's arbitration clause granted her the authority to decide the issue of clause construction.  She quoted Rule 6 of the AAA's Employment Rules, which Steiner had explicitly incorporated into its arbitration policy.  (*See* Exh. A, Employment

Arbitration Policy ("The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA.").)  That Rule provides that:

> the "arbitrator shall have the power to rule on . . . her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement . . . [, and] that any objection to the jurisdiction of the arbitrator or to the arbitrability of a claim" must be made "no later than the filing of the answering statement that gives rise to the objection."

(Exh. C, Clause Constr. Award, at 6 (quoting Rule 6) (alterations in original).)  Observing that Steiner had initially and repeatedly asked the Arbitrator to interpret its arbitration clause "immediately," Arbitrator Dinneen reasoned that:

> In short, it is simply too late under Employment Rule 6 — and too inconsistent — for Respondents now to articulate for the first time a contrary position that clause construction is a gateway "arbitrability" issue that should be reserved for judicial determination.  There is no justification for this untimely jurisdictional challenge regarding clause construction, and Respondents are estopped from raising it.

(*Id.* at 8 (citations and footnote omitted).)

She continued, holding that, "even if it were allowable, the argument is meritless."  (*Id.*)  Steiner's arbitration clause explicitly incorporated the AAA's Rules, and those Rules expressly commit the issue of clause construction to the parties' chosen Arbitrator.  (*Id.* at 8-9.)  She reasoned that: "Although an issue of arbitrability is generally one for a court to decide, 'when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'"  (*Id.* at 9 (quoting *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), among other Second Circuit cases directly addressing the issue, and noting that *Contec Corp.* was "based on language identical to [AAA] Employment Rule 6").)

The Arbitrator then found that the Savaria Claimants' claims "[fell] within the scope of the Agreement and [we]re subject to arbitral jurisdiction."  (*Id.* at 14.)  She explained that "the omission of the specific words 'class' or 'class action' is not necessarily determinative of a lack of intent to authorize class arbitration; the rest of the language used may — or may not — point to an agreement that allows for class arbitration."  (*Id.* at 10 (citing, among other cases, *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 124 (2d Cir. 2011).)  She reviewed the broad language of Steiner's arbitration policy, which provides, among other things, that arbitration "shall be the exclusive method of resolving any and all disputes" and that "[a]ny claim arising out of or relating to the employee's employment . . . shall be settled by arbitration."  (*Id.* at 11 (quoting Exh. A).)  She found the contract language "undeniably broad and purposely expansive, . . . creat[ing] a comprehensive commitment to arbitrate."  (*Id.* at 11-12.)  And she relied on the arbitrator's "power," under the agreement, "to award all relief available under federal state and common law."  (*Id.* at 12 (quoting Exh. A).)  Finally, she analogized to the Second Circuit's opinion in *Jock*, which upheld an arbitral decision allowing class arbitration even though the arbitration agreement did not expressly contemplate class procedures.  (*See id.* at 12-13.)

Pursuant to Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, Arbitrator Dinneen stayed the proceedings for 30 days to allow an appeal of the Partial Final Award.  (*Id.* at 14.)  Steiner then filed the instant Motion to Vacate Arbitrator's Partial Final Clause Construction Award.  (Dkt. No. 19.)

## III.   ARGUMENT

### A.   Arbitrator Dinneen's Decision Cannot Be Vacated Under the Federal Arbitration Act.

1.   The Federal Arbitration Act Mandates Extreme Deference to the Decisions of Arbitrators.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, establishes a "streamlined" process for the judicial review of arbitration awards. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The Act only permits courts to vacate such awards under certain defined circumstances, including: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). But a party moving to vacate an award under this provision bears a "very high" burden. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The Second Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)] in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009). In light of this prescribed standard of review, "[t]he principal question" for a court reviewing a § 10(a)(4) claim, "is whether the arbitrator's award draws its essence from" the parties' agreement. *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005). "So long as the arbitrator was arguably construing the contract," § 10(a)(4) does not permit a court to "correct his mistakes." *Oxford Health Plans*, 133 S. Ct. at 2070; *see also T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) ("With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract.").

2.      The Award Easily Survives This Deferential Review.

Under this highly deferential standard, the Partial Final Clause Construction Award easily

passes muster.  Arbitrator Dinneen extensively quoted the parties' arbitration agreement,

analyzed it under Connecticut contract law, and found it to be "undeniably broad and purposely

expansive."  (Exh. C. at 11.)  "Guided by" Second Circuit precedent, as well as the parties'

commitment to allow her to "award all relief available under federal, state, and common law,"

Arbitrator Dinneen found the agreement to authorize class arbitration.  (*Id.* at 12-14.)  This

interpretation cannot be vacated under the FAA.  *See, e.g.*, *Oxford Health Plans*, 133 S. Ct. at

2069 (reciting arbitrator's analysis of contract and holding that his consideration of the contract

"suffices to show that [he] did not 'exceed[ ] [his] powers' (quoting 9 U.S.C. § 10(a)(4))).[2]

**B.      The Interpretation of the Parties' Arbitration Agreement Was Not a "Gateway" Issue.**

This much cannot reasonably be disputed, Steiner's exhortations to the contrary

notwithstanding.  Rather, Steiner's only genuine hope of voiding Arbitrator Dinneen's Clause

Construction Award is if the availability of class arbitration is a so-called "gateway" issue, as

these issues are presumably for courts to decide in the first instance and therefore subject to *de*

---

[2]  Steiner also contests Arbitrator Dinneen's Award under § 10(a)(3) of the FAA, which allows vacatur "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  This challenge likewise fails, as Arbitrator Dinneen acted reasonably throughout the proceedings.  In fact, far from barreling full steam ahead at Steiner's expense, Arbitrator Dinneen did quite the opposite: she reasonably postponed clause construction until the Supreme Court ruled in *Oxford Health Plans*.  (Exh. C, Clause Constr. Award, at 3.) Only <u>after</u> that decision came down did she proceed to clause construction.  This is not misconduct — and certainly not the "denial of fundamental fairness" that is required to vacate an award under § 10(a)(3).  *Intercity Co. Establishment v. Ahto*, 13 F. Supp. 2d 253, 261 (D. Conn. 1998) (Goettel, J.); *see also, e.g.*, *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998) (holding that "a mere difference of opinion between the arbitrator[] and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)," and reminding that "the basic policy behind arbitration . . . is to permit parties to resolve their disputes in an expeditious manner without all the formalities and procedures that might attend full fledged litigation").

*novo* review.  Unfortunately for Steiner, however, this argument fails for three independently sufficient reasons.  First, the question whether an arbitration clause permits class arbitration is a question of procedural arbitrability for arbitrators, rather than courts, to decide.  Second, arbitration agreements that incorporate arbitration rules providing for clause construction by the arbitrator, as Steiner's agreement did, demonstrate a clear intent for the arbitrator to interpret the agreement.  And third, Steiner repeatedly asked the Arbitrator here to interpret its agreement.

> 1.   Whether an Arbitration Clause Permits Class Arbitration Is a Question of Procedural Arbitrability that Is Properly Addressed to an Arbitrator.

Questions regarding the application and scope of arbitration clauses — that is, questions of arbitrability — fall into two categories: substantive and procedural.  *See generally Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).  Questions of substantive arbitrability include whether the parties have a contract and whether an arbitration clause "applies to a particular type of controversy."  *Id.* at 84.  These are questions for courts to decide.  *Id.* Questions of procedural arbitrability, in contrast, are properly addressed to arbitrators.  *Id.* at 84-85.  These questions concern the procedure an arbitration should follow, including "allegations of waiver, delay, or a like defense to arbitrability."  *Id.* at 84 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (alteration omitted)).

The Second Circuit has unequivocally held that whether an agreement provides for class arbitration falls into the latter category of procedural questions: "In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003), the Supreme Court ruled that the question whether an arbitration contract forbids class arbitration concerns 'contract interpretation and arbitration procedures,' which fall under the domain of arbitrators who 'are well situated to answer' questions relating to those issues."  *Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 F. App'x 327, 329 (2d Cir. 2009).  Accordingly, courts in this Circuit should leave those questions to arbitrators

in the first instance.  *Id.*; *see also, e.g.*, *Guida v. Home Sav. of Am.*, 793 F. Supp. 2d 611, 614-18

(E.D.N.Y. 2011) ("[W]here, as here, there is disagreement over whether the agreement to

arbitrate permits class arbitration and the agreement does not explicitly address this issue, the

ability to proceed on a class basis is a procedural question involving contract interpretation and is

therefore for the arbitrator to decide in the first instance."); *cf. Puleo v. Chase Bank USA, N.A.*,

605 F.3d 172, 179 (3d Cir. 2010) (en banc) ("[T]he Supreme Court has made clear that questions

of 'contract interpretation' aimed at discerning <u>whether</u> a particular procedural mechanism is

authorized by a given arbitration agreement are matters for the arbitrator to decide." (citing

*Bazzle*, 539 U.S. at 453)).[3]

2. <u>The Arbitration Policy Unmistakably Commits the Issue of Arbitrability to the
Arbitrator.</u>

The issue of arbitrability is committed to the Arbitrator, as a matter of contact law, "if the

parties clearly and unmistakably [so] provide."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

79, 83 (2002).  The parties can so provide in a number of ways.  One way for them to do so is to

incorporate into their agreement arbitration rules that establish that the Arbitrator will decide all

issues of arbitrability.  *See, e.g.*, *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208

(2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator

to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of

the parties' intent to delegate such issues to an arbitrator.")

That is what occurred here.  Steiner's arbitration policy provides as follows:

---

[3]  The U.S. Supreme Court's recent decision in *Oxford Health Plans* does not undermine this
precedent.  *See* 133 S. Ct. at 2068 n.2 ("*Stolt–Nielsen* made clear that this Court has not yet
[explicitly] decided whether the availability of class arbitration is a question of [substantive]
arbitrability.  But this case gives us no opportunity to do so . . . ." (citing *Stolt-Nielsen S.A. v.
AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010))).  Nor, of course, do opinions from other
judicial circuits.  *Cf. Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598-99 (6th Cir. 2013)
(holding that class arbitrability is a "gateway matter").

### Arbitration Rules & Procedures

> Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

(Exh. A.)  Rule 3 of the AAA's Supplementary Rules for Class Arbitrations in turn states that, in a putative class arbitration, the Arbitrator will decide whether the arbitration clause authorizes class proceedings:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").

AAA Supp. Rules for Class Arbs., Rule 3 (Oct. 8, 2003) (attached at Exh. J); *see also Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 668 (2010) (describing Class Rule 3).[4]

The Second Circuit has repeatedly held that the explicit incorporation of private arbitration rules that delegate the duty of clause construction to the Arbitrator is sufficient to effectuate such a delegation.  *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5-6 (2d Cir. 2013) (holding "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator" by explicitly incorporating JAMS rules, which commit issues of arbitrability to arbitrator); *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344-45 (2d Cir. 2010) (holding that, since "ICDR Article 36 provides that 'the tribunal shall interpret and apply these Rules insofar as they relate to its powers and duties,' . . . the parties' adoption of the ICDR Articles, including Article 36, in their arbitration agreements provides a 'clear and unmistakable'

---

[4]  Rule 6 of the AAA's Employment Arbitration Rules likewise imbues the Arbitrator with authority to determine the scope of the arbitration: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA. Employment Rules, Rule 6 (Nov. 1, 2009) (attached at Exh. K).

expression of their intent to allocate to the arbitrator the task of interpreting the scope of his

powers and duties"); *Contec Corp. v. Remote Solution Co.*, 398 F.3d at 208.  Thus, Steiner's

incorporation of the AAA's rules in its arbitration policy committed the issue of clause

construction to the Arbitration.

Steiner complains, in response, that it did not explicitly incorporate the AAA's

Supplementary Rules for Class Arbitrations into its arbitration policy, so it cannot be required to

follow them.  (Def. Mem. at 18-21.)  That argument is dubious as a textual matter, since the

policy itself states that arbitration "shall be administered by the [AAA] under its arbitration

rules" without specifying <u>which</u> of the AAA's many sets of rules it meant.  (Exh. A.)  The most

natural reading is that Steiner meant to incorporate <u>all</u> applicable AAA rules.  Nor can Steiner

obscure this fact through its concerted effort to recast the AAA's Employment Rules (which the

arbitration policy never mentions) as the "AAA Arbitration Rules" (*e.g.*, Def. Mem. at 18), as if

all of the AAA's rules did not concern arbitration in one form or another.  Regardless,

"[c]ommentators and AAA arbitral tribunals have consistently concluded that consent to any of

the AAA's substantive rules also constitutes consent to the Supplementary Rules."  *Reed v. Fla.

Metro. Univ.*, 681 F.3d 630, 635 (5th Cir. 2012) (citing cases), *abrogated on other grounds by

Oxford Health Plans*, 133 S. Ct. 2064 (2013).  Accordingly, Steiner's arbitration policy

unmistakably commits the issue of arbitrability to the Arbitrator, and Steiner's claims to the

contrary must fail.

 3. <u>By Repeatedly Requesting that the Arbitrator Construe Its Arbitration Policy, Steiner Has Waived Any Asserted Right to Seek a Declaratory Judgment.</u>

A litigant cannot submit a dispute to arbitration, only then to change its mind and seek a

judicial determination regarding the arbitrability of the dispute.  Once a litigant asks an

arbitrator to decide an issue, that is what must occur.  *See, e.g.*, *Oxford Health Plans*, 133 S. Ct.

at 2071 ("Oxford chose arbitration, and it must now live with that choice."); *Orion Pictures Corp. v. Writers Guild of Am., W.*, 946 F.2d 722, 725 (9th Cir. 1991) (holding that, once a party "has submitted the question of arbitrability to the arbitrator for decision, . . . [a] federal court can no longer decide arbitrability de novo, but must await the arbitrator's ruling on arbitrability and enforce that ruling if it represents a 'plausible interpretation' of the [parties' agreement]" (quoting *George Day Constr. Co. v. United B'hood of Carpenters & Joiners*, 722 F.2d 1471, 1476 (9th Cir. 1984)); *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 812-14 (6th Cir. 2006) (holding that party "waived [right to de novo determination on] the issue of who had the power to decide the arbitrability . . . by submitting the matter to arbitration 'without reservation'"); *Beltway Capital, LLC v. Mortg. Guar. Ins. Corp.*, 2011 WL 2066603 at *4-*5 (D. Md. May 25, 2011) (refusing to consider declaratory judgment action regarding arbitrability and instead compelling arbitration because party seeking declaratory judgment had already agreed to arbitration); *cf. United Indus. Workers v. Gov't of the V.I.*, 987 F.2d 162, 168 (3d Cir.1993) ("[A] party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration").

Yet that is precisely what Steiner is attempting to do.  It repeatedly asked Arbitrator Dinneen for an "immediate" clause construction hearing.  Only later did it ask the Arbitrator to stay the arbitration so it could seek a declaratory judgment regarding arbitrability.  This Steiner could not do.  The Arbitrator was entitled to decide the question of arbitrability in the first instance, not least because that is what Steiner had already requested.

Steiner offers two arguments to the contrary, but each misses the mark.  First, Steiner says that it objected to Arbitrator Dinneen's ability to determine the arbitrability of the parties' dispute.  Admittedly, AAA Rule 6 provides that "any objection . . . to the arbitrability of a

claim" must be made "no later than the filing of the answering statement that gives rise to the objection," and Steiner submitted its answering statement without any such objection.  But a class action is not "a claim," says Steiner, so Rule 6 does not apply.  (Def. Mem. at 13.)  The silliness of this argument is apparent on its face.  No one asserts that a class action is a substantive claim, absent an underlying cause of action.  But where a cause of action — here, for various wage and compensation violations — is pleaded as a class action, then the cause of action is a class action claim, and it strains logic and grammar to suggest that Rule 6 means otherwise.

Second, yet no more successfully, Steiner argues that it cannot be held responsible for its actions prior to *Oxford Health Plans* because that decision was "a game changer."  (Def. Mem. at 14.)  To be sure, *Oxford Health Plans* could have been a game changer, had the Supreme Court decided the question left open by *Stolt-Nielsen*, 559 U.S. at 680.  *See* 133 S. Ct. at 2068 n.2.  But that is not what the Court did.  After all, earth-shattering judicial proclamations rarely take the form of unanimous opinions spanning roughly five pages in the Supreme Court reporter.  Rather, the Court applied accepted principles of arbitration law anticipated by Dr. Sutter in his brief.  *See* Brief of Respondent at 28, *Oxford Health Plans*, 133 S. Ct. 2064 (arguing for deferential judicial review because Oxford repeatedly submitted the issue of clause construction to the arbitrator despite understanding that it could have sought a judicial determination in the first instance).  If Steiner had wanted this Court to interpret the arbitration agreement, it should have asked the Court to do so before submitting the issue to the Arbitrator.

**IV.    CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that this Court deny the

Plaintiff's Motion to Vacate.

                                              **RESPECTFULLY SUBMITTED,**
                                              **THE DEFENDANTS**

                    By:    */s/ Joshua R. Goodbaum*
                                  Joseph D. Garrison  *(ct04132)*
                                  Joshua R. Goodbaum  *(ct28834)*
                                  GARRISON, LEVIN-EPSTEIN, RICHARDSON,
                                        FITZGERALD & PIRROTTI, P.C.
                                  405 Orange Street
                                  New Haven, Connecticut  06511
                                  Tel.:  (203) 777-4425
                                  Fax:  (203) 776-3965
                                  jgarrison@garrisonlaw.com
                                  jgoodbaum@garrisonlaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on February 25, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Joshua R. Goodbaum*

Joshua R. Goodbaum *(ct28834)*

# EXHIBIT A

# Employment Arbitration Policy

## Purpose

Any actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association ("AAA").  The term "arbitration" means that all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law.   Private arbitration is generally quicker and less costly for all parties than litigation.  For these reasons, the Company has adopted the Employment Arbitration Policy.

This policy does not constitute a guarantee that the employee's employment will continue for any specified period of time nor end only under certain conditions.  Employment at the Company is a voluntary relationship for no definite period of time, and nothing in this policy or any other Company document constitutes an express or implied contract of employment.

The employee should further understand that arbitration shall be the exclusive method of resolving any and all disputes, and the employee waives their right to have such disputes resolved through a trial by jury.

## Scope

The policy makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment  (and which are not resolved by the internal anti-harassment procedure), including, but not limited, to claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment compensation, benefits, or termination of employment.   The policy does not require that the Company follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

## Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration.   Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

6

## Initiation of Arbitration Proceeding

Arbitration may be initiated by a written demand submitted to the American Arbitration Association, 799 Brickell Plaza, Suite 600, Miami, Florida 33131. The demand shall set forth the claim, including the alleged act or omission at issue, and the name(s) of all persons involved in the act or omission. The Company will pay the initial filing fee in connection with such arbitration, and thereafter, each side shall pay its own legal fees and expenses, except as required by law or by the rules of the AAA.

## Representation

Any party may be represented by an attorney or by him/her self.

## Proceedings

The hearings shall be conducted in the city where the employee was last employed with the Company before a neutral arbitrator chosen from the AAA's panel of arbitrators.

## Time of Award

The arbitrator shall be requested to render and communicate the award within thirty (30) days of the hearing or as soon as possible thereafter.

## Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

# Immigration Law Compliance

The Company is committed to employing only United States citizens and aliens who are authorized to work in the United States. The Company does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1996, each new employee, as a condition of employment, must complete the *Employment Eligibility Verification Form I-9* and present documentation establishing identity and employment eligibility. Employees who are re-hired must also complete the form if they have not completed an *I-9* with the Company within the past three (3) years, or if their previous *I-9* is no longer retained or valid.

7

# EXHIBIT B

<u>**Demand for Arbitration by the American Arbitration Association**</u>

**Doreen Savaria and Crystal Raia,**
**individually and on behalf of all other similarly situated employees of Elemis Spa,**
**Claimants,**

**v.**

**Steiner Leisure Limited,**
**Respondent.**

<u>**Background**</u>

1. This action is brought by Doreen Savaria and Crystal Raia ("the named Claimants") on behalf of all spa service providers who are currently employed by Respondent Steiner Leisure Limited ("Respondent" or "Steiner") at its Elemis Spa, located at the Mohegan Sun casino in Uncasville, CT ("the Spa"), or who were employed by same within the previous six (6) years. These spa service providers (collectively, "the Claimants" or "the Claimant class") include, but are not limited to, all massage therapists, estheticians, nail technicians, hair stylists, and all other employees who provided skilled spa services to customers at the Spa.

2. Doreen Savaria resides in Connecticut. She worked at the Spa, most recently as lead esthetician, from June 2004 until her termination on December 23, 2011.

3. Crystal Raia resides in Connecticut. She worked at the Spa, most recently as a massage therapist, from May 2008 until her termination on February 27, 2012.

4. Respondent is a global provider of spa services and operations; a manufacturer and distributor of beauty products; and an educator of spa professionals. Respondent is incorporated in the Bahamas. Its subsidiary, Steiner Management Services, LLC, is a Florida-based limited liability company that performs administrative services for Respondent's business operations.

5. Heather Lunny is the former director of the Spa. At all times, she acted as Respondent's agent in its management of the Spa. Respondent is liable for all of Ms. Lunny's actions in her management of the Spa.

6. The named Claimants were terminated at the direction of Ms. Lunny after they assisted Mohegan Sun investigators in their investigation of a fraud perpetrated by Ms. Lunny and others against Mohegan Sun.

**The Claimant Class**

7. The Claimants were compensated by Respondent through a combination of wages, commissions from services provided, "service charges" from services provided, gratuities from customers, and commissions from products sold.

8. Respondent's manner of compensation of the Claimants was frequently changed at the sole discretion of Respondent's management, and it was rarely, if ever, put in writing.

9. The Claimants were the victims of a complex scheme by Respondent's management to deprive the Claimants of the commissions, gratuities, and other compensation to which they were entitled. This scheme gives rise to numerous causes of action.

10. The Claimant class is so numerous that joinder of all members is impracticable. Upon information and belief, there are over 40 spa service providers who work at the Spa or have worked at the Spa in the previous six years.

11. There are question of law and fact common to the class, including whether Respondent engaged in a concerted scheme to deprive the Claimants of compensation they were due.

12. The named Claimants' claims are typical of those of the class members. The named Claimants' claims encompass the challenged practices and conduct of Respondent. Their legal claims are based on the same legal theories as the putative class members'. The legal issues as to which laws were violated by Respondent's conduct apply equally to the named Claimants and to the class as a whole.

13. The named Claimants will fairly and adequately protect the interests of the class.

14. Common question of law and fact predominate over questions affecting only individuals, and a class arbitration is superior to other available methods for the fair and efficient adjudication of this controversy.

**Claim One: Conn. Gen. Stat. § 31-72 — Wages**

15. Paragraphs 1-14 are realleged and incorporated by reference herein.

16. Respondent failed to pay the Claimants the full compensation they were owed, in that Respondent, variously or in combination, failed to pay commissions owed to the Claimants on services provided and products sold; paid a lower commission rate on services provided and products sold than it had agreed to pay; revoked commissions paid to the Claimants under the false premise that a customer had demanded a refund of his or her service, when in fact no such refund was provided; failed to pay the Claimants when customers cancelled their appointments, even when Respondent collected cancellation fees from the customers; and calculated the Claimants' commissions and gratuities for their service using Respondent's discounted rate for the service, rather than the regular rate.

2

17. Respondent's failure to pay the Claimants the full compensation they were owed was done with bad faith, arbitrariness, and/or unreasonableness, insofar as Respondent knew or should have known that the Claimants were entitled to more compensation than they were paid.

18. The Claimants are owed their resulting economic losses and interest, as well as liquidated damages of twice the amount of wages due, and attorneys' fees and costs.

## Claim Two: Unjust Enrichment — "Service Charge" Gratuities

19. Paragraphs 1-18 are realleged and incorporated by reference herein.

20. Respondent charged a 20% "service charge" on all of its spa services.  This "service charge" was added automatically to customer invoices.

21. At the direction of Respondent, customers were told that the "service charge" was added to their bill as the gratuity.

22. It is standard practice in the spa industry and at Elemis Spa for customers to pay their service providers a gratuity, above and beyond the cost of their service.

23. Respondent's communications to the customers left the customers with the reasonable impression that the "service charge" was actually a gratuity that would be transferred in its entirety to the Claimant who provided the service to the customer.  It also left the customers with the reasonable impression that they had provided the gratuity that was standard in the industry.

24. The "service charge" was not transferred to the Claimants in total.  Instead, Respondent retained a percentage of the "service charge" and paid the remainder to the Claimants.  The percentage retained by Respondent ranged from 10% to 15% of the "service charge."

25. The Claimants were instructed not to discuss the "service charge" with their customers, thus inhibiting their ability to disabuse their customers of the customers' reasonable misapprehension that the "service charge" would be transferred in its entirety to the Claimant who provided the customer's service.

26. By retaining the gratuities that the customers intended to transfer to the Claimants, Respondent was benefitted.

27. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers was unjust.

28. Respondent's failure to transfer to the Claimants the full gratuities paid by their customers harmed the Claimants.

3

29. The Claimants are owed amounts equitably due, based on the evidence.

## Claim Three: Conversion — "Service Charge" Gratuities

30. Paragraphs 1-29 are realleged and incorporated by reference herein.

31. The Claimants had a property right in the "service charges" because they were provided by customers with the intent that they be transferred to the Claimants.

32. Respondent deprived the Claimants of an undetermined percentage of the "service charges" for an indefinite period of time.

33. The Claimants did not authorize Respondent to retain the undetermined percentage of the "services charges."

34. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

35. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

## Claim Four: Denial of Benefit to Third Party Beneficiary of Contract — "Service Charge" Gratuities

36. Paragraphs 1-35 are realleged and incorporated by reference herein.

37. Respondent formed a contract with its customers when the customers paid a "service charge" in consideration for the services provided by Respondent.

38. The contracting parties intended that Respondent would and did assume a direct obligation to the Claimants to pay them the entire service charge.

39. The contract between Respondent and the customers was intended for the benefit of the Claimants insofar as the "service charge" constituted additional compensation in the form of a gratuity.

40. The Claimants are owed the expectation value of the contracts, plus interest.

## Claim Five: Unjust Enrichment — Discounted Services

41. Paragraphs 1-40 are realleged and incorporated by reference herein.

42. Respondent frequently offered customers the opportunity to purchase services from the Spa at reduced rates, including on the website Travelzoo.com.

4

43. Although Respondent charged the customers a reduced rate for the services, the 20% service charge that Respondent assessed was calculated using the regular price of the services purchased.

44. When Respondent transferred a portion of the service charge to one of the Claimants, however, Respondent calculated the Claimant's share using the reduced price, rather than the regular price.

45. By retaining a portion of the service charge that should have been transferred to the Claimants, Respondent was benefitted.

46. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, was unjust.

47. Respondent's failure to transfer to the Claimants (at a minimum) the agreed-upon percentage of the service charge, as paid by their customers, harmed the Claimants.

48. The Claimants are owed amounts equitably due, based on the evidence.

## Claim Six: Conversion — Discounted Services

49. Paragraphs 1-48 are realleged and incorporated by reference herein.

50. The Claimants had a property right (at a minimum) in the "service charges" as calculated using the higher, regular rate, pursuant to their agreement with Respondent that they would be compensated, in part, with a percentage of the "service charge."

51. Respondent deprived the Claimants, for an indefinite period of time, of the difference between the "service charge" as calculated using the higher, regular rate, and the "service charge" as calculated using the discounted rate.

52. The Claimants did not authorize Respondent to retain the remaining portion of the "services charges."

53. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

54. The Claimants are owed the market value of their converted property at the time it was converted, or an amount that will fairly compensate them for the loss of their converted property, plus attorneys' fees and costs.

## Claim Seven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Extra Gratuities

55. Paragraphs 1-54 are realleged and incorporated by reference herein.

5

56. In addition to the gratuities that were automatically added to their bills, Elemis Spa customers also had the opportunity to give an additional gratuity to their service providers.  Customers were offered an envelope, into which they could seal this additional gratuity.  Customers who chose to provide this additional gratuity placed their money into the envelope, wrote the name of their service provider on the envelope, sealed the envelope, and placed it in a locked container at the Spa's front desk.  (In approximately December 2011, the envelopes were removed, but the locked container remained.)

57. Spa director Heather Lunny was the only person with a key to the locked container into which customers placed the extra gratuities for their service providers.

58. On numerous occasions, one or more Claimants witnessed customers place money in an envelope, write the Claimant's name on the envelope, seal the envelope, and place the envelope in the locked container.  When the Claimant later approached Ms. Lunny to retrieve the extra gratuity, Ms. Lunny told the Claimant that there was no envelope for him or her.

59. On information and belief, Ms. Lunny stole the envelopes and the money contained in them.

60. The Claimants had a property right in the extra gratuities placed in the envelopes by their customers because the extra gratuities were provided by customers with the intent that they be transferred to the Claimants.

61. Respondent deprived the Claimants of the extra gratuities for an indefinite period of time.

62. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

63. The Claimants did not authorize Respondent to retain the extra gratuities.

64. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

65. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

**Claim Eight: Statutory Theft, Conn. Gen. Stat. § 52-564 — Refunds**

66. Paragraphs 1-65 are realleged and incorporated by reference herein.

67. On numerous occasions, Respondent revoked commissions paid to the Claimants on the basis that customers whose services yielded commissions had complained that their services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

6

68. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

69. In reality, customers had not complained, and/or Respondent did not provide any refund to the customers.

70. Accordingly, the revocation of the Claimants' commission occurred under false pretenses.

71. The Claimants had a property right in the commissions they earned because the commissions were compensation for services rendered.

72. Respondent deprived the Claimants of the commissions for an indefinite period of time.

73. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

74. The Claimants did not authorize Respondent to retain the property.

75. The deprivation harmed the Claimants by depriving them of property to which they were entitled.

76. The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

## Claim Nine: Breach of Contract — Refunds

77. Paragraphs 1-76 are realleged and incorporated by reference herein.

78. As part of the compensation agreement between the Claimants and Respondent, Respondent paid the Claimants as commissions a percentage of the cost of the services they provided to the Spa's customers.

79. When the Spa offered discounted services to customers, Respondent calculated the Claimants' commissions as a percentage of the discounted price, rather than the regular price.

80. On numerous occasions, Respondent revoked commissions paid to Claimants on the basis that the customers whose services yielded the commissions had complained that the services (or some other aspect of the Spa) were unsatisfactory and had demanded a refund.

81. Respondent accomplished this revocation by withholding pay from the Claimants' subsequent paychecks.

82. Even though the Claimants had only been paid commissions on the discounted price, Respondent withheld from their subsequent paychecks the commissions that would have been paid on the regular-priced service.

83. Accordingly, Respondent withheld from the Claimants more money than it had originally paid the Claimants to perform the services.  The result was that the Claimants actually paid Respondent to perform the services.

84. Respondent breached its compensation agreement with the Claimants insofar as it withheld more money than it had originally paid the Claimants to perform the services.

85. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Ten: Breach of Contract — Poker Room**

86. Paragraphs 1-85 are realleged and incorporated by reference herein.

87. Throughout 2009, Respondent sent several Claimants to provide chair massages in the Poker Room of the Mohegan Sun casino.

88. Respondent told the Claimants that they would be paid $1 for every minute of massage they provided.  This rate was substantially higher than the rate of compensation that the Claimants received for their regularly-scheduled services at the Spa.

89. The Claimants accepted Respondent's offer and agreed to provide services in the Poker Room in exchange for compensation of $1 for every minute of massage they provided.

90. The customers in the Poker Room paid the Claimants with cash or casino chips (which could be traded with the casino for cash).  The Claimants gave Respondent all of the cash and chips they earned, as well as a list of the services they provided.

91. Respondent failed to pay the Claimants $1 per minute for the services they provided.

92. Respondent breached its agreement with the Claimants insofar as it failed to pay the Claimants the agreed-upon rate of $1 per minute for the services provided.

93. The Claimants are owed the expectation value of the contracts, plus interest.

**Claim Eleven: Statutory Theft, Conn. Gen. Stat. § 52-564 — Additional Theft**

94. Paragraphs 1-93 are realleged and incorporated by reference herein.

95. Upon information and belief, Heather Lunny used a variety of unlawful tactics to steal additional money from some or all of the Claimants.

8

96. For example, in approximately May 2010, Respondent sent several Claimants to provide chair massages at a corporate meeting of Best Buy, being held at Mohegan Sun casino. The customer who paid Best Buy's invoice left a considerable gratuity (approximately $2800) for the Claimants, in addition to the Claimants' other compensation for the services they provided. Best Buy paid with a credit card. Upon information and belief, Ms. Lunny refunded the Best Buy gratuity at least twice and recharged the gratuity each time as cash. Ms. Lunny did this to facilitate her theft of some or all of the gratuity. Ms. Lunny did in fact steal some or all of the gratuity. As a result, the Claimants did not receive some or all of the gratuity they were given.

97. The Claimants had a property right in the money stolen by Ms. Lunny because they either earned the funds from Respondent as part of their compensation or were given the money by their customers with the intention that the Claimants retain the property.

98. Respondent deprived the Claimants of the property for an indefinite period of time.

99. The deprivation was intentional in that Respondent intended to deprive the Claimants of their property with knowledge that the property belonged to the Claimants.

100.     The Claimants did not authorize Respondent to retain the property.

101.     The deprivation harmed the Claimants by depriving them of property to which they were entitled.

102.     The Claimants are owed treble the value of the property stolen from them, plus attorneys' fees and costs.

## Claim Twelve: Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* — Failure to Pay Overtime Premium

103.     Paragraphs 1-102 are realleged and incorporated by reference herein.

104.     During one or more weeks of the Claimants' employment with Respondent, one or more Claimants worked in excess of forty hours in a given week, yet the Claimants were not compensated at the statutory rate of one-and-one-half times their regular rate of pay for all hours in excess of forty hours in a given week.

105.     Respondent failed to pay any overtime premium for some hours worked in excess of forty hours in a given week.

106.     Respondent also failed to properly calculate the Claimants' regular rate of pay, because Respondent failed to include all forms of compensation the Claimants did receive or were entitled to receive. Accordingly, when Respondent did pay Claimants their overtime premiums, the premiums were smaller than the Claimants were entitled to receive under the FLSA, given their regular rate of pay.

107.     Respondent's conduct in this regard was a willful violation of or showed reckless disregard for the FLSA as evidenced by its failure to compensate the Claimants at the statutory rate.

108.     Respondent's conduct in violation of the FLSA was unreasonable, arbitrary, and/or in bad faith.

109.     The Claimants are owed compensation for all overtime hours worked, interest, liquidated damages, and attorneys' fees and costs.

## Claim Twelve: Connecticut Minimum Wage Act (CMWA), Conn. Gen. Stat. §§ 31-58 *et seq.* — Failure to Pay Overtime Premium

110.     Paragraphs 1-109 are realleged and incorporated by reference herein.

111.     Based on the foregoing, Respondent's failure to pay the Claimants properly-calculated overtime premiums was a willful violation of the CMWA.

112.     Respondent's conduct in violation of the CMWA was unreasonable, arbitrary, and/or in bad faith.

113.     The Claimants are owed compensation for all overtime hours worked, interest, penalty damages, and attorneys' fees and costs.

Dated: September 11, 2012                **RESPECTFULLY SUBMITTED, THE CLAIMANTS**

                                  By:   */s/ Joseph D. Garrison*
                                        Joseph D. Garrison
                                        Ethan A. Levin-Epstein
                                        Joshua R. Goodbaum
                                        GARRISON, LEVIN-EPSTEIN, RICHARDSON,
                                              FITZGERALD & PIRROTTI, P.C.
                                        405 Orange Street
                                        New Haven, CT  06511
                                        Tel.:   (203) 777-4425
                                        Fax:    (203) 776-3965
                                        jgarrison@garrisonlaw.com
                                        elevin-epstein@garrisonlaw.com
                                        jgoodbaum@garrisonlaw.com

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION

Employment and Class Action Arbitration Tribunal

Doreen Savaria and Crystal Raia, individually
and on behalf of similarly situated employees
of Elemis Spa,

Claimants

v.

Steiner Leisure Limited,

Respondent

Case No. 12-460-454-12

## PARTIAL FINAL CLAUSE CONSTRUCTION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the parties' arbitration agreement, and having been duly sworn, and having heard the allegations and arguments of the parties, do hereby issue this Partial Final Clause Construction Award:

### Background

According to the September 11, 2012 Demand for Arbitration filed with the American Arbitration Association ("AAA"), named Claimants Doreen Savaria and Crystal Raia ("Claimants"), individually and on behalf of others, are suing Respondent Steiner Leisure Limited ("Respondent") with causes of action based on various statutes and the common law of Connecticut, as well as one cause of action for alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201 et seq. All of their

claims relate to aspects of their compensation as employees of Respondent at its Elemis Spa in Uncasville, Connecticut.

That employment was subject to Respondent's "Employment Arbitration Policy ("the Agreement"), which states that "[a]ny actionable employment disputes will be resolved by arbitration conducted under the auspices of the American Arbitration Association," and that arbitration "shall be administered by [AAA] under its arbitration rules."

In accordance with the Agreement, the case is proceeding under AAA's Employment Arbitration Rules (the "Employment Rules"), as supplemented by AAA's Supplementary Rules for Class Arbitrations (the "Supplementary Rules").[1] Under Supplementary Rule 3, the first step in the resolution of this dispute is for the "arbitrator [to] determine . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class," which is an issue known as "clause construction."[2]

### Procedural History

In analyzing the clause construction issue here, the chronology of the case thus far is important and will be discussed in some detail.[3]

In response to the Demand for Arbitration, on December 7, 2012 Respondent filed its "Answering Statement and Request for an Immediate Clause Construction Hearing from Respondent Steiner Leisure Limited" (emphasis added). In that extensive pleading,

---

[1] See discussion and legal authorities cited in Southern Communications Services, Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011), aff'd on other grounds, ___ F.3d ___, 2013 WL 3481467 (11th Cir. 7/12/13).

[2] The next question, under Supplementary Rule 4, of whether a class arbitration will actually be certified, and on what terms, is not part of this analysis. Any arguments as to which members of the alleged class would participate in and be bound by the outcome of class arbitration would be considered at that later juncture.

[3] This chronology is copied from the October 29, 2013 Order Denying Stay; in light of the availability of immediate judicial review of this award under Supplementary Rule 3, the procedural history is repeated here in its entirety rather than being merely cross-referenced.

2

Respondent alleged 26 "Affirmative and Other Defenses," and further stated its position
(p. 2) that, in accordance with Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130
S. Ct. 1758 (2010) ("Stolt-Nielsen"), "Claimants must arbitrate their claims individually
because they signed an arbitration agreement that reflects an intent to provide
individualized arbitration and does not explicitly provide for class arbitration."

Respondent also expressly "[r]equest[ed] this threshold issue be addressed at a Clause
Construction hearing pursuant to Rule 3" of the Supplementary Rules (p. 2), and prayed
for "an immediate Clause Construction hearing" (p. 8).

Pre-hearing conference calls were thereafter held on January 12 and 31, 2013, to
discuss, inter alia, scheduling for the clause construction phase of the arbitration. As
reflected in Case Management Orders Nos. 1-2, in light of the Supreme Court's grant of
certiorari in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 786 (12/7/12), all counsel
agreed that it would make sense to stay the clause construction phase until that case was
decided.

After the Supreme Court rendered its decision, 133 S. Ct. 2064 (6/10/13)
("Sutter"), I sent an email message to arrange for another conference call to "set a
schedule for the clause construction briefing." Respondent said nothing about there
being no arbitral authority to decide clause construction, and all counsel agreed to hold
the conference on July 25, 2013. That call did not take place, but Claimants' counsel
subsequently provided to AAA (and I confirmed in an August 1, 2013 email message) a
clause construction schedule that had been discussed and agreed to by both sides:

Claimants' brief was due by August 23, Respondent's opposition by September 13, and reply by September 27, 2013.[4]

Later on August 1, 2013, Respondent's counsel, for the first time, notified me of its new position that the Agreement does not authorize any arbitrator to decide the clause construction issue and that, as soon as Claimants filed their clause construction brief, Respondent would go to court seeking a ruling that only a court, not an arbitrator, has jurisdiction to issue a clause construction determination in this case. Respondent has not attempted to reconcile this position with its entirely contradictory prior conduct and pleading.

Claimants filed their clause construction brief on August 15, 2013 and then agreed to Respondent's September 11, 2013 request to extend the time for Respondent's opposition from September 13 until September 20, 2013. In that opposition, Respondent did not address the clause construction arguments made by Claimants; it instead merely stated that it "does not agree that any arbitrator has the power to decide whether [the Agreement] authorizes class or collective arbitration," and that it had that day commenced the court action for declaratory and injunctive relief because the Supreme Court's opinions in Sutter and Stolt-Nielsen "compel[led]" it to do so.[5]

On October 1, 2013, Claimants submitted their reply brief, urging that the arbitrator should proceed to issue a clause construction determination in their favor, in light of the fact that Respondent had not sought a stay from the arbitrator and that no

---

[4] At Respondent's request, I added to the schedule an opportunity for Respondent, within three business days of receipt of the reply, to apply for permission to submit a sur-reply.

[5] Respondent also simultaneously submitted a First Amended Answer in this arbitration. The only changes in the amended pleading were the deletion of the prior request for an immediate clause construction ruling and the addition of language relating to Respondent's new position about the arbitrator's not having authority to decide clause construction. Claimants have not raised any objection to the filing of the First Amended Answer.

court had enjoined Claimants' normal pursuit of the case in arbitration under the applicable AAA Rules. Respondent did not request permission for any sur-reply.

Later on October 1, 2013, Respondent's counsel wrote that, "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ." Despite the unusual timing, I accepted that last message as a request for a stay, and sought Claimants' position.

In their October 9, 2013 opposition, Claimants argue that, as set forth in their clause construction brief (pp. 3-5), there is ample authority for me to conclude that the parties have already empowered me to decide the clause construction issue. Citing Sutter, 133 S. Ct. at 2068 n.2, they further point to the fact that, under Supplementary Rule 3,[6] whatever clause construction award I may issue is subject to immediate judicial review, in which Respondent could, if it were displeased with the ruling, obtain judicial consideration of both its new arbitrability issue and the substance of the clause construction determination. They contend that Respondent would thus "lose nothing" if the arbitration moves forward to a clause construction award, whereas Claimants, who began pursuit of their individual and class claims over a year ago, could face a further lengthy delay if the arbitration is stayed pending resolution of the court action with possible appellate proceedings.

Respondent's October 9, 2013 reply was that it declines to "present the arguments it made to the Court to, or seek the requested relief from, [the arbitrator]." Respondent thus intentionally and unilaterally chose to forego the scheduled (and extended)

---

[6] Supplementary Rule 3 states that, as soon as the clause construction award is issued, the "arbitrator shall stay all proceedings . . . for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate" the award.

5

opportunity to persuade the arbitrator regarding its positions on arbitrability and clause construction, preferring instead to seek and wait for a court ruling.

By Order dated October 29, 2013, I denied the request for a stay, and the case is now ready for a clause construction determination.

## Issues to Be Determined

1. Have the parties given the arbitrator authority to decide the Supplementary Rule 3 clause construction issue?

2. If they have given that authority, does the Agreement allow for the possibility that this arbitration could proceed on a class and/or collective basis.[7]

### 1. The Arbitrator Has Authority to Decide Clause Construction in This Case

AAA's Employment Rule 6 states that the "arbitrator shall have the power to rule on . . . her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement . . . [, and] that any objection to the jurisdiction of the arbitrator or to the arbitrability of a claim" must be made "no later than the filing of the answering statement that gives rise to the objection." Ignoring Employment Rule 6, Respondent now contends that the parties have not already granted authority to the arbitrator to render a clause construction award, and that only a court may do so. At this stage of the proceedings, that argument is neither cognizable nor correct.

---

[7] As set forth above, the record before me does not include substantive input from Respondent on either of these questions, and that has caused me to pause and consider the propriety of proceeding to decide them at this time. For the following reasons, my conclusion is that I should do so. The absence of input from Respondent is not due simply to an inadvertently-missed deadline: to the contrary, Respondent knowingly allowed the agreed-upon briefing schedule to pass by. It has stated that it will address the arbitrability and clause construction issues before me only if and when the court decides that I am authorized to hear them, and the possible consequences (and attendant risks) of that deliberately-chosen strategy must have been apparent. In these circumstances, it would not be fair to Claimants – nor appropriately custodial of the arbitration process – for me to allow one party to unilaterally halt the arbitration by deciding not to adhere to its prior commitment and insistence that the arbitrator rule on clause construction. I acknowledge that Respondent's counsel's October 1, 2013 message said it "does not seek [my] consideration or ruling on the gateway class/collective action arbitrability issue," but I also see that position as undeniably trumped and refuted by the fact that Respondent has already agreed that I should do so.

6

Here, as in Southern Communications Services, Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337 (N.D. Ga. 2011), aff'd on other grounds, ___ F.3d ___, 2013 WL 3481467 (11ᵗʰ Cir. 7/12/13), "the parties . . . specifically granted the arbitrator the power to interpret their agreement and decide whether it authorized class arbitrations, both in writing and by their conduct" (emphasis added). The following re-cap of Respondent's conduct, as well as of the language of the Agreement, confirms that there was such an agreement regarding arbitral jurisdiction over clause construction.

Prior to its sudden about-face on August 1, 2013, Respondent had proceeded without any jurisdictional objection to the fact that, under Supplementary Rule 3, the arbitrator's first task would be to decide clause construction. That was evident in Respondent's December 7, 2012 Answering Statement, where it sought an "immediate clause construction ruling. It was also seen in the two conference calls in January 2013 (as confirmed in Case Management Orders Nos. 1-2), and in the ensuing communications in which Respondent participated for the clause construction scheduling.

Even when the stipulated postponement of clause construction ended after the June 10, 2013 Sutter decision, Respondent continued on track toward having the arbitrator decide clause construction, with no attempted reservation of any purported right to raise a jurisdictional objection. Then, almost two months after Sutter, Respondent suddenly, and without any explanation, made a 180-degree turn and said that the Agreement does not allow the arbitrator to decide clause construction, which was a direct and total contradiction of what Respondent had previously committed to do.

Under AAA's Employment Rule 6, an objection to arbitral jurisdiction over the clause construction issue should have been made when Respondent filed its Answering

7

Statement on December 7, 2012. At that time (and for months thereafter), however, Respondent did not just fail to make such an objection - to the contrary, it was actually affirmatively asking the arbitrator to "immediately" (pp. 2, 8) do what it now says the arbitrator does not have the power to do. That makes no sense.

In short, it is simply too late under Employment Rule 6 – and too inconsistent – for Respondents now to articulate for the first time a contrary position that clause construction is a gateway "arbitrability" issue that should be reserved for judicial determination. See Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (plurality opinion).[8] There is no justification for this untimely jurisdictional challenge regarding clause construction, and Respondents are estopped from raising it.

Furthermore, even if it were allowable, the argument is meritless. The Agreement expressly provides for "arbitration administered by the [AAA] under its arbitration rules," which also include AAA's Supplementary Rules for Class Arbitrations.[9] Supplementary Rule 3 expressly commits the clause construction issue to the arbitrator: "the arbitrator shall determine as a threshold matter, in a reasoned, partial

---

[8] The question as to who should decide clause construction is not new in the law of arbitrability. In Stolt-Nielsen, 559 U.S. 662, 680 (2010), the Supreme Court "made clear that [it had] not yet decided whether the availability of class arbitration is a question of arbitrability" that would ordinarily be reserved for a court. As the Supreme Court noted in Sutter, Stolt-Nielsen had "flagged" this as a possible question of arbitrability, and Sutter confirmed that the issue remains an open question. 133 S. Ct. at 2068 n.2. Sutter thus did not change the law on this question of arbitrability; it merely noted what had been for years a question unanswered by the Supreme Court. Furthermore, even before Sutter, in Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 123-24 (2d Cir. 2011), cert. denied, 132 S. Ct. 1742 (2012) (also an employment case), the Second Circuit had identified a "threshold" issue of "whether the parties had submitted to the arbitrator the question of whether their agreement permitted class arbitration," and had found that the employer had done so (as here) by expressly asking the arbitrator to issue a clause construction ruling in its favor. Jock had also presaged (and was effectively affirmed by) Sutter in saying that vacatur of an award is not proper "as long as the arbitrator is even arguably construing and applying the contract and acting within the scope of his authority." Id. at 122. And that Jock holding itself was not new, having been preceded by several similar Second Circuit decisions. See id. at 121-25.

[9] See n.1, supra.

8

final award on the construction of the arbitration clause, whether the arbitration clause permits the arbitration to proceed on behalf of . . . a class" (emphasis added).

Thus, in choosing to arbitrate under AAA's rules, Respondent has already committed to having clause construction decided by the arbitrator, not by the court. Although an issue of arbitrability is generally one for a court to decide, "when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co, Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (based on language identical to Employment Rule 6); accord, T.Co Metals, LLC v. Dempsey Pipe and Supply, Inc., 592 F.3d 329, 344-45 (2d Cir. 2010); Emilio v. Sprint Spectrum L.P., 508 Fed. Appx. 3, 4-5 (2d Cir. 2013), Southern Communications, supra, 829 F. Supp. 2d at 1337-38,

Both Respondent's own prior conduct in this case and the Agreement itself confirm that the parties agreed on having the arbitrator decide clause construction.

### 2. The Agreement Allows for Class/Collective Arbitration

The current legal standard for determining if an arbitration contract allows for class arbitration is found in Stolt-Nielsen, supra, 559 U.S. 662 (2010). The question is not whether the contract forbids class arbitration, but whether it allows it: a "party may not be compelled under the [Federal Arbitration Act, 9 U.S.C. Secs. 1 et seq.] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. at 684 (emphasis in original). Such an agreement can be explicit or implicit, but the plain existence of an agreement to arbitrate cannot give rise to an

9

inference that there was necessarily an agreement to arbitrate class as well as individual claims. Id.

In Stolt-Nielsen, the parties stipulated both that their arbitration contract was "silent" regarding (i.e., it did not contain any express mention of) class arbitration, and that they had not made any agreement, one way or the other, on the subject.[10] Because of the latter aspect of their stipulation, the Supreme Court had no occasion to decide "what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," and Stolt-Nielsen thus did not answer that specific question. Id. at n.10. It is clear, however, that the omission of the specific words "class" or "class action" is not necessarily determinative of a lack of intent to authorize class arbitration; the rest of the language used may – or may not - point to an agreement that allows for class arbitration. See e.g., Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 222-25 (3d Cir. 2012), aff'd, 133 S. Ct. 2064 (2013); Fantastic Sams Franchise Corp. v. FSRO Ass'n, 683 F.3d 18, 22 (1st Cir. 2012); Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 124 (2d Cir. 2011) ("Jock"), cert. denied, 132 S. Ct. 1742 (2012); accord, Southern Communications, supra, 829 F. Supp.2d at 1335-37.

The Federal Arbitration Act ("FAA"), 9 U.S.C. Sec. 2, requires enforcement of the Agreement according to its own terms, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985), and the analysis begins with an examination and interpretation of the language actually used in the Agreement. Under the FAA, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

---

[10] There is no such stipulation in this case; although they differ as to what their agreement was, both sides contend there was an agreement as to whether class arbitration would or would not be allowed.

10

waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).

Here, the Agreement, drafted by Respondent and apparently imposed as a condition of employment, says in relevant part:

"Any actionable employment disputes will be resolved by arbitration conducted under the auspices of [AAA] . . . . and all parties agree that a neutral third party will have complete and binding authority to decide a dispute instead of a court of law."

"[Arbitration] shall be the exclusive method of resolving any and all disputes and the employee waives their [sic] right to have such disputes resolved through a trial by jury."

"[Arbitration is] the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of or relating to employment . . . , including, but not limited, [sic] to . . . any . . . federal, state or local statute, regulation or common law doctrine . . . ."

"Any claim arising out of or relating to the employee's employment . . . shall be settled by arbitration . . . administered by [AAA] under its arbitration rules."

"The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA . . . . The arbitrator shall have the power to award all relief available under federal, state, and common law."

Interpretation of arbitration commitments such as these is governed by state law contract principles and a determination of the parties' intent.[11] Jock, 646 F.3d at 126. Here, I find the contractual language to be undeniably broad and purposely expansive.

___

[11] "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., 252 Conn. 479, 498 (2000).

11

The Agreement creates a comprehensive commitment to arbitrate – making "[a]ny actionable employment disputes" and "any claim arising out of or relating to . . . employment" subject to arbitration, which "shall be the exclusive method of resolving any and all disputes" and is "the required and exclusive forum for the resolution of all actionable disputes." It expressly incorporates "any and all" employment-related claims arising under federal, state or local statutes or under common law, and it makes no attempt to limit arbitral jurisdiction over any such claims.[12]

Significantly, the Agreement also expressly vests the arbitrator with "the power to award all relief available under federal, state, and common law" (emphasis added). That language obviously reinforces the Agreement's express incorporation of AAA's Employment Rule 39(d), which says that the "arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court . . . in accordance with applicable law" (emphasis added). The thrust of the contractual language is thus that employees are precluded from going to court, but they will not be disadvantaged in doing so because arbitration would offer them the same opportunities they would have in court.

Both the language of the Agreement and Employment Rule 39(d) thus evoke a similarity with the arbitration contract that was at issue in Jock. There, the Second Circuit upheld an arbitrator's conclusion that, although the contract said nothing about class arbitration, class claims were nevertheless allowed based on other contractual

---

[12] Although, as the arbitrator in Jock noted, an employee's intent in a contract such as this may be "problematic" to determine, 646 F. 3d at 117, it is reasonable to assume that employees would think that their only concession was that if any legal employment disputes arose, they would have to be resolved in arbitration rather than in court with a right to a jury trial. By analogy with the situation in Carroll v. Aetna Cas. & Sur. Co., 189 Conn. 16, 19-20 (1983), it may therefore be fair to say that the Agreement constitutes an "unrestricted" submission to arbitration of any and all actionable employment disputes, and there is no question that all of the causes of action alleged here are employment-related.

12

language assuring that "the arbitrator has the 'power to award any types of . . . relief that would be available in a court'" (emphasis added). 646 F.3d at 126-27.

The actual issue presented in Jock was whether the arbitrator had exceeded her powers in reaching that decision (id. at 123-24), and the Second Circuit held that she had not. Significantly, however, the majority also chose to augment its holding with dictum explaining why the arbitrator's decision allowing class arbitration would be a proper and reasonable interpretation of the contract.[13] Id. at 125-27. Relying on the contractual language, the majority said that "to deny the [employees] the right to seek classwide relief would deny them access to at least one type of legal or equitable relief available to them in court – namely, certification to pursue classwide relief." Id. at 126. The majority in Jock thus concluded that entitlement to bring class claims was an integral part of what the contract offered the employees – an opportunity to pursue in arbitration that which they would be entitled to seek in court (id. at 126-27), which is what Rule 39(d) also affords here.[14]

In accordance with the mandate of Stolt-Nielsen, I have thus examined and interpreted the language of the Agreement. Guided by Jock and by Employment Rule

---

[13] Although the arbitrator's decision in Jock was rendered before the Supreme Court ruled in Stolt-Nielsen, it was clear that the Second Circuit cautiously and thoroughly applied the Stolt-Nielsen standards in reviewing her decision.

[14] The Jock majority also noted that the applicable state law did not "bar class arbitration." 646 F.3d at 124. That would apparently also be true in this case, where Connecticut law "favor[s] class actions as an efficient mechanism to adjudicate claims" in appropriate circumstances. See TES Franchising v. Kastel, 2007 WL 1748141 at *4 (Conn Super. 5/25/07). Furthermore, the Connecticut Supreme Court has held that a New York statute barring a plaintiff from pursuing class claims is substantive, not procedural, inasmuch as it "abridges the rights of individuals to bring class actions." Weber v. U.S. Sterling Securities, Inc., 282 Conn. 722, 738-39 (2007). Claimants here are seeking to enforce substantive statutory and common law rights which, under the theory of Weber, would include the right to pursue class-wide remedies and relief. Respondent's September 20, 2013 citation to Sutherland v. Ernst & Young, LLC, 2013 U.S. App. LEXIS 16513 (2d Cir. 8/9/13) as a "compelling reason" for its court action does not address or diminish the holding in Weber, and also misconstrues the holding in Sutherland, which was that the right to proceed collectively under the FLSA is waivable (as it was expressly done in that case) in the appropriate circumstances. Reliance on Sutherland also ignores the fact that the FLSA is the basis of just one of twelve causes of action being asserted in this case.

13

39(d) (as incorporated into the Agreement), I find that the claims asserted by Claimants in this case do fall within the scope of the Agreement and are subject to arbitral jurisdiction.

\* \* \* \* \*

### Partial Final Award

The Agreement is hereby construed as allowing Claimant to include in this arbitration the pursuit of class and/or collective claims.[15] In accordance with Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, I retain jurisdiction and order that all proceedings herein be stayed for a period of 30 days from issuance of this Partial Final Award so that any party may seek to have this decision confirmed or vacated in a court of competent jurisdiction. Lifting of the stay and resumption of the proceedings will be as specified in Supplementary Rule 3.

DATED: October 30, 2013

Edith N. Dinneen
Arbitrator

I, Edith N. Dinneen, do hereby affirm, upon my Oath as Arbitrator, that I am the individual described in and who executed this instrument, which is my Partial Final Clause Construction Award.

DATED: October 30, 2013

Edith N. Dinneen
Arbitrator

---

[15] Obviously, no determination is being made at this time as to whether any class certification would be appropriate, or whether Claimant would prevail on any individual or class claims. See Jock, 646 F.3d at 127 n.3.

14

# EXHIBIT D

## AMERICAN ARBITRATION ASSOCIATION

_____
DOREEN SAVARIA and CRYSTAL RAIA,    :
Individually and on Behalf of All Other    :    AAA Case No.:  12-460-454-12
Similarly Situated Employees of Elemis Spa,  :
                          :
        Claimants,        :
                          :
v.                              :
                          :
STEINER LEISURE LIMITED,        :
                          :
        Respondent.      :    August 15, 2013
_____:

### CLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF CLASS ARBITRATION

      Respondent Steiner Leisure Limited chose exceptionally broad language for the arbitration clause that it included in its employee handbook.  That clause, which commits "any and all disputes" to the arbitration process, demonstrates Steiner's intent to permit its employees to file claims on a class-wide basis.  Numerous principles of Connecticut law further confirm this conclusion.  Accordingly, the Claimants respectfully request a partial final clause construction award allowing them to proceed with their class arbitration.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

      According to the allegations in the Claimants' demand for arbitration, the Elemis Spa at the Mohegan Sun casino in Uncasville, CT ("the Spa") was not a pleasant place to work.  The Spa's management frequently changed employees' manner, method, and amount of compensation at its sole discretion and often without notice, let alone in writing.  It failed to pay commissions; paid less than it had agreed to pay; and revoked previous payments under the false premise that a customer had demanded a refund for her service.  It automatically added a 20% "service charge" to all customer invoices and then forbade its employees from informing the

customers that this charge was not a gratuity.  And when a customer left an additional gratuity,

the Spa's director often stole it.  (*See* Exh. A, Demand (Sept. 11, 2012).)

In September 2012, Doreen Savaria and Crystal Raia — both former treatment providers

at the Spa — filed this arbitration on behalf of themselves and all other similarly situated Spa

employees, seeking compensation for the myriad forms of theft, conversion, and other

misconduct they sustained at hands of the Spa's management.  (*Id.*)  In filing their arbitration

demand, the named Claimants reviewed and relied upon the arbitration clause in the Respondent-

promulgated handbook.  The arbitration clause provided, in relevant part:

### Purpose

Any actionable employment disputes will be resolved by arbitration conducted
under the auspices of the American Arbitration Association ("AAA"). The term
"arbitration" means that all parties agree that a neutral third party will have
complete and binding authority to decide a dispute instead of a court of law.
Private arbitration is generally quicker and less costly for all parties than
litigation. For these reasons, the Company has adopted the Employment
Arbitration Policy.

. . .

The employee should further understand that arbitration shall be the exclusive
method of resolving any and all disputes, and the employee waives their right to
have such disputes resolved through a trial by jury.

### Scope

The policy makes arbitration the required and exclusive forum for the resolution
of all actionable disputes relating to or arising out of employment or the
termination of employment (and which are not resolved by the internal anti-
harassment procedure), including, but not limited, to claims, demands or actions
under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the
Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the
Americans with Disabilities Act, the Employee Retirement Income Security Act
of 1974 and all amendments thereto, the Fair Labor Standards Act, and any other
federal, state or local statute, regulation or common law doctrine, regarding
employment discrimination, conditions of employment compensation, benefits, or
termination of employment. The policy does not require that the Company follow

2

the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination.

### Arbitration Rules & Procedures

Any claim arising out of or relating to the employee's employment or separation there from shall be settled by arbitration. Arbitration under the policy shall be administered by the American Arbitration Association ("AAA") under its arbitration rules and judgment on the award rendered by the arbitrator and may be entered in any court having jurisdiction.

. . .

### Scope of Relief

The arbitrator shall be governed by all applicable federal and state laws as well as the Employment Rules of AAA. The arbitrator shall be bound by all applicable statutes of limitation and/ or repose. The arbitrator shall have the power to award all relief available under federal, state, and common law.

(Exh. B, Employment Arbitration Policy.)

Following the selection of the Arbitrator, the parties agreed in February 2013 to

stay the clause construction phase of the arbitration pending the U.S. Supreme Court's

decision in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 786 (Dec. 7, 2012), which

addressed the circumstances under which an arbitrator could authorize class arbitration.

(Exh. C, Case Mgmt. Order No. 2 (Feb. 2, 2013).)

## II.   ARGUMENT

### A.   The Contract Commits the Issue of Clause Construction to the Arbitrator.

As an initial matter, it is the responsibility of the Arbitrator to decide whether

Respondent's arbitration clause authorizes the named Claimants to pursue arbitration on behalf

of a class of employees.

The issue of arbitrability is committed to the Arbitrator "if the parties clearly and unmistakably [so] provide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).[1] The parties can so provide in a number of ways. One way for them to do so is to incorporate into their agreement arbitration rules that establish that the Arbitrator will decide all issues of arbitrability. *See, e.g.*, *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.")

That is what occurred here. Respondent's arbitration clause states that any arbitration "shall be administered by the American Arbitration Association ('AAA') under its arbitration rules." (Exh. B.) And Rule 3 of the AAA's Supplementary Rules for Class Arbitrations in turn state that, in a putative class arbitration, the Arbitrator will decide whether the arbitration clause authorizes class proceedings:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").

AAA Supp. Rules for Class Arbs., Rule 3 (Oct. 8, 2003) (Exh. E at 2); *see also Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1765 (2010) (describing Class Rule 3).

The Second Circuit has repeatedly held that the explicit incorporation of private arbitration rules that delegate the duty of clause construction to the Arbitrator is sufficient to effectuate such a delegation. *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5-6 (2d Cir. 2013) (holding "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator" by explicitly incorporating JAMS rules, which commit issues of arbitrability to

---

[1] Copies of all judicial opinions cited herein are attached at Exhibit D.

arbitrator); *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344-45 (2d Cir. 2010) (holding that, since "ICDR Article 36 provides that 'the tribunal shall interpret and apply these Rules insofar as they relate to its powers and duties,' . . . the parties' adoption of the ICDR Articles, including Article 36, in their arbitration agreements provides a 'clear and unmistakable' expression of their intent to allocate to the arbitrator the task of interpreting the scope of his powers and duties"); *Contec Corp. v. Remote Solution Co.*, 398 F.3d at 208.

Accordingly, by incorporating the AAA's Rules, including Class Rule 3, the parties here have agreed that the Arbitrator shall determine the scope of her authority to adjudicate this putative class arbitration.

### B. The Parties Agreed to Class-Wide Arbitration.

The breadth of Respondent's arbitration clause and the Connecticut law that informs its interpretation demonstrate that the parties intended to permit class arbitration of their disputes. *Cf. Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 126 (2d Cir. 2011) ("[W]here [an arbitration] agreement contains what is argued to be an implicit agreement to submit to class arbitration, the arbitrator must necessarily look to state law principles of contract interpretation in order to divine whether such intent exists.").

Consider, first, the language of the agreement.  *See, e.g.*, *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys.*, 252 Conn. 479, 498 (2000) ("A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction."). Simply put, the language could not be broader.  It provides that "[a]ny claim arising out of or relating to the employee's employment or separation there from [sic] shall be settled by arbitration," and that arbitration is "the exclusive method of resolving any and all disputes."

(Exh. B (emphases added).)  It "makes arbitration the required and exclusive forum for the resolution of all actionable disputes relating to or arising out of employment or the termination of employment."  (*Id.*)  It charges the Arbitrator with resolving "[a]ny actionable employment disputes" and permits her "to award all relief available under federal, state, and common law." (*Id.*)  Importantly, the agreement does <u>not</u> exclude from its purview <u>any</u> causes of action, claims, forms of litigation, or types of relief.  (*See id.*)

Under Connecticut contract law, Respondent's promulgation of such a universal arbitration clause demonstrates its intention to arbitrate all available causes of action.  *See Carroll v. Aetna Cas. & Sur. Co.*, 189 Conn. 16, 20 (1983) ("Where the language of the arbitration clause indicates an intention on the part of the parties to include all controversies which may arise under their agreement, and where the record reveals no specific questions which the parties submitted to the arbitrator, the submission will be construed as unrestricted.").  In other words, based on Connecticut's default rules, the unrestricted language Respondent chose for its arbitration clause evinced its intent to allow for class arbitration.

Numerous arbitrators have held that similarly broad language authorizes class proceedings.  In the U.S. Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*, for example, the arbitration clause provided: "No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator."  133 S. Ct. 2064, 2067 (2013).  The Arbitrator — in a ruling eventually upheld by the Supreme Court — decided that the contract authorized class arbitration, noting that "[t]he 'intent of the clause' was 'to vest in the arbitration process everything that is prohibited from the court process.'"  *Id.* at 2067-68; *accord, e.g.*, *Benson v.*

6

*CSA*, AAA Case No. 11-160-M-02281-08 (Jul. 6, 2010) (Meyerson, Arb.) (ruling that arbitration clause mandating that "any dispute or claim relating to or arising out of the employment relationship" be arbitrated logically encompassed class arbitrations); *see also Hill v. iMergent, Inc.*, AAA Case No. 11-434-00318-08 (Feb. 23, 2009) (Dinneen, Arb.); *Walters v. Palm Harbor Homes*, AAA Case No. 11-421-002782-06 (Jan. 17, 2008) (Dinneen, Arb.); *Nichols v. Fanfare*, AAA Case No. 11-160-Y-01780-06 (Jun. 14, 2007) (Dinneen, Arb.).[2]  Accordingly, the sweeping language of Respondent's arbitration clause is sufficient for the Arbitrator to determine that the clause authorizes class proceedings.

Several other facets of Connecticut law further compel this conclusion.  *Cf. Fahey v. Safeco Ins. Co. of Am.*, 49 Conn. App. 306, 317-18 (1998) (noting *de facto* incorporation of existing state law into contracts).  First, Connecticut's public policy favors class actions under appropriate circumstances.  *See Rivera v. Veterans Mem'l Med. Ctr.*, 262 Conn. 730, 735 (2003) (recognizing that "class actions serve a unique function in vindicating plaintiffs' rights, . . . promote judicial economy and efficiency, . . . and provide access to judicial relief for small claimants").  Second, in Connecticut, the right to pursue a class action is not just procedural: it is substantive.  *See Weber v. U.S. Sterling Secs., Inc.*, 282 Conn. 722, 738-39 (2007) (holding that a statute is "substantive because it abridges the rights of individuals to bring class action claims").  And since the AAA's Employment Rules — which Respondent incorporated into its arbitration agreement (Exh. B) — allows the Arbitrator to "grant any remedy or relief that would be available to the parties had the matter been heard in court . . . in accordance with applicable law," the agreement necessarily permits the substantive right to sue as a class.  Finally, because Respondent drafted the arbitration clause, any ambiguity in the clause should be construed in

---

[2]  Copies of all arbitral opinions cited herein are attached at Exhibit F.

favor of the Claimants.  *See, e.g.*, *Game-A-Tron v. Gordon*, 2 Conn. App. 692, 695 (1984) (interpreting arbitration clause against employer-drafter); *cf. Jock*, 646 F.3d at 117.

The breadth of Respondent's arbitration clause and the underlying principles of Connecticut law demonstrate an intention to allow class arbitration.

### C.  The Federal Substantive Law of Arbitration Does Not Vitiate the Parties' Agreement to Permit Class Arbitration.

The Federal Arbitration Act (FAA) expresses our country's strong policy in favor of allowing parties to arbitrate their disputes.  *See, e.g.*, *Jock*, 646 F.3d at 121-22.  In that vein, the FAA significantly cabins the authority of courts to vacate the decisions of parties' chosen arbitrators.  *See* 9 U.S.C. § 10(a).  In fact, the FAA limits the grounds for vacating an arbitration award to: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or 'where the arbitrators exceeded their powers.'"  *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994) (quoting 9 U.S.C. § 10(a)).[3]

All of this means that judicial review of arbitrators' decisions is extremely limited.  *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) ("[T]he court will set [the arbitrator's] decision aside only in very unusual circumstances.").  Consistent with this deferential approach, courts very rarely conclude that arbitrators have "exceeded their powers" under § 10(a)(4).  For a court to intervene, it is "not enough" for the arbitrator to have committed "even a serious error."  *Oxford Health Plans*, 133 S. Ct. at 2068.  Rather, the arbitrator must have "stray[ed] from interpretation and application of the agreement."  *Major League Baseball*

---

[3]  The courts may have grafted onto this list a fifth category: "manifest disregard of the law."  *See, e.g.*, *Jock*, 646 F.3d at 121-22 & n.1.  This requires that the arbitrator knew about but intentionally ignored a "well defined, explicit, and clearly applicable" principle of law.  *See id.* at 121 n.1.

*Players Ass'n v. Garvey*, 532 U.S. 504, 507 (2001) (quotation marks omitted). "So long as the

arbitrator [i]s arguably construing the contract," her judgment will be affirmed. *Oxford Health*

*Plans*, 133 S. Ct. at 2070. This limited judicial review applies with equal force to the process of

clause construction. *See, e.g.*, *Jock*, 646 F.3d at 122-25 (reversing district court's vacatur of

arbitrator's clause construction award permitting class arbitration).

Here, there can be no reasonable argument that an award construing Respondent's

arbitration clause to permit class arbitration would "exceed[] [the Arbitrator's] powers" under

§ 10(a)(4). To the contrary, at least four federal appellate courts have held that <u>arbitration</u>

<u>clauses may authorize class arbitration even where they do not expressly contemplate class</u>

<u>procedures</u>. In *Jock v. Sterling Jewelers Inc.*, for example, the arbitration clause committed all

employment disputes to private arbitration, and it empowered the arbitrator "to award any types

of legal or equitable relief that would be available in a court of competent jurisdiction." 646

F.3d at 116-17. The arbitrator construed the clause to permit class arbitration, a judgment the

Second Circuit affirmed. The court of appeals reasoned:

> It is clear from the terms of the arbitration agreement that Sterling required its
> employees to sign that the parties intended to make available in arbitration all
> remedies and rights that would otherwise be available in court or before a
> government agency. It was not unreasonable, and clearly not manifestly wrong,
> for the arbitrator to construe this to mean that the parties also intended to include
> the right to proceed as a class and seek class remedies.

*Id.* at 127; *see also Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222-25 (3d Cir. 2012),

*aff'd*, 133 S. Ct. 2064 (2013); *S. Commc'ns Servs. v. Thomas*, --- F.3d ----, 2013 WL 3481467

(11th Cir. 2013) (refusing to vacate arbitrator's decision that contract that "contained no

reference to class arbitration" nonetheless authorized class arbitration); *Fantastic Sams*

*Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18, 22 (1st Cir. 2012) ("We thus reject the . . . precept

. . . that there must be express contractual language evincing the parties' intent to permit class or

9

collective arbitration."); *cf. TES Franchising v. Kastel*, 2007 WL 1748141 at *4 (Conn. Super. May 25, 2007) (refusing to vacate arbitrator's "conclusion that a Franchise Agreement permits class arbitration when that Franchise Agreement is silent as to class arbitrations," based on arbitrator's interpretation of Connecticut law).

The U.S. Supreme Court has never held otherwise.  In *Stolt-Nielsen*, the Court took pains to note that it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," as the parties there "stipulated that there was 'no agreement' on the issue of class-action arbitration." 130 S. Ct. at 1776 n.10; s*ee also, e.g.*, *Jock*, 646 F.3d at 121-25 (2d Cir. 2011) ("*Stolt–Nielsen* . . . did not create a bright-line rule requiring that arbitration agreements can only be construed to permit class arbitration where they contain express provisions permitting class arbitration."); *accord Fantastic Sams Franchise Corp.*, 683 F.3d at 22.

Far from undermining the authority of arbitrators to interpret parties' arbitration agreements, federal courts applying the FAA have repeatedly affirmed that it is precisely and uniquely the arbitrators' responsibility to do just that.

**III.     CONCLUSION**

For the foregoing reasons, the Claimants respectfully submit that the arbitration clause authorizes class and collective arbitration, and they request that the Arbitrator issue a partial final clause construction award construing the clause to permit the assertion of such claims.

> **RESPECTFULLY SUBMITTED,**
> **THE CLAIMANTS**
>
> By: ____/s/ Joseph D. Garrison_____
> Joseph D. Garrison
> Joshua R. Goodbaum
> GARRISON, LEVIN-EPSTEIN, RICHARDSON,
>      FITZGERALD & PIRROTTI, P.C.
> 405 Orange Street
> New Haven, CT 06511
> Tel.: (203) 777-4425
> Fax: (203) 776-3965
> jgarrison@garrisonlaw.com
> jgoodbaum@garrisonlaw.com

# EXHIBIT E

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| DOREEN SAVARIA and CRYSTAL RAIA, individually and on behalf of other similarly situated employees of Elemis Spa, | ) )  AAA Case No.: 12-460-454-12 ) ) |
| Claimants, | ) ) |
| v. | ) ) |
| STEINER LEISURE LIMITED,, | ) ) |
| Respondent. | ) |

---

**RESPONSE TO CLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF CLASS ARBITRATION**

The Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter,* 133 S. Ct. 2064 (2013) and its earlier decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S Ct. 1758 (2010) compel Respondent Steiner Leisure Limited ("Steiner") to bring an application for declaratory and injunctive relief before the Connecticut District Court.  The application and complaint (courtesy copies will be emailed today), which will be served on Claimant's counsel via overnight mail after we receive court-stamped copies, rests on the principle that a Court, not an arbitrator, must decide the gateway issue of arbitrability of class and collective action claims of unnamed claimants when a valid arbitration agreement is silent on the issue.

Steiner respects the authority granted to Arbitrator Dinneen in the Arbitration Agreement. However, because Steiner does not agree that any arbitrator has the power to decide whether Steiner's Arbitration Agreement authorizes class or collective action arbitration, and because *Oxford Health* greatly limits the appeal rights of arbitrability decisions (when parties agree or stipulate that an arbitrator may decide arbitrability of class/collective claims), Steiner feels compelled to seek declaratory and injunctive relief from a court.

Another compelling reason for Steiner to seek declaratory and injunctive relief from a court is the Second Circuit's August 9, 2013 ruling in *Sutherland v. Ernst & Young, LLC,* No. 12-304-cv, 2013 U.S. App. LEXIS 16513 (2d Cir. Aug. 9, 2013) holding that the ability to bring a FLSA collective action in arbitration is not a substantive right.  Given arbitrability refers to whether arbitrators have the authority to rule on a dispute, which in turn depends entirely on whether the parties to an arbitration agreement agreed to have certain disputes between them resolved through arbitration; and here there is no implicit or explicit power provided to any arbitrator to decide anything other than individual jurisdiction and individual substantive claims; Steiner respectfully asserts that a decision by any arbitrator on this gateway class/collective action arbitrability issue would go beyond his or her express or implied (if any) powers.  As such, Steiner feels a Court should make this gateway arbitrability decision.

Thus, Steiner has commenced an action in Connecticut District Court seeking: (1) declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration; and (2) an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue.

Respectfully submitted, this 20th day of September, 2013.

DUANE MORRIS LLP

*/s/ Anthony J. Rao*
Anthony J. Rao
Michael Tiliakos

**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036
Attorneys for Steiner Leisure Limited

# EXHIBIT F

**AMERICAN ARBITRATION ASSOCIATION**

| | | |
|---|---|---|
| _____ | | |
| **DOREEN SAVARIA and CRYSTAL RAIA,** | : | |
| **Individually and on Behalf of All Other** | : | **AAA Case No.:  12-460-454-12** |
| **Similarly Situated Employees of Elemis Spa,** | : | |
| | : | |
| **Claimants,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEINER LEISURE LIMITED,** | : | |
| | : | |
| **Respondent.** | : | **October 1, 2013** |
| _____ | : | |

**CLAIMANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF CLASS ARBITRATION**

Respondent Steiner Leisure Limited's response brief provides no substantive reply to Claimants' arguments regarding clause construction.  Steiner has presented no reason, let alone a compelling one, for the Arbitrator to interpret the arbitration clause, which commits "any and all disputes" to the arbitration process, not to permit class-wide claims.  Steiner has sought a declaratory judgment in federal court, but its lawsuit will not succeed, for the reasons stated in section II.A of the Claimants' initial brief.  Regardless, in the meantime, no court has enjoined the Arbitrator from proceeding, nor has Steiner asked the Arbitrator not to do so.  Accordingly, the Claimants respectfully request a partial final clause construction award allowing them to proceed with class arbitration.

**RESPECTFULLY SUBMITTED,**
**THE CLAIMANTS**

By: ___*/s/ Joseph D. Garrison*_____
        Joseph D. Garrison
        Joshua R. Goodbaum
        GARRISON, LEVIN-EPSTEIN, RICHARDSON,
            FITZGERALD & PIRROTTI, P.C.
        405 Orange Street
        New Haven, CT 06511
        Tel.: (203) 777-4425
        Fax: (203) 776-3965
        jgarrison@garrisonlaw.com
        jgoodbaum@garrisonlaw.com

# EXHIBIT G

| | |
|---|---|
| **From:** | Rao, Anthony |
| **To:** | Joshua R. Goodbaum; EdieDinneen@aol.com |
| **Cc:** | JonathanWeed@adr.org; Tiliakos, Michael; Scott D. Segal, Esq. (ssegal@myhrattorney.com); Joseph D. Garrison; Fletcher, Christina; Gray, Katelynn M; Hrubos, Natalie |
| **Subject:** | RE: Savaria v. Steiner - Claimants" Reply Memorandum re Clause Construction |
| **Date:** | Tuesday, October 01, 2013 12:04:53 PM |
| **Attachments:** | Steiner - AS FILED - Amended Complaint.pdf<br>Steiner - AS FILED - Memo in Support of Application for Declaratory and ....pdf |

Dear Arbitrator Dinneen:

Contrary to Claimants' reply memorandum, Steiner's submission summarized the reasons why it commenced an action in Connecticut District Court. In sum, Steiner respectfully seeks declaratory relief that the Court, not an arbitrator, must determine the gateway issue of arbitrability of class or collective action claims on behalf of unnamed claimants in arbitration;
and an order staying the arbitration pending the Court's determination as to this gateway arbitrability issue. In an earlier email to you, Steiner stated that under the power provided to you under the arbitration agreement, respectfully, the arbitration agreement does not explicitly provide any arbitrator with the power to decide in a clause construction hearing whether the Claimants may bring this arbitration as a class or collective action.

Although it is obvious that Steiner wishes to have the class/collective action arbitration clause construction hearing stayed pending the Court's gateway arbitrability decision, you are obviously empowered to continue with the individual claims of those who have filed arbitration claims seeking wages. To the extent Steiner has not formally requested that you to respectfully refrain from proceeding with the class/collective arbitration clause construction hearing pending the court's ruling, it does so now (although this does not seem necessary giving the court filings).

For your file is our Memorandum of Law and Complaint filed with the Connecticut District Court. Steiner does not seek your consideration or ruling on the gateway class/collective action arbitrability issue. However, if the Court determines that you are empowered to decide the gateway arbitrability issue, Steiner will submit a formal opposition to Claimant's class/collective action arbitration argument.

Sincerely,



**Anthony J. Rao**
Partner

Duane Morris LLP    P: +1 212 692 1086
1540 Broadway     F: +1 212 208 2575
New York, NY 10036-4086  C: +1 646 596 1610

E-MAIL | BIO | VCARD

# EXHIBIT H

| From: | Joshua R. Goodbaum |
|---|---|
| To: | "EdieDinneen@aol.com"; ARao@duanemorris.com |
| Cc: | JonathanWeed@adr.org; MTiliakos@duanemorris.com; ssegal@myhrattorney.com; Joseph D. Garrison |
| Subject: | RE: Savaria v. Steiner - Claimants" position statement re Respondent"s Motion for Stay |
| Date: | Wednesday, October 09, 2013 10:21:17 AM |

Dear Arbitrator Dinneen:

The Claimants' position statement is as follows:

The Claimants oppose Steiner's motion for a stay of this arbitration.  After initially filing their demand for arbitration in September of 2012, the Claimants have yet to receive even a clause construction award.  They agreed to one lengthy stay of these proceedings when reasonableness so required.  The Claimants are entitled now to move forward.

No court has enjoined this arbitration, nor is any court likely to do so in the foreseeable future.  As the Claimants explained in section II.A of their initial clause construction brief, numerous Second Circuit opinions mandate that the arbitrator shall interpret the arbitration clause where the arbitration policy incorporates rules that so provide.  Steiner's arbitration policy does just that.  And nothing in the U.S. Supreme Court's recent decision in *Oxford Health Plans v. Sutter*, 133 S. Ct. 2064 (2013), undermines that binding precedent.  Therefore, Steiner's challenge to the Arbitrator's authority will not succeed in the short term and may involve numerous, lengthy appeals in the long term.  To consent to a stay of this arbitration pending resolution of Steiner's federal court escapade, then, could mean years of additional delay.  That the Claimants cannot tolerate.

Furthermore, Steiner will not suffer any irreparable harm as a result of the Arbitrator proceeding with clause construction, since Rule 3 of the AAA's Supplementary Rules for Class Arbitrations permits either party to "seek judicial review of the Clause Construction Award."  And if the Arbitrator's authority to interpret the arbitration clause is truly a "gateway" issue, as Steiner claims, then judicial review of the Award would be plenary.  *See Sutter*, 133 S. Ct. at 2068 n.2.  Accordingly, Steiner will have every opportunity to make its arguments to a court <u>following</u> the Arbitrator's initial construction of the clause, and it loses nothing if the arbitration proceeds.

For these reasons, the Claimants oppose Steiner's motion for a stay, and they ask the Arbitrator to proceed with clause construction.

Sincerely,

Joshua R. Goodbaum
Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C.
405 Orange Street
New Haven, Connecticut 06511
Tel.  (203) 777-4425
Fax  (203) 776-3965
jgoodbaum@garrisonlaw.com
garrisonlaw.com

*This transmittal is intended for a particular addresee(s).  It may contain a confidential attorney-client communication or confidential attorney work product.  If it is not clear that you are the intended recipient, you have received this transmittal in error, and any review, copying, distribution or dissemination of it by you is strictly prohibited.  If you suspect that you have received this transmittal in error, please notify Garrison, Levin-Epstein, Richardson, Fitzgerald & Pirrotti, P.C. immediately at (203) 777-4425, or by e-mail reply to the sender, and delete the transmittal and any attachments. Documents attached to this message are not encrypted.  Thank you for your cooperation.*

# EXHIBIT I

AMERICAN ARBITRATION ASSOCIATION
Employment and Class Action Arbitration Tribunal

Doreen Savaria and Crystal Raia, individually
and on behalf of similarly situated employees
of Elemis Spa,

Claimants

v.

Steiner Leisure Limited,

Respondent

Case No. 12-460-454-12

ORDER DENYING STAY

On October 1, 2013, Respondent requested a stay of this arbitration pending

resolution of an action it had commenced on September 20, 2013 in the United States

District Court for the District of Connecticut ("the court") for injunctive and declaratory

relief. Claimants oppose the issuance of a stay.

Procedural Background

In analyzing the appropriateness of the requested stay, the chronology of the

arbitration thus far is important, and will therefore be discussed in some detail.

The proceeding began with Claimants' Demand for Arbitration dated September

11, 2012. In accordance with Respondent's "Employment Arbitration Policy" ("the

Agreement"), it is being administered by the American Arbitration Association ("AAA")

under its Employment Arbitration Rules ("the Employment Arbitration Rules"), as

1

supplemented by its Supplementary Rules for Class Arbitrations ("the Supplementary Rules").[1]

In response to the Demand for Arbitration, on December 7, 2012, Respondent filed its "Answering Statement and Request for an Immediate Clause Construction Hearing from Respondent Steiner Leisure Limited" (emphasis added). In that extensive pleading, Respondent alleged 26 "Affirmative and Other Defenses," and further stated its position (p. 2) that, in accordance with Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010) ("Stolt-Nielsen"), "Claimants must arbitrate their claims individually because they signed an arbitration agreement that reflects an intent to provide individualized arbitration and does not explicitly provide for class arbitration." Respondent also expressly "[r]equest[ed] this threshold issue be addressed at a Clause Construction hearing pursuant to Rule 3" of the Supplementary Rules (p. 2), and prayed for "an immediate Clause Construction hearing" (p. 8).

Pre-hearing conference calls were thereafter held on January 12 and 31, 2013, to discuss, inter alia, scheduling for the clause construction phase of the arbitration. As reflected in Case Management Orders Nos. 1-2, in light of the Supreme Court's granting of certiorari in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 786 (12/7/12), all counsel agreed that it would make sense to stay the clause construction phase until that case was decided.

After the Supreme Court rendered its decision, 133 S. Ct. 2064 (6/10/13) ("Sutter"), I sent an email message to arrange for another conference call to "set a schedule for the clause construction briefing." Respondent said nothing about there

---

[1] See discussion and legal authorities cited in Southern Communications Services, Inc. v. Thomas, 829 F. Supp. 2d 1324, 1337-38 (N.D. Ga. 2011), aff'd on other grounds, ___ F.3d ___, 2013 WL 3481467 (11th Cir. 7/12/13).

being no arbitral authority to decide clause construction, and all counsel agreed to hold the conference on July 25, 2013. That call did not take place, but Claimants' counsel subsequently provided to AAA (and I confirmed in an August 1, 2013 email message) a clause construction schedule that had been discussed and agreed to by both sides: Claimants' brief was due by August 23, Respondent's opposition by September 13, and reply by September 27, 2013.[2]

Later on August 1, 2013, Respondent's counsel, for the first time, notified me of its new position that the Agreement does not authorize any arbitrator to decide the clause construction issue and that, as soon as Claimants filed their clause construction brief, Respondent would go to the court seeking a ruling that only a court, not an arbitrator, has jurisdiction to issue a clause construction determination in this case. Respondent has not attempted to reconcile this position with its entirely contradictory prior conduct and pleading.

Claimants filed their clause construction brief on August 15, 2013 and then agreed to Respondent's September 11, 2013 request to extend the time for Respondent's opposition from September 13 until September 20, 2013. In that opposition, Respondent did not address the clause construction arguments made by Claimants; it instead merely stated that it "does not agree that any arbitrator has the power to decide whether [the Agreement] authorizes class or collective arbitration," and that it had that day

---

[2] At Respondent's request, I added to the schedule an opportunity for Respondent, within three business days of receipt of the reply, to apply for permission to submit a sur-reply.

3

commenced the court action for declaratory and injunctive relief because the Supreme Court's opinions in Sutter and Stolt-Nielsen "compel[led]" it to do so.[3]

On October 1, 2013, Claimants submitted their reply brief, urging that the arbitrator should proceed to issue a clause construction determination in their favor, in light of the fact that Respondent had not sought a stay from the arbitrator and that no court had enjoined Claimants' normal pursuit of the case in arbitration under the applicable AAA Rules. Respondent did not request permission for any sur-reply.

Later on October 1, 2013, Respondent's counsel wrote that, "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ." Despite the unusual timing, I accepted that October 1, 2013 message as a request for a stay, and sought Claimants' position.

In their October 9, 2013 opposition, Claimants argue that, as set forth in their clause construction brief (pp. 3-5), there is ample authority for me to conclude that the parties have already empowered me to decide the clause construction issue. Citing Sutter, 133 S. Ct. at 2068 n.2, they further point to the fact that, under Supplementary Rule 3,[4] whatever clause construction award I may issue is subject to immediate judicial review, in which Respondent could, if it were displeased with the ruling, obtain judicial consideration of both its new arbitrability issue and the substance of the clause construction determination. They contend that Respondent would thus "lose nothing" if

---

[3] Respondent also simultaneously submitted a First Amended Answer in this arbitration. The only changes in the amended pleading were the deletion of the prior request for an immediate clause construction ruling and the addition of language relating to Respondent's new position about the arbitrator's not having authority to decide clause construction. Claimants have not raised any objection to the filing of the First Amended Answer.

[4] Supplementary Rule 3 states that, as soon as the clause construction award is issued, the "arbitrator shall stay all proceedings . . . for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate" the award.

4

the arbitration moves forward to a clause construction award, whereas Claimants, who began pursuit of their individual and class claims over a year ago, could face further disruption and lengthy delay if the arbitration is stayed pending resolution of the court action with possible appellate proceedings.

Respondent's October 9, 2013 reply was that it declines to "present the arguments it made to the Court to, or seek the requested relief from, [the arbitrator]." Respondent thus intentionally and unilaterally chose to forego the scheduled (and extended) opportunity to persuade the arbitrator regarding its positions on arbitrability and clause construction, preferring instead to seek and wait for a court ruling.

## Analysis and Order

As reflected in the above chronology, Respondent did not raise this question of who decides the clause construction issue until more than seven months after it expressly and unequivocally asked the arbitrator for an "immediate" clause construction ruling. When Respondent suddenly noted its new, and entirely contradictory, position on August 1, 2013, it made no request for a stay of the arbitration. Nor did it do so in multiple communications and a brief filed thereafter. Only when Claimants' October 1, 2013 reply brief noted that Respondent had not sought a stay from the arbitrator, did Respondent then say: "[t]o the extent [Respondent] has not formally requested that [the arbitrator] refrain from proceeding with the clause construction hearing pending the court's ruling, it does so now . . . ." Respondent has not provided any information as to what the federal court schedule will be or when there may be any decision on a preliminary or final injunction.

5

Lacking any reasonable explanation for its sudden change in position or the need for the court action, Respondent's request for a stay is less than compelling. It ignores the plain and simple fact that Respondent's "Employment Arbitration Policy" expressly incorporates AAA's "arbitration rules," and that Employment Arbitration Rule 6 states that the "arbitrator shall have the power to rule on . . . her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[5] Respondent has presented me with nothing that diminishes or eliminates that plenary grant of authority to decide whether I have jurisdiction to render a clause construction ruling, nor with any reason to believe that a court would rescind or alter that authority.

I therefore agree with Claimants as to the reasons why a stay should not be granted. Claimants should be allowed to proceed with their case in the orderly manner prescribed by the Supplementary Rules, which at this point means that they are entitled to have an arbitral decision under Rule 3 on clause construction (as previously agreed to and anticipated by all parties).

The parties expressly incorporated AAA's "arbitration rules" into their Agreement, and Supplementary Rule 1 says that the Supplementary Rules "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any rules of [AAA] where a party submits a dispute to arbitration on behalf of . . . a class or purported class, and shall supplement any other applicable AAA rules." And Supplementary Rule 3 says that, "[u]pon appointment, the arbitrator shall determine as a

---

[5]Although an issue of arbitrability is generally one for a court to decide, "when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution Co, Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (based on language identical to Employment Rule 6); accord, T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344-45 (2d Cir. 2010); Emilio v. Sprint Spectrum L.P., 508 Fed. Appx. 3, 4-5 (2d Cir. 2013).

threshold matter, in a reasoned partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class."

That is the process that was put into the parties' Agreement and, despite Respondent's change of mind, that is the mandate that was already given to me. Issuing a clause construction award is what I am supposed to be doing at this stage of the proceeding, and Respondent has shown no valid reason why that step should be postponed.[6]

Furthermore, as Claimants note, if Respondent believes it is entitled to have a court rule as to who should decide the clause construction issue, it will have an opportunity to do so: Supplementary Rule 3 expressly allows any aggrieved party to challenge an arbitral clause construction award in court, with full judicial review de novo if the arbitrator has exceeded her authority.[7] Sutter, 133 S. Ct. at 2068 n.2.

Accordingly, I find that Respondent has failed to present adequate justification for issuance of a stay, and its request is denied.

DATED: October 29, 2013

*Edith N. Dinneen*

EDITH N. DINNEEN

---

[6] Of course, arbitration is a creature of contract, and an arbitrator is empowered to do only what the parties agreed she should do. In other contexts, therefore, I have sometimes declined to take action on grounds of lack of jurisdiction, and I would not hesitate to do so here if I had reason to believe that issuing a clause construction award would exceed my authority.

[7] Obviously, if the arbitrator's clause construction award were to be in Respondent's favor, Respondent would presumably have no reason to seek vacatur, its arbitrability issue would then be moot, and there would not be (or have been) any need for the court to undertake the task of deciding anything.

7

# EXHIBIT J

# Supplementary Rules for Class Arbitrations

Rules Effective October 8, 2003
Fees Effective January 1, 2010

## Table of Contents

| | |
|---|---|
| 1. Applicability | 1 |
| 2. Class Arbitration Roster and Number of Arbitrators | 2 |
| 3. Construction of the Arbitration Clause | 2 |
| 4. Class Certification | 2 |
| 5. Class Determination Award | 3 |
| 6. Notice of Class Determination | 4 |
| 7. Final Award | 4 |
| 8. Settlement, Voluntary Dismissal, or Compromise | 5 |
| 9. Confidentiality; Class Arbitration Docket | 5 |
| 10. Form and Publication of Awards | 5 |
| 11. Administrative Fees and Suspension for Nonpayment | 6 |
| 12. Applications to Court and Exclusion of Liability | 6 |

## 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

## 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three arbitrators.

## 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

## 4. Class Certification

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class

members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

## 5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

## 6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

(5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;

(6) the binding effect of a class judgment on class members;

(7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

(8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

## 7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

## 8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

(2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request

exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

## 9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

   (1) a copy of the demand for arbitration;

   (2) the identities of the parties;

   (3) the names and contact information of counsel for each party;

   (4) a list of awards made in the arbitration by the arbitrator; and

   (5) the date, time and place of any scheduled hearings.

## 10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

## 11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,350 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA

may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been suspended shall be published on the AAA's Class Arbitration Docket.

## 12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

© 2011 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

# EXHIBIT K

# Employment Arbitration Rules
## and Mediation Procedures

*Rules Amended and Effective November 1, 2009*
*Fee Schedule Amended and Effective June 1, 2010*



 American Arbitration Association
*Dispute Resolution Services Worldwide*

www.adr.org

## Table of Contents

Introduction                                                                  8

Role of the American Arbitration Association                                   9

Legal Basis of Employment ADR                                                 9

The Fairness Issue: The Due Process Protocol                                  10

AAA's Employment ADR Rules                                                    11

AAA's Policy on Employment ADR                                                12

Notification                                                                  12

Costs of Employment Arbitration                                               12

Designing an ADR Program                                                      13

Alternative Dispute Resolution Options                                        14

Types of Disputes Covered                                                     16

**Employment Arbitration Rules and Mediation Procedures**     **17**

1.  Applicable Rules of Arbitration                                           17

2.  Notification                                                             17

3.  AAA as Administrator of the Arbitration                                   18

4.  Initiation of Arbitration                                                18

5.  Changes of Claim                                                          20

6.  Jurisdiction                                                              20

7.  Administrative and Mediation Conferences                                  21

8.  Arbitration Management Conference                                         21

9.  Discovery                                                                 23

10. Fixing of Locale                                                          23

11. Date, Time and Place of Hearing                                           23

12. Number, Qualifications and Appointment
of Neutral Arbitrators                                            24

13. Party Appointed Arbitrators                                   25

14. Appointment of Chairperson by Party-Appointed
Arbitrators or Parties                                            26

15. Disclosure                                                    27

16. Disqualification of Arbitrator                                27

17. Communication with Arbitrator                                 28

18. Vacancies                                                     28

19. Representation                                                29

20. Stenographic Record                                           29

21. Interpreters                                                  29

22. Attendance at Hearings                                        30

23. Confidentiality                                               30

24. Postponements                                                 30

25. Oaths                                                         30

26. Majority Decision                                             30

27. Dispositive Motions                                           31

28. Order of Proceedings                                          31

29. Arbitration in the Absence of a Party or Representative       32

30. Evidence                                                      32

31. Inspection                                                    33

32. Interim Measures                                              33

33. Closing of Hearing                                            34

34. Reopening of Hearing                                          34

35. Waiver of Oral Hearing                                        34

36. Waiver of Objection/Lack of Compliance with These Rules    35

37. Extensions of Time    35

38. Serving of Notice    35

39. The Award    36

40. Modification of Award    37

41. Release of Documents for Judicial Proceedings    37

42. Applications to Court    37

43. Administrative Fees    38

44. Neutral Arbitrator's Compensation    38

45. Expenses    38

46. Deposits    39

47. Suspension for Non-Payment    39

48. Interpretation and Application of Rules    39

**Costs of Arbitration (including AAA Administrative Fees)**    39

**For Disputes Arising Out of Employer-Promulgated Plans**    40

Filing Fees    40

Hearing Fees    41

Postponement/Cancellation Fees    41

Hearing Room Rental    41

Abeyance Fees    41

Expenses    42

**For Disputes Arising Out of Individually-Negotiated
Employment Agreements and Contracts**    42

**Administrative Fee Schedules (Standard and Flexible Fee)** 42

Standard Fee Schedule 44

Refund Schedule 45

Flexible Fee Schedule 46

Hearing Room Rental 48

Abeyance Fee 49

Expenses 49

**For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")** 49

**Optional Rules for Emergency Measures of Protection** 50

O-1.  Applicability 50

O-2.  Appointment of Emergency Arbitrator 50

O-3.  Schedule 50

O-4.  Interim Award 51

O-5.  Constitution of the Panel 51

O-6.  Security 51

O-7.  Special Master 52

O-8.  Costs 52

**Employment Mediation Procedures** 53

M-1.  Agreement of Parties 53

M-2.  Initiation of Mediation 53

M-3.  Fixing of Locale (the city, county, state, territory and, if applicable, country of the Mediation) 54

M-4.  Representation 54

M-5.  Appointment of the Mediator 55

M-6.  Mediator's Impartiality and Duty to Disclose          55

M-7.  Vacancies                                             56

M-8.  Duties and Responsibilities of the Mediator          56

M-9.  Responsibilities of the Parties                       58

M-10. Privacy                                               58

M-11. Confidentiality                                       58

M-12. No Stenographic Record                                59

M-13. Termination of Mediation                              59

M-14. Exclusion of Liability                                60

M-15. Interpretation and Application of Procedures          60

M-16. Deposits                                              61

M-17. Expenses                                              60

M-18. Cost of the Mediation                                 61

7

# Employment Arbitration Rules and Mediation Procedures

### Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes.

These Rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

## Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

## Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination — in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the *Gilmer* Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically

declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act.

The specific issue left open by *Gilmer* was decided 10 years later by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

## The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol*, which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The *Due Process Protocol* encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the

National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol*.

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

### AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules reflected the guidelines outlined in the *Due Process Protocol* and were based upon the AAA's *California Employment Dispute Resolution Rules*, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

Copies of all plans should be sent to the
American Arbitration Association,
725 South Figueroa Street, Suite 2400,
Los Angeles, CA 90017;
FAX: 213.622.6199.

## Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA

makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

## Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

> The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

> A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation.

13

> The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

> Programs which use arbitration as a final step may employ:

  ◆ pre-dispute, voluntary final and binding arbitration;

  ◆ pre-dispute, mandatory nonbinding arbitration;

  ◆ pre-dispute, mandatory final and binding arbitration; or

  ◆ post-dispute, voluntary final and binding arbitration.

> Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures*.

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide*, which is available from the AAA's website, **www.adr.org**.

## Alternative Dispute Resolution Options

**Open Door Policy**

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

**Ombuds**

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

14

### Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

### Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

### Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

### Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

#### Pre-Dispute, Voluntary Final and Binding Arbitration
The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

15

**Pre-Dispute, Mandatory Nonbinding Arbitration**
The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

**Pre-Dispute, Mandatory Final and Binding Arbitration**
The parties must arbitrate unresolved disputes and they are bound by the outcome.

**Post-Dispute, Voluntary Final and Binding Arbitration**
The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

## Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

# Employment Arbitration Rules and Mediation Procedures

## 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.

These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

* *The National Rules for the Resolution of Employment Disputes* have been re-named the *Employment Arbitration Rules and Mediation Procedures*. Any arbitration agreements providing for arbitration under its *National Rules for the Resolution of Employment Disputes* shall be administered pursuant to these *Employment Arbitration Rules and Mediation Procedures*.

## 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

(i)   notify the Association of its intention to do so and,

(ii)  provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

### 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

### 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner:

a.   The parties may submit a joint request for arbitration.

b.   In the absence of a joint request for arbitration:

(i) The initiating party (hereinafter "Claimant[s]") shall:

(1)  File a written notice (hereinafter "Demand") of its intention to arbitrate at any  office of the AAA within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

      (2)  Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

      (3)  Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

(ii) The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(iii) The Respondent(s):

      (1)  May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

      (2)  Simultaneously shall send a copy of any counterclaim to the Claimant.

      (3)  Shall include with its filing the applicable filing fee provided for by these rules.

(iv) The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

19

c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

a.  the issues to be arbitrated;

b.  the date, time, place and estimated duration of the hearing;

c.  the resolution of outstanding discovery issues and establishment of discovery parameters;

d.  the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;

e. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

f. the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

g. the value of bifurcating the arbitration into a liability phase and damages phase;

h. the need for a stenographic record;

i. whether the parties will summarize their arguments orally or in writing;

j. the form of the award;

k. any other issues relating to the subject or conduct of the arbitration;

l. the allocation of attorney's fees and costs;

m. the specification of undisclosed claims;

n. the extent to which documentary evidence may be submitted at the hearing;

o. the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

p. any disputes over the AAA's determination regarding whether the dispute arose from an individually–negotiated employment agreement or contract, or from an employer–promulgated plan (see Costs of Arbitration Section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery-related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale
## (the city, county, state, territory and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

Employment Arbitration Rules and Mediation Procedures

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

a.   If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

b.   Qualifications

   (i)   Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

   (ii)   Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

   (iii) The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

   (iv) The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually–negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

c.   If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

   (i)   Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

    (ii)  If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

    (iii) From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party-Appointed Arbitrators

a.  If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

b.  Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

c.  If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

d.  If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

a.  If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

b.  If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

c.  If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

### 15. Disclosure

a.  Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

b.  Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

c.  In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

### 16. Disqualification of Arbitrator

a.  Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   (i)  partiality or lack of independence,

   (ii) inability or refusal to perform his or her duties with diligence and in good faith, and

   (iii) any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

b.   Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

### 17. Communication with Arbitrator

a.   No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

b.   Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

### 18. Vacancies

a.   If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

b.  In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c.  In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

## 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

### 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

### 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

### 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings.

If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

### 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

### 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

### 38. Serving of Notice

a.  Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b.  The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these Rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

c.  Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

### 39. The Award

a.  The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b.  An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c.  The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

d.  The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

e.  If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

f.  The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

g.  The arbitrator's award shall be final and binding.

### 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

### 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

### 42. Applications to Court

a.   No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b.   Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

c.   Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d.   Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

## 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 39-48).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

## 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and monies collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration Section.

## 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof

and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration Section.

## 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

## 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

## 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

### For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

* Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $925 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $175 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less.

A nonrefundable fee in the amount of $1,800 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

### (ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

### (iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

### (iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

### (v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

### For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, on the following page, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

### Administrative Fee Schedules (Standard and Flexible Fee)

The AAA has two administrative fee options for parties filing claims or counterclaims, the    Standard Fee Schedule and Flexible Fee Schedule.  The Standard Fee Schedule has a two payment schedule, and the Flexible Fee Schedule has a three payment schedule which offers lower initial filing fees, but potentially higher total administrative fees of approximately 12% to 19% for cases that proceed to a hearing.  The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related Disputes when filing a consumer-related claim. Note that the Flexible Fee Schedule is not available on cases administered under these supplementary procedures.

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

**Fees for incomplete or deficient filings:** Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of the other parties to the dispute to have the arbitration administered by the AAA.  However, where the AAA is unable to obtain the agreement of the parties to have the AAA administer the arbitration, the AAA will administratively close the case and will not proceed with the administration of the arbitration.  In these cases, the AAA will return the filing fees to the filing party, less the amount specified in the fee schedule below for deficient filings.

Parties that file demands for arbitration that are incomplete or otherwise do not meet the filing requirements contained in these Rules shall also be charged the amount specified below for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

**Fees for additional services:** The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules which may be required by the parties' agreement or stipulation.

Employment Arbitration Rules and Mediation Procedures

## (i) Standard Fee Schedule

An Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. A Final Fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Final Fee |
|---|---|---|
| Above $0 to $10,000 | $775 | $200 |
| Above $10,000 to $75,000 | $975 | $300 |
| Above $75,000 to $150,000 | $1,850 | $750 |
| Above $150,000 to $300,000 | $2,800 | $1,250 |
| Above $300,000 to $500,000 | $4,350 | $1,750 |
| Above $500,000 to $1,000,000 | $6,200 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,200 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,200 | $4,000 |
| Above $10,000,000 | Base fee of $12,800 plus .01% of the amount above $10,000,000 Fee Capped at $65,000 | $6,000 |
| Nonmonetary Claims [1] | $3,350 | $1,250 |
| Deficient Claim Filing Fee[2] | $350 | |
| Additional Services[3] | | |

[1]This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $10,200.

[2]The Deficient Claim Filing Fee shall not be charged in cases filed by a consumer in an arbitration governed by the Supplementary Procedures for the Resolution of Consumer-Related Disputes, or in cases filed by an Employee who is submitting their dispute to arbitration pursuant to an employer promulgated plan.

44

[3]*The AAA may assess additional fees where procedures or services outside the Rules sections are required under the parties' agreement or by stipulation.*

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,800 for the Initial Filing Fee, plus a $1,250 Final Fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases filed under either the Flexible Fee Schedule or the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879.

## (ii) Refund Schedule for Standard Fee Schedule

The AAA offers a refund schedule on filing fees connected with the Standard Fee Schedule. For cases with claims up to $75,000, a minimum filing fee of $350 will not be refunded. For all other cases, a minimum fee of $600 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

> 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

45

> 50% of the filing fee, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

> 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

### (iii) Flexible Fee Schedule

 A non-refundable Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. Upon receipt of the Demand for Arbitration, the AAA will promptly initiate the case and notify all parties as well as establish the due date for filing of an Answer, which may include a Counterclaim. In order to proceed with the further administration of the arbitration and appointment of the arbitrator(s), the appropriate, non-refundable Proceed Fee outlined below must be paid.

If a Proceed Fee is not submitted within ninety (90) days of the filing of the Claimant's Demand for Arbitration, the Association will administratively close the file and notify all parties.

No refunds or refund schedule will apply to the Filing or Proceed Fees once received.

The Flexible Fee Schedule below also may be utilized for the filing of counterclaims. However, as with the Claimant's claim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

A Final Fee will be incurred for all claims and/or counterclaims that proceed to their first hearing. This fee will be payable in advance when the first hearing is scheduled, but will be refunded at the

conclusion of the case if no hearings have occurred. However, if the Association is not notified of a cancellation at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

All fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Proceed Fee | Final Fee |
|---|---|---|---|
| Above $0 to $10,000 | $400 | $475 | $200 |
| Above $10,000 to $75,000 | $625 | $500 | $300 |
| Above $75,000 to $150,000 | $850 | $1250 | $750 |
| Above $150,000 to $300,000 | $1,000 | $2125 | $1,250 |
| Above $300,000 to $500,000 | $1,500 | $3,400 | $1,750 |
| Above $500,000 to $1,000,000 | $2,500 | $4,500 | $2,500 |
| Above $1,000,000 to $5,000,000 | $2,500 | $6,700 | $3,250 |
| Above $5,000,000 to $10,000,000 | $3,500 | $8,200 | $4,000 |
| Above $10,000,000 | $4,500 | $10,300 plus .01% of claim amount over $10,000,000 up to $65,000 | $6,000 |
| Nonmonetary[1] | $2,000 | $2,000 | $1,250 |
| Deficient Claim Filing Fee | $350 | | |
| Additional Services[2] | | | |

[1] *This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $3,500 and a proceed fee of $8,200.*

[2] *The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.*

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879. All fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $1,000 for the Initial Filing Fee; $2,125 for the Proceed Fee; and $1,250 for the Final Fee.

Under the Flexible Fee Schedule, a party's obligation to pay the Proceed Fee shall remain in effect regardless of any agreement of the parties to stay, postpone or otherwise modify the arbitration proceedings. Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Note: The date of receipt by the AAA of the demand for arbitration will be used to calculate the ninety (90) day time limit for payment of the Proceed Fee.

There is no Refund Schedule in the Flexible Fee Schedule.

### (iv) Hearing Room Rental

The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

### (v)  Abeyance Fee

Parties on cases filed under the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi)  Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

### For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

## OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

### O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

### O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

### O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

### O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

51

## O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration Section.

## Employment Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile at **www.adr.org**.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

ii.  The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

iii. A brief statement of the nature of the dispute and the relief requested.

iv.  Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

### M-3.  Fixing of Locale (the city, county, state, territory and, if applicable, country of the Mediation)

i    When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.

ii   When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.

iii  If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

### M-4. Representation

Any party may participate without representation (pro-se), or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.aaamediation.com** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

i.   Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

ii.  If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

iii. If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the Model Standards of Conduct for Mediators in effect at the time a mediator is appointed to a case. Where there is a conflict between the Model Standards and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial man-

ner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

i.  The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

ii. The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

iii. The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

iv. The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

v. In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

vi. The mediator is not a legal representative of any party and has no fiduciary duty to any party.

vii. The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

i.   Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

ii.  Admissions made by a party or other participant in the course of the mediation proceedings;

iii. Proposals made or views expressed by the mediator; or

iv.  The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

i.   By the execution of a settlement agreement by the parties; or

ii.  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

iii. By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

iv.  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

### M-18. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the AAA to invite parties to mediate.

The cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. This rate covers both mediator compensation and an allocated portion for the AAA's services. There is a four-hour or one half-day minimum charge for a mediation conference. Expenses referenced in Section M-17 may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the request to initiate mediation is filed but prior to the mediation conference, the cost is $200 plus any mediator time and charges incurred. These costs shall be borne by the initiating party unless the parties agree otherwise.

If you have questions about mediation costs or services visit **www.aaamediation.com** or contact your local AAA office.

Employment Arbitration Rules and Mediation Procedures

Notes

©2010 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the administrative services of the AAA. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact the AAA at 800.778.7879 or websitemail@adr.org for additional information.

Employment Arbitration Rules and Mediation Procedures

Notes

